IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CATHRYN ELAINE HARRIS, MARIO HERRERA, and MARYAM HOSSEINY on behalf of themselves and all others similarly situated,<br>Plaintiffs,<br><br>v.<br><br>BLOCKBUSTER, INC.<br>Defendant. | CAUSE NO. 2:09-cv-00155<br><br>JUDGE: BARBARA LYNN |

## PLAINTIFFS' MOTION TO LIFT STAY, CONSOLIDATE PROCEEDINGS AND TO ENTER ORDER TO SHOW CAUSE

TO THE HONORABLE JUDGE LYNN:

PLAINTIFFS hereby file their Motion to Lift Stay, Consolidate Proceedings and to Enter Order to Show Cause and Brief in Support, and would respectfully show the court as follows:

This lawsuit involves improper disclosures under the Video Privacy Protection Act ("VPPA").[1] Plaintiffs are customers of Blockbuster Online, a video rental service which mails video materials to customers in exchange for a fee. As described in Plaintiffs' First Amended Complaint, Blockbuster systematically violated the VPPA by routinely disclosing Plaintiffs' video rental history to a company called Facebook, an internet social networking site.

This Court recently denied Defendant Blockbuster's Motion to Compel Individual Arbitration.[2] That matter is now pending before the United States Court of Appeals for the Fifth Circuit.[3]

---

[1] 18 U.S.C. § 2710.

[2] *See* documents 31 & 32.

[3] *See* document 33.

PLAINTIFFS MOTION TO LIFT STAY, CONSOLIDATE
PROCEEDINGS AND ENTER ORDER TO SHOW CAUSE                                                                                    Page 1

Plaintiffs have recently learned that both Facebook and Blockbuster have been involved in a competing class action lawsuit in the United States District Court for the Northern District of California *which was filed four months after this action was filed.* That case is styled *Lane, et. al. v. Facebook, et. al.*, Cause Number 08-03845, United States District Court, Northern District of California. Because the sequence of events in the California Litigation is important in evaluating Plaintiffs sought relief, a brief recitation of those events follows:

The California Litigation was filed on August 12, 2008, (this lawsuit was filed on April 9, 2009).[4] The California Litigation was filed against Facebook, Inc. ("Facebook") and Blockbuster, Inc. ("Blockbuster") as well as other defendants for violations of law connected with Facebook's "Beacon" program.[5] While other causes of action were asserted against a a few other Defendants (including 40 "John Doe" defendants), the California Litigation has clearly revolved around alleged violations of the Video Privacy Protection Act by Blockbuster ("VPPA") – the same core allegations made against Blockbuster in this litigation.[6]

Blockbuster claims that it is not a "party" to the California Litigation because it was never "served" in that case. The record in the California Litigation, however, clearly belies that assertion. On October 10, 2009, counsel for Blockbuster, (from the same office, of the same law firm as counsel for Blockbuster in this litigation), electronically signed a Joint Stipulation and [Proposed] Order Re Open Extension of Time to Respond to Complaint.[7] That document, filed *over six months after* this lawsuit began and after Blockbuster had filed an Answer in this case,[8]

---

[4] *See* Docket Sheet for the California Litigation, (attached hereto as Exhibit 1).

[5] *See* California Litigation, document 1 (attached hereto as Exhibit 2).

[6] *See* Exhibit 2; *see also* 18 U.S.C. § 2721.

[7] *See* California Litigation, document 19 (attached hereto as Exhibit 3).

[8] Defendant Blockbuster filed an Answer in this litigation on June 6, 2008. *See* document 6.

asks for an open extension for Blockbuster to file an Answer in the California Litigation, and states that:

> "[a]ll parties stipulate that no non-Facebook defendant will respond to the complaint in any *subsequently-filed* related case prior to responding to the complaint in this matter and will promptly notify all parties of any *subsequently-filed related* case. Each non-Facebook defendant will meet and confer with Plaintiffs' counsel with respect to any notice of related cases if such non-Facebook defendant is served with a complaint."[9]

Contrary to Local Rule 3-13 of the Northern District of California, no mention is made by any party, including Blockbuster, that Blockbuster had already filed an Answer in just such a related case – the Texas Litigation. No assertion is made by Blockbuster that it had not been served in the California Litigation.

Most importantly, however, no mention is made by Blockbuster of its supposed mutual obligation with Plaintiff to have *all* claims or controversies resolved by individual arbitration. Throughout the course of *this* litigation, Defendant Blockbuster, Inc. has maintained that *both* parties to this action are irrevocably bound to the provisions in its "terms and condition" which supposedly prohibit any lawsuit from proceeding in any forum other than arbitration.[10] In *this* litigation, Blockbuster has specifically argued that "[a]ll claims, disputes, or controversies . . . will be referred to and determined by binding arbitration."[11] Blockbuster has also specifically maintained that this arbitration agreement is mutually binding, prohibiting Blockbuster from resolving its disputes in another forum as well as prohibiting Plaintiff from proceeding in the

---

[9] *See* California Litigation, document 19 (attached hereto as Exhibit 3).

[10] *See* California Litigation, document 19 (attached hereto as Exhibit 3).

[11] *See* doc. 23, page 3. ("But this argument is contradicted by the plain terms of the arbitration agreement, which applies to "*all* claims, disputes or controversies" within the agreement's scope, regardless of whether they are brought by Blockbuster or its members.").

Texas Litigation.[12]  Defendant Blockbuster has also argued that Plaintiffs are barred from proceeding in any class action. None of these claims were even mentioned in the California Litigation.

On December 9, 2009, representatives of the Named Plaintiffs in the California Litigation and representatives of Facebook attended a mediation. At that mediation, a Memorandum of Understanding was apparently signed by Facebook and representatives of the Named Plaintiffs. That settlement agreement was designed to resolve not only the claims against Facebook, but also all claims that the putative national class had against Blockbuster, which would resolve all claims in this litigation.[13]  Thus, Facebook sought to achieve for Blockbuster what Blockbuster has consistently maintained in this litigation that it cannot do – resolve this dispute somewhere other than arbitration.

Just weeks after the Memorandum of Understanding was signed, counsel for Blockbuster signed a joint stipulation, in which Blockbuster consented to having the California Litigation proceed before Magistrate Judge Seeborg.[14]  Thus, in this *second* appearance in the California Litigation (now five month into the California Litigation), Blockbuster not only failed to assert its supposed right to have all claims against it resolved by binding arbitration, but it also took an *active step* to allow the Magistrate Judge to resolve all matters in the California Litigation – presumably so that the recently signed settlement agreement could be considered more quickly

---

[12] *See id.*, pages 3-4 (""[M]utual promises to submit all . . . disputes to arbitration," *such as this one*, "constitute[] sufficient consideration, because both parties [are] bound to the promises to arbitrate.") ("Ignoring the arbitration agreement's plain language, *which clearly binds both parties*, plaintiffs focus solely on the class-waiver provision in the agreement, arguing that it applies only to them and not to Blockbuster.").

[13] *See* California Litigation, document 38-6, ¶ 6(a)("On December 9, 2008, representatives of Facebook and plaintiffs met with mediator Antonio Piazza in the offices of Gregorio, Haldeman . . . After a full day of mediation, the parties agreed on all substantive relief and memorialized their mutual understanding in document outlining the principal terms of settlement., (attached hereto as Exhibit 4).

[14] *See* California Litigation, document 22 (attached hereto as Exhibit 5).

by the Court.[15] If Blockbuster was not a party to the California Litigation, why did it give its specific consent to a procedure designed to allow the case to move more quickly to conclusion? Why would it waive its Constitutional right to proceed before an Article III Judge? Plaintiffs contend that the answer is clearly that Blockbuster wanted Facebook to resolve this Texas Litigation on in a non-arbitral forum.

Thus, Blockbuster made an active choice to allow claims against it to be resolved in the California Litigation, a non-arbitral forum. According to Court minutes, counsel for Blockbuster also appeared by telephone at a status conference with Magistrate Judge Seeborg on March 11, 2009.[16] Plaintiffs do not know if the proposed settlement agreement was discussed with the Court at this hearing or not, but despite this *third* appearance by counsel for Blockbuster in the California Litigation, no assertion of an obligation of the putative class to arbitrate this dispute appears to have been presented on the record. It also appears that Blockbuster did not assert that any class action waiver would prohibit such a settlement. In fact, during the entire fourteen-month pendency of the California Litigation, Blockbuster has never asserted that arbitration is the proper forum for resolution of the putative national class's causes of action.

On May 5, 2009, after this litigation was stayed, Plaintiffs became aware of the California Litigation. A review of the docket sheet, however, revealed no motions practice since October of 2008 and obviously did not mention the Memorandum of Understanding that had been signed on December 9, 2008. Upon inquiry to Blockbuster's counsel, the only response was to acknowledge that Blockbuster was aware of the California Litigation.

---

[15] Plaintiffs note that this consent stands in stark contrast with Blockbuster's failure to consent to proceed before the Magistrate Judge in this lawsuit. *See* document 14.

[16] *See* California Litigation, document 30 (attached hereto as Exhibit 6).

That changed when, on September 18, 2009, Plaintiffs in the California Litigation, without notifying the California Court of the pendency of this lawsuit, presented a Motion for Preliminary Approval of Class Action Settlement which seeks to release all of Plaintiffs' claims in this lawsuit.[17] The settlement agreement would not include any monetary relief to the class, would involve the payment of over $3,000,000 in attorneys' fees, and purports to resolve all claims against Blockbuster.[18] Blockbuster, despite its three prior appearances in the California Litigation, has not presented any brief opposing the use of a class action lawsuit to resolve claims against it in this Litigation. In fact, Blockbuster is acting in a manner contrary to its own interpretation of its obligations under the subject arbitration provision.

Because the proposed settlement would resolve all of Plaintiffs claims in this litigation, Plaintiffs have filed a Motion for Limited Intervention in the California Litigation, asking that Magistrate Judge Seeborg deny the proposed settlement and transfer the case this Court, as the Court with the first-filed action.[19] Plaintiffs' Motion is set to heard along with the Motion for Preliminary Approval of Class Action Settlement on October 14, 2009.

Based on the above described actions, Plaintiffs contend that the election doctrine precludes Blockbuster's patently inconsistent positions in these two litigations. As stated by the Texas Supreme Court, the election doctrine may constitute a bar to relief when (1) one successfully exercises an informed choice (2) between two or more remedies, rights, or states of facts (3) which are so inconsistent as to (4) constitute manifest injustice.[20] The election doctrine applies "when the inconsistency in the assertion of a remedy, right, or state of facts is so

---

[17] *See* California Litigation, document 38 (attached hereto as Exhibit 7).

[18] *See id.*

[19] *See* California Litigation, doc. 39 (attached hereto as Exhibit 8).

[20] *Bocanegra v. Aetna Life Ins. Co.* 605 S.W.2d 848, 851 (Tex., 1980).

unconscionable, dishonest, contrary to fair dealing, or *so stultifies the legal process or trifles with justice or the courts as to be manifestly unjust.*[21]

Although Blockbuster was not technically a signatory to the Settlement Agreement, it is nonetheless released from all liability for its violations of the VPPA.[22] For fourteen months, Blockbuster sat silent in the California Litigation, without in any way raising the issue of arbitration, while simultaneously asserting in this Court that this lawsuit should not be allowed to proceed because of the arbitration agreement. The law does not allow Blockbuster to assert such patently inconsistent positions.[23] Blockbuster made a crucial chose in January of this year when it signed a consent for the California Litigation to proceed before the Magistrate Judge, just weeks after the Memorandum of Understanding was signed. The choice at that time to not assert the arbitration agreement, and in fact to assist in its breach, constitutes an election. The result of that election should be a waiver of the arbitration remedy under the terms and conditions of Blockbuster's contract with its customers.

The only conceivable reason for Blockbuster to consent to proceed before the Magistrate Judge was to assist with the conclusion of the California Litigation by settlement. Did Blockbuster really not inquire as to why all of the other Defendants to the California Litigation wanted to proceed before the Magistrate Judge? Was Blockbuster really just trying to be agreeable for the sake of going along with everyone else? Did Blockbuster somehow calculate that proceeding before the Magistrate Judge (and waiving its Constitutional rights to proceed

---

[21] *See id.* (emphasis added).

[22] *See* California Litigation, doc. 38 (attached hereto as Exhibit 7).

[23] *See R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n* 384 F.3d 157, 160 -161 (4th Cir. 2004)("The doctrine of equitable estoppel 'precludes a party from asserting rights he otherwise would have had against another when his own conduct renders assertion of those rights contrary to equity'. . . In the context of arbitration, the doctrine applies when one party attempts 'to hold [another party] to the terms of [an] agreement' while simultaneously trying to avoid the agreement's arbitration clause.")(citing *Hughes Masonry Co., Inc. v. Greater Clark County Sch. Bldg. Corp.*, 659 F.2d 836, 838 (7th Cir.1981)).

before an Article III Judge) would somehow make it easier for it to later assert an arbitration remedy in the California Litigation? Can Blockbuster credibly argue that it had no idea that a Memorandum of Agreement had been signed between Facebook and the Named Plaintiffs weeks earlier whereby Facebook would resolve this dispute on all of the other Defendants' behalf, in a non-arbitral forum? Plaintiffs submit that the answer to these questions is obviously no. Blockbuster made a specific choice to remain silent and not assert its arbitration remedy so that a non-arbitral forum could be used to resolve the claims in this litigation. Blockbuster did this despite its assertions in this litigation that it was also bound by the terms of the arbitration agreement. That choice is so inconsistent with Blockbuster's assertions in this litigation as to be manifestly unjust. That choice to abandon arbitration requirements when it helps resolve a dispute against Blockbuster on a national, class-wide basis, (and with someone else paying for Blockbuster's wrongs) but to seek to enforce it in this litigation, simply serves to stultify the legal process and to trifle with justice. As discussed above, the election doctrine serves to prevent just this type of gamesmanship.

For the foregoing reasons, Plaintiffs respectfully request that this Court lift the stay in this action and enter an Order to Show Cause directing Blockbuster to show cause why its affirmative actions in the California Litigation do not serve as a bar to its assertion of a right to arbitrate in this lawsuit. Plaintiffs have previously presented authority to this Court that it is not divested of jurisdiction while this matter while it is on appeal.[24] Plaintiffs submit that this important matter needs to be addressed, and a record established, prior to resolution of the current appeal of this matter.

---

[24] *See* document 35.

Plaintiffs have also argued in their Motion for Limited Intervention that Magistrate Judge Seeborg should deny preliminary approval of the proposed settlement because Facebook is merely acting to indemnify Blockbuster, pursuant to an indemnity agreement that is void as against public policy.[25] Plaintiffs have argued that allowing the recipient of personal, federally protected information to indemnify Blockbuster against wrongful disclosure of that information is contrary to public policy as it merely serves to enforce an illegal indemnity agreement.[26] This should not be allowed because to do so would actually encourage illegal behavior. Having now become aware of the indemnity agreement between Facebook and Blockbuster, Plaintiffs have filed a separate class action against Facebook for violation of the VPPA and civil conspiracy to violate the VPPA.[27]

As discussed above, Plaintiffs have asked that Magistrate Judge Seeeborg transfer the California Litigation to this Court because this Court was the first to acquire jurisdiction of the subject matter of this litigation.[28] As the first-filed case, these lawsuits should proceed in this Court.[29] As the allegations of *Harris v. Facebook*, Cause No. 09-1912, United States District Court, Northern District of Texas, involve many of the same factual circumstances as the instant suit, Plaintiff also ask that this Court consolidate that action into this one. Doing so would allow

---

[25] See California Litigation, doc. 39 (attached hereto as Exhibit 8).

[26] See, e.g., *U.S. v. J & D Enterprises of Duluth*, 955 F. Supp. 1153 (D.Minn.,1997) ("public policy is not served by permitting transfer of responsibility for payment of punitive damages to another, as purpose of punitive damages is lost when such damages are paid by another on defendant's behalf."); *Symons v. Mueller Co.* 526 F.2d 13, 17 (10th Cir. 1975) ("It is well established that where joint tortfeasors are in pari delicto-where each is chargeable with active or affirmative negligence contributing to the injury-neither is entitled to indemnity from the other");

[27] See *Harris v. Facebook*, Cause No. 09-1912, United States District Court, Northern District of Texas.

[28] See California Litigation, doc. 39 (attached hereto as Exhibit 8).

[29] See *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir.1997); *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728 (5th Cir.1985).

this Court to resolve the entirety of the class's causes of action related to Facebook and Blockbuster's violations of the VPPA.

For the foregoing reasons, Plaintiffs respectfully request that this Court: 1) lift the stay in this action and enter an Order to Show Cause directing Blockbuster to show cause why the election doctrine does to preclude Blockbuster from relying on the purported arbitration agreement and 2) enter an Order directing that *Harris v. Facebook,* Cause No. 09-1912, United States District Court, Northern District of Texas, be consolidated in this lawsuit. Plaintiffs also ask that the Court take whatever other measures it deems appropriate to protect its jurisdiction over the first-filed case involving this subject matter.

Respectfully submitted,

THE COREA FIRM, P.L.L.C.

_____
Jeremy R. Wilson
State Bar No. 24037722
Thomas M. Corea
Texas Bar No. 24037906
1201 Elm St, Suite 4150
Dallas, Texas 75270
Telephone: (214) 953-3900
Facsimile: (214) 953-3901

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I certify that on October 12, 2009, I electronically filed the above Motion with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified in this manner, either via transmission of Notices of Electronic Filing generated by CM/ECF or by U. S. mail for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

_____
Jeremy R. Wilson