# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| CATHRYN ELAINE HARRIS, | § | |
| MARIO HERRERA, and MARYAM | § | |
| HOSSEINY on behalf of themselves and | § | |
| all others similarly situated, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:09-cv-217-M |
| | § | |
| BLOCKBUSTER INC. | § | |
| | § | |
| Defendant. | § | |

---

## BLOCKBUSTER'S RESPONSE AND BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION TO LIFT STAY, CONSOLIDATE PROCEEDINGS AND TO ENTER ORDER TO SHOW CAUSE

---

**VINSON & ELKINS L.L.P.**

Michael L. Raiff
  State Bar No. 00784803
Frank C. Brame
  State Bar No. 24031874
Marc A. Fuller
  State Bar No. 24032210
2001 Ross Avenue, Suite 3700
Dallas, Texas  75201
214.220.7705
214.999.7705 (fax)
mraiff@velaw.com

***Attorneys for Defendant Blockbuster Inc.***

Dockets.Justia.com

# <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND .................................................................................................. 4

    A.  The *Lane* Case .............................................................................................. 4

    B.  Plaintiffs' Counsel Has Known About the *Lane* Case Since Before It Was Filed. ............ 6

III.  ARGUMENT ....................................................................................................... 9

    A.  Blockbuster Has Not Waived Its Arbitration Rights. ...................................... 9

        1.   Plaintiffs fail to cite any case or point to any facts that would support a "waiver" defense to Blockbuster's enforcement of its arbitration agreement with Plaintiffs in this case. ........................................................................................ 9

        2.   Plaintiffs cannot improve their waiver argument by relying on the election-of-remedies doctrine. ..................................................................................... 12

    B.  Plaintiffs' Other Arguments Have Been Rejected By The *Lane* Court. .......................... 14

    C.  Plaintiffs' Recent Decision To Sue Facebook Does Not Justify Lifting The Stay Here. . . 15

    D.  The Lane Settlement Supports the Continued Stay……………………………....… 16

IV.   CONCLUSION................................................................................................... 17

## TABLE OF AUTHORITIES

**Cases**

*Bocanegra v. Aetna Life Ins. Co.*,
   605 S.W.2d 848 (Tex. 1980)........................................................................12, 13, 14

*Custom Leasing, Inc. v. Texas Bank & Trust Co.*,
   491 S.W.2d 869 (Tex. 1973)........................................................................ 12

*Ehleiter v. Grapetree Shores, Inc.*,
   482 F.3d 207 (3d Cir. 2007)........................................................................ 9

*Gimenez v. American Sec. Ins. Co.*,
   No. 8:08-cv-2495-T-24-TGW, 2009 WL 257540
   (M.D. Fla. Feb. 3, 2009) ........................................................................ 11

*Horizon Offshore Contractors, Inc. v. Aon Risk Servs.*,
   283 S.W.3d 53 (Tex. App.—Houston [14th Dist.] 2009, pet. filed) ...................................... 13

*In re Enron Corp. Securities, Derivative & "Erisa" Litigation*,
   391 F. Supp. 2d 541 (S.D. Tex. 2005)........................................................................ 9

*Patten Grading & Paving, Inc. v. Skanska USA Building, Inc.*,
   380 F.3d 200 (4th Cir. 2004)........................................................................ 11

*Lora v. Providan Bancorp Servs.*,
   No. EP-05-CA-045-DB, 2005 WL 1743878 (W.D. Tex. Jul. 22, 2005)................................ 11

*R.J. Griffin & Co. v. Beach Club II Homeowners Association*,
   384 F.3d 157 (4th Cir. 2004)........................................................................ 13

*United States v. Park Place Assocs.*,
   563 F.3d 907 (9th Cir. 2009)........................................................................ 10

*Williams v. Cigna Fin. Advisors, Inc.*,
   56 F.3d 656 (5th Cir. 1995)........................................................................ 10

TO THE HONORABLE JUDGE BARBARA LYNN:

Defendant Blockbuster Inc. ("Blockbuster") hereby files this Response to Plaintiffs' Motion to Lift Stay, Consolidate Proceedings and to Enter Order to Show Cause (the "Motion"), and states as follows:

## I.  INTRODUCTION

Plaintiff's Motion is part of a last-minute, two-state strategy to derail a settlement that would resolve class claims relating to Facebook's Beacon program, including the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, claims asserted against Blockbuster in this case and against Facebook in Plaintiffs' newly filed action.  *See Cathryn Harris, et al. v. Facebook, Inc.*, N.D. Tex. Case No. 3:09-cv-01912-K (filed Oct. 9, 2009).  That settlement was reached in *Sean Lane, et al. v. Facebook, Inc., et al.*, Case No. 5:08-cv-0845-RS, a case that has been pending for more than one year in the United States District Court for the Northern District of California. Although not a party to the settlement, Blockbuster is a third-party beneficiary to the settlement agreement.  The agreement is a global resolution of all claims related to Facebook Beacon and includes an agreement to end the Beacon program permanently as well as provisions releasing Facebook and all its vendor partners for claims related to Beacon.

On October 14, 2009, the *Lane* court held a hearing to consider whether to grant preliminary approval of the settlement, as well as a motion by Plaintiffs for leave to intervene and for a stay of the settlement approval process.  *See Lane* Doc. #39 at 8.  Plaintiffs' motion in the *Lane* case was based on the same arguments and accusations that form the basis of their Motion here.

On October 23, 2009, the *Lane* court denied Plaintiffs' motion for leave to intervene and granted preliminary approval of the *Lane* settlement.  In doing so, the *Lane* court held that Plaintiffs' arrival on the scene in California was "untimely":

The record establishes the Proposed Intervenors have been aware of the existence of this action since no later than September of 2008, and of a pending settlement since at least early May of 2009.

*Lane* Doc. #66 at 5.[1]  Specifically, after considering the declarations of several attorneys involved in the proceedings and questioning Plaintiffs' counsel, Jeremy Wilson, during the October 14th hearing about communications between his side and counsel in the *Lane* case, the *Lane* court observed:

> Before [the *Lane*] complaint was filed, plaintiffs' counsel [in the *Lane* case] held discussions with the *Harris* plaintiffs in which he disclosed that litigation was being considered and that a complaint likely would be filed within a month. Malley Decl. ¶ 3. [The *Lane*] action was filed in August of 2008.  Approximately one month later, plaintiffs' counsel advised the *Harris* plaintiffs of the filing. Malley Decl. ¶ 4. . . . On May 5, 2009, counsel for the *Harris* plaintiffs sent an email [to counsel for Blockbuster] stating that he had 'just heard' about this lawsuit and that 'a settlement of the claims against Facebook is being finalized.'

*Id.* at 3.

The *Lane* court also rejected Plaintiffs' arguments against preliminary approval of the settlement.  For example, the *Lane* court disagreed with Plaintiffs that the *Lane* parties' alleged violation of Rule 3-13 of the Local Rules of the Northern District of California had any significance at all:

> Having been fully advised of the status of both this proceeding and the *Harris* action, and the relationship between them, the Court is satisfied that no further orders in response to a Rule 3-13 notice would have been, or would now be, appropriate.

*Id.* at 8.  In addition, the *Lane* court was unmoved by Plaintiffs' protestations that the settlement somehow violated public policy:

> Proposed Intervenors raise suggestions of an illicit agreement between Facebook and Blockbuster to circumvent restrictions on indemnity between joint tortfeasors and to permit Blockbuster to take inconsistent positions on the enforceability of arbitration provisions in its agreements with its customers . . . . Proposed

---

[1] The *Lane* court's Order Denying Motion for Leave to Intervene (Doc. #66) is attached to the Appendix in Support of this Response as Exhibit 1.

Intervenors have introduced no evidence that would support an inference or finding of any impropriety.

*Id.* at 5 n.5. Finally, with regard to the preliminary approval process, the *Lane* court held that Plaintiffs had been given a "full opportunity to present their written and oral arguments" against the preliminary approval of the settlement.[2] *Id.* at 8-9 & n. 11. Accordingly, in a separate order issued the same day, the *Lane* court found that "preliminary approval is appropriate," and established a process for the potential class to be notified and to opt out or object to the settlement. *See* Lane Doc. #67 at 1-7.[3]

In light of these rulings by the *Lane* court, there is no reason for this Court to lift the current stay pending the Fifth Circuit's resolution of Blockbuster's appeal of the Court's denial of its motion to compel individual arbitration. If anything, the *Lane* settlement provides additional grounds for a stay – not a basis to lift the current stay. Moreover, any suggestion that Blockbuster has waived its right to enforce its arbitration agreement in this case as a result of anything that has transpired in the *Lane* case is frivolous. While this individual arbitration issue is being addressed at the Fifth Circuit, the *Lane* court will consider the fairness of the settlement and any objections to that settlement, including any objections Plaintiffs might file. As the *Lane* court has made clear, this process will not unfairly prejudice Plaintiffs or the class; all objections will be heard and considered in the final approval process and individual class members (including Plaintiffs) will have the opportunity to opt out. Given these assurances, and especially given the Plaintiffs' right to opt out of the *Lane* settlement, there is no reason for the Court to become involved in a jurisdictional tug-of-war that would stand to benefit only Plaintiffs'

---

[2] In its order denying leave to intervene, the *Lane* court noted that, at the October 14, 2009 hearing, Plaintiffs were given "the opportunity to describe any additional or different matters they believed could be presented through further briefing." *Lane* Doc. # 66 at 8-9 n.11.

[3] The *Lane* court's Preliminary Approval and Notice Order (Doc. #67) is attached to the Appendix in Support of this Response as Exhibit 2.

counsel, at the considerable expense of all other concerned parties, including the proposed class.

## II.    BACKGROUND

### A.    The *Lane* Case

The *Lane* case was filed on August 12, 2008.  Like this case, it is a putative nationwide class action relating to the launch of Facebook's Beacon program.  *See Lane* Doc. #1 (Complaint).[4]  Plaintiffs argue in their Motion that "[w]hile other causes of action were asserted against a few other Defendants . . . the [*Lane* case] has clearly revolved around alleged violations of the Video Privacy Protection Act by Blockbuster[.]"  Mot. at 2.  This is a curious description, to say the least.  In fact, Facebook is the first defendant named in the case.  The seven other named defendants, which include Blockbuster, are referred to as "Facebook Beacon Activated Affiliates" (in other words, Facebook's Beacon partners).  *See Lane* Comp. ¶ 1.  There are also forty "Doe" defendants, who are identified as Facebook Beacon partners.  *Id.* ¶ 41.  Admittedly, one of the several causes of action in the *Lane* complaint is a claim against Blockbuster for alleged violations of the VPPA, but the same claim is also made against three other named defendants (Fandango, Overstock.com, and GameFly), as well as twenty "Doe" defendants.  *Id.* ¶¶ 122-134.  In addition, there is a separate cause of action against Facebook for allegedly aiding and abetting VPPA violations.  *Id.* ¶¶ 135-142.  The *Lane* complaint also asserts several other state and federal statutory and common law claims against the various defendants.

Plaintiffs' suggestion that the *Lane* case "has clearly revolved around" Blockbuster's alleged VPPA violations is further belied by the fact that Blockbuster was never served with the complaint.  *See Lane* Doc. #54-1 (Brame Decl. ¶ 2).[5]  Instead, the *Lane* plaintiffs made clear that

---

[4]  The *Lane* complaint is attached as Exhibit 2 to Plaintiffs' Motion.

[5]  The Declaration of Frank C. Brame (*Lane* Doc. #54-1) is attached to the Appendix in Support of this Response as Exhibit 3.

they did not intend to proceed against Blockbuster or the other Beacon partners at that time, and the parties filed a stipulation to that effect. Accordingly, Blockbuster's involvement in the case has been purely ministerial: (1) counsel for Blockbuster signed a stipulation providing that all "non-Facebook defendants" would have an "open extension" of time to appear or file an answer; (2) counsel for Blockbuster signed a stipulation of consent to proceed before the magistrate; and (3) counsel for Blockbuster signed up to listen in to one public telephonic status conference, but was not ultimately able to participate. Blockbuster has not filed any response to the complaint or presented any defenses.

Facebook, however, responded to the Complaint with a motion to dismiss. *See Lane* Doc. #14.[6] Before that motion was fully briefed and heard, the case was effectively stayed while Facebook and the *Lane* plaintiffs spent the next several months negotiating a settlement. As confirmed by counsel for Facebook, Blockbuster was not invited to participate, and did not participate, in the mediation and negotiations leading up to the *Lane* settlement. *See Lane* Doc. 53 (Rhodes Decl. ¶¶ 2-4).[7] On September 18, 2009, after the settlement agreement was finalized, the *Lane* plaintiffs moved for preliminary approval of the settlement. *See Lane* Doc. #38.[8] As noted above, the *Lane* court granted its preliminary approval of the settlement on October 23, 2009. That order sets forth the notice, opt out, and objection procedures for the settlement. The deadline for filing objections is February 1, 2010, and a final approval hearing is set for February 26, 2010. *See Lane* Doc. # 67 at 6.

---

[6] The *Lane* docket sheet is attached to Plaintiffs' Motion as Exhibit 1.

[7] The Declaration of Michael G. Rhodes (*Lane* Doc. #53) is attached to the Appendix in Support of this Response as Exhibit 5.

[8] Lane's Motion for Preliminary Approval of Class Action Settlement Agreement (with its exhibits) is attached to the Appendix in Support of this Response as Exhibit 9.

**B.     Plaintiffs' Counsel Have Known About the *Lane* Case Since Before It Was Filed.**

Plaintiffs have yet to provide a clear account of what they knew about the *Lane* case and when they knew it.

**1.     *Harris* counsel initially claimed they only recently learned of the *Lane* case.**

Initially, Plaintiffs' counsel claimed they did not know about the *Lane* case until recently. For example, according to Scott Kamber, lead counsel for the *Lane* plaintiffs, he spoke with Mr. Wilson on September 29, 2009, and during that conversation:

> Mr. Wilson stated that they were unaware of the *Lane* case until shortly before our filing of our motion for preliminary approval.

*Lane* Doc. #55-1 at 4 (Kamber Decl. ¶15).[9]  On September 30, 2009, lead counsel for Facebook, Michael Rhodes, wrote to Mr. Wilson:

> [A]s you correctly point out, the *Lane* litigation has been pending for over a year (and you have apparently been well aware of its existence since it was filed in August of 2008…)

*Lane* Doc. #39-2 (Ex. D to Wilson Decl.).[10]  Mr. Wilson responded in writing:

> …I frankly have no idea where you have come up with the idea that our firm or our clients have been aware of the *Lane* case since it was filed.  The attorneys for Blockbuster can confirm that I just learned about the *Lane* action ***this summer*** and contacted them immediately because it did not appear at first that they had been served.

*Lane* Doc. #53 at 11 (Ex. 2 to Rhodes Decl.) (emphasis added).[11]

On October 12, 2009, Plaintiffs filed the present Motion, in which they again claimed to have recently learned of the Lane case:

---

[9] The Declaration of Scott A. Kamber (*Lane* Doc. #55-1) is attached to the Appendix in Support of this Response as Exhibit 4.

[10] The Declaration of Jeremy R. Wilson (*Lane* Doc. #39-2) is attached to the Appendix in Support of this Response as Exhibit 7.

[11] In fact, the "summer" email Mr. Wilson must have been referring to was dated May 5, 2009, and it included the following statement: "I also heard that a settlement of the claims against Facebook is being finalized."*Lane* Doc. #54-1  (Ex. 1 to Brame Decl.).

> Plaintiffs have recently learned that both Facebook and Blockbuster have been involved in a competing class action . . . . On May 5, 2009, after this litigation was stayed, Plaintiffs became aware of the California Litigation.

*Harris* Doc. # 41 at 2 & 5 (emphasis added).

### 2. Lane's counsel submitted a declaration contradicting *Harris* counsel's representations.

After these multiple representations by *Harris* counsel, one of the *Lane* attorneys filed a sworn declaration disputing *Harris* counsel's statements. Dallas attorney Joseph H. Malley, co-counsel for the *Lane* plaintiffs, filed a declaration in the *Lane* case, stating that, "[o]ver the past year, I have had numerous communications with the *Harris* Counsel on various matters, including communications in which we have discussed the [*Lane* case] and issues relating to it." *Lane* Doc. #55 (Malley Decl. ¶5).[12] In his declaration, Mr. Malley recounted:

> In June 2008, I had communications with *Harris* Counsel in which I indicated that I was working with a New York law firm on a case against Facebook, Blockbuster, Inc., and other companies regarding Facebook's Beacon program, and that we anticipated filing within a month….
>
> In early September 2008, approximately one month after filing the [*Lane* case], I communicated to *Harris* Counsel that the instant action had been filed and was substantially broader that the *Harris* Counsel's action against Blockbuster, Inc….

*Id.* (Malley Decl. ¶ 3-4).

### 3. Harris counsel admitted they do not dispute the Malley declaration.

When confronted with the Malley declaration at the October 14th hearing, Plaintiffs' counsel admitted that he could not dispute Mr. Malley's testimony. *See Lane* Hearing Tr. at 14-15.[13] After being confronted by the *Lane* court, Plaintiffs then corrected their statements to this *Harris* Court. In a supplement to their Motion, they acknowledged these conversations with

---

[12] The Declaration of Joseph H. Malley (*Lane* Doc. #55) is attached to the Appendix in Support of this Response as Exhibit 6.

[13] The Hearing Transcript from the *Lane* court's October 14, 2009 hearing is attached to the Appendix in Support of this Response as Exhibit 8.

*Lane* counsel, but took the position that they did not discuss "specifics of the case, or the jurisdiction in which it was pending."[14]  *Harris* Doc. #42.

Plaintiffs made the same argument to the *Lane* court at the October 14th hearing, when forced to concede that they had known about the *Lane* case for more than a year.  *See Lane* Hearing Tr. at 14-15.  The *Lane* court was unconvinced.  In its order denying their motion for leave to intervene, the court held:

> Whatever rights or interests Proposed Intervenors may have had in enforcing a first-filed rule, those rights and interests (if any) necessarily arose the moment this action was filed, and were known or should have been known to Proposed Intervenors when they learned of the very ***existence*** of this lawsuit….
>
> When Proposed Intervenors learned that 'a settlement of the claims against Facebook [was] being finalized,' they surely were on notice that it presumptively could have a significant impact on the claims of the putative class members in *Harris*.  Although Facebook had not then been named as a defendant in Texas, Proposed Intervenors knew that Blockbuster was named as a defendant here, and that the same alleged wrongful acts, as well as the VPPA, were all at issue.  It would have been wholly unfounded to assume that a settlement agreement here would somehow carve out the subject matter of *Harris*.

*Lane* Doc. #66 at 5-6 (emphasis in original).  In other words, the *Lane* court ultimately found it unnecessary to pinpoint the precise date when Plaintiffs' counsel first learned the "specifics" of the *Lane* litigation.  According to the *Lane* court, they have long been on notice that they needed to act to preserve whatever "rights" they thought they might have.  Still, they took no action in either court until October 2009.

---

[14]  In fact, well before Plaintiffs filed this Motion, The Corea Firm indicated its awareness of conversations that its side had been having with Mr. Malley regarding the litigation.  Specifically, in a September 21, 2009 email from Thomas Corea to Mr. Rhodes, Mr. Corea referred to communications with Mr. Malley about the *Harris* case "at the time that the *Lane* case was filed."  *Lane* Doc. #53.  In other words, The Corea Firm now suggests to the Court that they knew about their side's discussions with Mr. Malley all along, and knew that those discussions specifically involved reference to this case, but somehow remained unaware of the "specifics" of the *Lane* case.

## III.   ARGUMENT

On May 1, 2009, this Court issued an order staying proceedings until the Fifth Circuit rules on Blockbuster's appeal of the Court's order denying Blockbuster's motion to compel individual arbitration.[15]  Plaintiffs now seek to have that stay lifted based on the frivolous argument that Blockbuster somehow waived its right to continue to enforce its arbitration agreement in this case based on its actions (or inaction) in the *Lane* case.  As discussed below, Plaintiffs cite no "waiver" case that supports their argument, and the much-criticized election-of-remedies doctrine on which they purport to rely clearly has no application here.  Moreover, Plaintiffs' other quibbles and complaints regarding the *Lane* case and potential class settlement have already been considered by the *Lane* court and found to be without merit.  In short, Plaintiffs' Motion offers nothing new on any of these issues and gives the Court no compelling reason to lift the stay currently in place for this case.

### A.    Blockbuster Has Not Waived Its Arbitration Rights.

**1.    Plaintiffs fail to cite any case or point to any facts that would support a "waiver" defense to Blockbuster's enforcement of its individual arbitration agreement with Plaintiffs in this case.**

Plaintiffs' main argument for lifting the stay in this case is that Blockbuster has somehow waived its right to compel Plaintiffs to comply with their arbitration agreements.  Of course, Plaintiffs do not point to anything Blockbuster has done **in this case** as the basis of the purported waiver.  Rather, they rely on what Blockbuster has done (or has not done) in the *Lane* case.  But despite Plaintiffs' apparent indignation that Blockbuster would comply with the *Lane* court's docket management procedures while Facebook negotiated a global settlement of Beacon-related

---

[15] *See Harris* Doc. # 37 (Order Staying Case).  In moving for a stay, Blockbuster cited numerous cases recognizing that, absent a stay, a defendant would lose the benefit of the arbitration agreement, regardless of whether the appeal was successful.  *See Harris* Doc. # 34 at 3-5 (citing *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 215 n.6 (3d Cir. 2007); *In re Enron Corp. Securities, Derivative & "Erisa" Litigation*, 391 F. Supp. 2d 541, 586-87 (S.D. Tex. 2005)).

claims, their argument is far-fetched and without merit. It would have this Court find waiver based on conduct by a defendant in a different case against different parties, governed by different substantive law, before the defendant has even answered the complaint.

To begin with, there is no precedent among the prolific jurisprudence on arbitration that even remotely suggests that a party can waive a contractual provision to individually arbitrate with one plaintiff in one court by virtue of that party's conduct in another court with respect to another plaintiff. Blockbuster's decision to enforce arbitration against Sean Lane in California should have no bearing on Blockbuster's efforts to enforce its contracts with the individuals in this case.

Moreover, even if Plaintiffs in this case could complain about actions taken by Blockbuster in another case relating to agreements with other plaintiffs, the actions they complain about do not even come close to constituting waiver. The waiver standard is a high one, and a party seeking to show waiver must establish that the other party "substantially invoke[d] the judicial process to [its] detriment or prejudice…." *Williams v. Cigna Fin. Advisors, Inc.*, 56 F.3d 656, 661 (5th Cir. 1995) (internal quotations omitted); *see also United States v. Park Place Assocs.*, 563 F.3d 907, 921 (9th Cir. 2009) ("waiver of the right to arbitration is disfavored because it is a contractual right, and thus any party arguing waiver of arbitration bears a heavy burden of proof") (internal quotations omitted). Courts rarely find that a defendant has waived its right to compel arbitration, particularly before it has answered a complaint. Indeed, courts have held that a party may take one or more of the following actions without waiving its right to compel arbitration, *all* of which are far more substantial than what Plaintiffs accuse Blockbuster of doing: (1) file an answer to the complaint; (2) file a

counterclaim; (3) engage in initial discovery; and (4) respond to motions.[16]  By contrast, in the *Lane* case, Blockbuster merely (1) signed a stipulation providing that all "non-Facebook defendants" would have an "open extension" of time to appear or file an answer; (2) signed a stipulation of consent to proceed before the magistrate; and (3) signed up to listen in to one public telephonic status conference, but was not ultimately able to participate.  Plaintiffs offer no authority in which a court has found waiver under even remotely similar circumstances, especially given that the challenged conduct occurred in a different case involving different plaintiffs.

Indeed, as a result of Facebook's negotiation of a global settlement with the *Lane* plaintiffs, Blockbuster has yet to be faced with a decision regarding whether to enforce its arbitration agreement against the plaintiffs in that case.  If Blockbuster is ultimately required to make that decision, one factor it will take into account is the difference between Texas law and California law on the issue of the enforceability of individual arbitration agreements.  For example, in affirming an order compelling arbitration entered by this Court, the Fifth Circuit stated:

> The [] Appellants argue that [the fact that Texas, not California, law applies] makes no salient difference because California law and Texas law regarding unconscionability are essentially the same.  As the district court noted, however, this is incorrect.  In reality, California law and Texas law differ significantly, with the former being more hostile to the enforcement of arbitration agreements than

---

[16] *See, e.g.*, *Patten Grading & Paving, Inc. v. Skanska USA Building, Inc.*, 380 F.3d 200, 206 (4th Cir. 2004) (noting that "a party's filing of minimal responsive pleadings, such as an answer or compulsory counter-claim, are not necessarily inconsistent with an intent to pursue arbitration," and holding that "the movant's participation in litigation activity alone," including limited discovery, "will not suffice" to constitute waiver); *Gimenez v. American Sec. Ins. Co.*, No. 8:08-cv-2495-T-24-TGW, 2009 WL 257540, at *2 (M.D. Fla. Feb. 3, 2009) (no waiver of right to compel arbitration by "timely remove[ing] the suit, fil[ing] an answer, ma[king] initial disclosures, and participat[ing] in case management and scheduling negotiations," noting that "timely complying with the Federal Rules of Civil Procedure and the orders of the Court as well as asserting one's rights as a Defendant in a lawsuit should not be penalized"); *Lora v. Providian Bancorp Servs.*, No. EP-05-CA-045-DB, 2005 WL 1743878, *6 (W.D. Tex. Jul. 22, 2005) (removal to federal court did not waive arbitration).

the latter.  This difference can be quickly observed by noting their respective threshold views of arbitration agreements.

*Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 301 n.5 (5th Cir. 2004).[17]  In light of the differences between different states' approach to the enforcement of arbitration agreements, a defendant's choice to file a motion in one jurisdiction (where arbitration agreements are regularly enforced), but not in another jurisdiction (where precedent might limit the enforceability of such agreements under certain circumstances) cannot give rise to waiver.

> **2.    Plaintiffs cannot improve their waiver argument by relying on the election-of-remedies doctrine.**

Unable to assert any compelling waiver argument, Plaintiffs rely instead on the widely criticized, narrow, and inapplicable election-of-remedies doctrine.  As the Texas Supreme Court has noted, commentators have described this defense as "a legal weed that judicial gardeners should root out," "a legal delusion," "an anachronism," "a problem child of the law," and "a remedy that has no independent viability." *Bocanegra v. Aetna Life Ins. Co.*, 605 S.W.2d 848, 850 n.2 (Tex. 1980) (citations omitted); *see also Custom Leasing, Inc. v. Texas Bank & Trust Co.*, 491 S.W.2d 869, 871 (Tex. 1973) ("It has been said that the doctrine of election of remedies is not a favorite of equity and that its scope should not be extended.").

The only case cited by Plaintiffs on the election-of-remedies doctrine is the nearly three-decades-old *Bocanegra* case.  That decision makes clear that the standard for invoking the doctrine is a high one.  Merely pointing to an alleged inconsistency is not sufficient, as "[a] number of seemingly inconsistent positions do not rise to the level of an election which will bar

---

[17] Plaintiffs are well aware of the differences between California law and Texas law on the enforcement of arbitration agreements.  In fact, they previously argued to this Court that Blockbuster's individual arbitration agreement would be unenforceable under California law.  *See, e.g., Harris* Doc. #19 at 14 & n.36.  In other words, they now take the position that Blockbuster has waived its right to enforce its arbitration in Texas because it failed to file a motion in California that Plaintiffs would regard as frivolous.

recovery." *Id.* at 851. For example, the *Bocanegra* court held that "[o]ne may assert concurrent but inconsistent remedies or distinct causes of action against different persons arising out of independent transactions." *Id.* at 852. Plaintiffs do not address this holding, and they offer no other case citation to support their election-of-remedies argument.[18]

In any event, the election-of-remedies doctrine does not apply to defendants, much less a defendant asserting one defense in one jurisdiction and another defense in another jurisdiction. For example, in *Horizon Offshore Contractors, Inc. v. Aon Risk Servs. of Tex., Inc.*, 283 S.W.3d 53 (Tex. App.—Houston [14th Dist.] 2009, pet. filed), the court noted that the "core purpose" of the election-of-remedies doctrine is "to prevent a party from abusing the judicial process by ***obtaining a recovery*** against one defendant by asserting one set of facts and then later suing a second defendant seeking recovery by denying the alleged facts upon which the party recovered in the first suit." *Id.* at 60 (emphasis added). In short, the doctrine is not intended to require a defendant like Blockbuster—who has been sued by two different sets of plaintiffs in two different jurisdictions based on separate and independent transactions—to assert the same defenses in both lawsuits. And it certainly does not require the same defenses to be asserted in every single case, regardless of the fact that they might involve different agreements, different governing law, and different parties. Therefore, even if Blockbuster were acting inconsistently (which it is not), it is clearly not "abusing the judicial process" under Texas law.

Finally, even if this narrow doctrine did apply to defendants like Blockbuster, the Texas Supreme Court has held that "[o]ne who pleads alternative or inconsistent facts or remedies

---

[18] The other case relied on by Plaintiffs, which does not even involve the election-of-remedies doctrine, is also inapplicable. In *R.J. Griffin & Co. v. Beach Club II Homeowners Association*, 384 F.3d 157 (4th Cir. 2004), the court held that doctrine of equitable estoppel prevents a party from avoiding the part of a contract that requires arbitration while simultaneously seeking to benefit from other provisions in the same contract. *See id.* at 160-61. There is no suggestion here that Blockbuster is avoiding certain parts of its contracts with Plaintiffs while simultaneously seeking to enforce other provisions in those same contracts.

against two or more parties may settle with one of them on the basis of one remedy or state of facts and still recover a judgment against the others based on the pleaded alternative or inconsistent remedies or facts." *Bocanegra*, 605 S.W.2d at 851-52. In other words, Plaintiffs' own authority makes clear there would be nothing improper if Blockbuster settled with one set of plaintiffs in a judicial forum and litigated against another set of plaintiffs in an arbitral forum.

**B.      Plaintiffs' Other Arguments Have Been Rejected By The *Lane* Court.**

Apart from their latest attack on the arbitration agreement, Plaintiffs' Motion is simply a rehash of the same arguments that have been considered and rejected by the *Lane* court. For example, Plaintiffs complain that the parties in the *Lane* case did not file a notice under Rule 3-13 of the Local Rules of the Northern District of California, which applies when there is another action that involves similar matters or parties. Presumably, Rule 3-13 only applies to plaintiffs and parties who have answered. More importantly, however, the *Lane* court held that the failure to file a Rule 3-13 notice in that court was a nonissue. Contrary to Plaintiffs' belief that a Rule 3-13 notice would have set in motion some process that would have resulted in the transfer of the *Lane* case to this Court, the *Lane* court noted that the rule provides only that, upon receiving such a notice, a Court "may make appropriate orders." *Lane* Doc. # 66 at 8. As to what it would have done if it had received a Rule 3-13 notice, the *Lane* court responded: nothing. According to the *Lane* court, "no further orders in response to a Rule 3-13 notice would have been, or would now be, appropriate." *Id.*

Similarly, Plaintiffs' Motion also notes that they have argued to the *Lane* court that it should "deny preliminary approval of the proposed settlement because Facebook is merely acting to indemnify Blockbuster, pursuant to an indemnity agreement that is void as against public policy." *Harris* Doc. #41 at 9. Again, that argument has now been rejected by the *Lane* court. The *Lane* court held that there was "no evidence that would support an inference or finding of

any impropriety." *Lane* Doc. #66 at 5 n.5. Moreover, it pointed out that "[a]n entirely innocent explanation for the fact that the release extends to all defendants is that it would do Facebook little good to settle this dispute with plaintiffs remaining at risk of being brought back into the litigation when plaintiffs then pursued claims against the remaining defendants." *Id.* at 5. At the hearing on Plaintiffs' motion for leave to intervene, the *Lane* court was clearly perplexed at Plaintiffs' purported outrage at the Facebook settlement:

> COURT: So to the extent that you suggest that I should be concerned that a settling party is by virtue of that settlement [] also trying to take care of some contingent exposure, that happens every day and there's nothing wrong with that.

Hearing Transcript at 30. Here, Plaintiffs provide no additional facts or authorities that would require this Court to take any action based on any alleged problems with the *Lane* settlement approval process. As the *Lane* court has held, that process is a fair one and all objections to the settlement (including any public-policy objections) will be duly considered before the settlement receives final approval from the court.

## C. Plaintiffs' Recent Decision To Sue Facebook Does Not Justify Lifting The Stay Here.

Plaintiffs' decision to sue Facebook last month is a transparent act of gamesmanship. Plaintiffs cannot seriously contend that they only recently became aware of Facebook's role in the Facebook Beacon program, as Plaintiffs devoted the first several pages of their complaint in this case to allegations of wrongdoing ***against Facebook***. When they initially filed this case, the *Harris* counsel made the strategic decision not to sue Facebook, and they spent the first several months of the case trying to remain in the Eastern District of Texas—a district that had no connection to any of the parties, evidence, or operative facts at issue here. In their pleadings in *Lane*, the *Lane* attorneys addressed these strategic decisions:

> I have always believed that the action filed by the Texas Group had many fatal defects that would make the opportunity for a timely recovery on behalf of the class virtually impossible. These defects included failing to sue the entity that

was at the center of the wrongful conduct (Facebook), suing in a venue and under a law that could not provide a global resolution, and making the only Defendant one with whom the plaintiffs had an arbitration clause.

Further, I viewed counsel for the Texas Group as being committed to litigate in Texas even though there seemed no basis for venue in the Eastern District of Texas and the sole rationale, I believed, was that it is a jurisdiction with a reputation for being extremely favorable for plaintiffs' lawyers from Texas.

Finally, all evidence and witnesses and conduct emanate from the Northern District of California. I believed that simple fact would also severely hamper the efforts of counsel for the Texas Group to create any benefit for the Class from a Court in Texas.

*Lane* Decl. #55-1 (Kamber Decl. ¶ 6-8). Now, the *Harris* Plaintiffs have decided to sue Facebook too. But that decision and that new strategy should not disturb the stay in this case.

**D.     The *Lane* Settlement Supports the Continued Stay.**

The *Lane* court's recent order granting preliminary approval of the settlement provides even more reason why no further action by this Court is necessary at this time. If this case had not already been stayed pending the Fifth Circuit's resolution of the arbitration issue, Blockbuster would likely have moved for a stay based on the *Lane* court's order granting preliminary approval of the proposed national class settlement. That order establishes the *Lane* court as the sole venue for resolving issues relating to the fairness of that settlement and enjoins any *Lane* class members (including Plaintiffs) from "commenc[ing] or prosecut[ing]" any action against Facebook and its Beacon partners. *See Lane* Doc. #67 at 5-6; *see also* NEWBURG ON CLASS ACTIONS (3d ed.) § 7.31 ("When cases bearing similar class allegations and similar causes of action are pending in different courts . . . rarely should the same class be certified on the same cause of action before more than one court, in the absence of special circumstances.").

In light of the proposed national settlement in *Lane*, a stay in this *Harris* case would be further justified in the interest of comity and judicial economy. While the settlement process is moving forward in *Lane*, it would be a waste of resources to continue duplicative litigation in

Texas. As the *Lane* court has made clear, if Plaintiffs object to the fairness of the settlement, they may file any such objections in that court. Significantly, if they ultimately choose not to take advantage of the *Lane* settlement, they have the right to opt out of that settlement and pursue their claims individually (in Court or in arbitration, depending on the outcome of the appeal in the Fifth Circuit).[19] In short, this case should remain stayed. The *Lane* settlement actually provides an additional reason to continue the stay (not a reason to lift the stay).

## IV. CONCLUSION

For the foregoing reasons, the relief requested in Plaintiffs' Motion to Lift Stay, Consolidate Proceedings and to Enter Order to Show Cause should be denied.

---

[19] If they do not opt out, then the *Lane* settlement will have resolved their claims.

Respectfully submitted,

/s/ Frank C. Brame _____

Michael L. Raiff
  State Bar No. 00784803
Frank C. Brame
  State Bar No. 24031874
Marc A. Fuller
  State Bar No. 24032210
VINSON & ELKINS L.L.P.
2001 Ross Avenue, Suite 3700
Dallas, Texas 75201
214.220.7705
214.999.7705 (fax)
mraiff@velaw.com

***Attorneys for Defendant Blockbuster Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of November 2009, I electronically filed the foregoing Defendant Blockbuster Inc.'s Response in Opposition to Plaintiffs' Motion to Lift Stay, Consolidate Proceedings and to Enter Order to Show Cause with the Clerk of the Court for the United States District Court, Northern District of Texas, using the ECF System of the Court. The ECF System sent a "Notice of Electronic Filing" to the attorneys who have consented in writing to accept this notice as service of this document by electronic means.

/s/ Frank C. Brame _____
Frank C. Brame

US 115145v.3