# EXHIBIT 4

SCOTT KAMBER (admitted *pro hac vice*)
DAVID STAMPLEY (admitted *pro hac vice*)
skamber@kamberedelson.com
dstampley@kamberedelson.com
KAMBEREDELSON, LLC
11 Broadway, 22nd Floor
New York, New York 10004
Telephone: (212) 920-3072
Facsimile: (212) 202-6364

JOSEPH H. MALLEY (admitted *pro hac vice*)
LAW OFFICE OF JOSEPH H. MALLEY
1045 North Zang Boulevard
Dallas, Texas 75208
Telephone: (214) 943-6100
Facsimile: (214) 943-6170

DAVID C. PARISI (SBN 162248)
SUZANNE HAVENS BECKMAN (SBN 188814)
dcparisi@parisihavens.com
shavens@parisihavens.com
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
Telephone: (818) 990-1299
Facsimile: (818) 501-7852

ATTORNEYS FOR PLAINTIFFS

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| SEAN LANE, *et al.*,<br><br>Plaintiffs,<br>v.<br><br>FACEBOOK, INC., a Delaware Corporation,<br>BLOCKBUSTER, INC., a Delaware Corporation,<br>FANDANGO, INC., a Delaware Corporation,<br>HOTWIRE, INC., a Delaware Corporation,<br>STA TRAVEL, INC., a Delaware Corporation,<br>OVERSTOCK.COM, INC., a Delaware corporation,<br>ZAPPOS.COM, INC., a Delaware Corporation,<br>GAMEFLY, INC., a Delaware Corporation, and<br>DOES 1-40, corporations,<br><br>Defendants. | No. 08-cv-3845 RS<br><br>[Assigned to the Hon. Richard Seeborg]<br><br>**DECLARATION OF SCOTT A. KAMBER IN OPPOSITION TO PLAINTIFFS' MOTION FOR LIMITED INTERVENTION**<br><br>Location: Courtroom 4, 5th Floor<br>280 South First Street<br>San Jose, CA 95113<br>Date: October 14, 2009<br>Time: 9:30 a.m. |

# DECLARATION OF SCOTT A. KAMBER

I, Scott A. Kamber, declare as follows:

1. I am one of plaintiffs' proposed lead counsel in the above-captioned litigation. I make this declaration in opposition to the Motion for Limited Intervention (Dkt. 39) pending before this Court. I have actively participated in all aspects of this litigation and am fully familiar with the proceedings. If called upon, I am competent to testify that the following facts are true and correct to the best of my knowledge, information, and belief.

### A. Counsel for the Texas Group Knew of the *Lane* Case Since Its Inception

2. One of my co-counsel in this case is Joseph Malley who practices out of Dallas and whom I understand has had a working relationship with the counsel for the Texas Group on other matters. I have been working with Mr. Malley on the development of the case against Facebook for the Beacon program since before the Texas Group initiated their case against Blockbuster.

3. In or about June 2008, I was told by Mr. Malley that he had a conversation with Mr. George Otstott, one of the counsel for the Texas Group, in which Mr. Malley informed Mr. Otstott that he was working with a national law firm in New York that specializes in technology and privacy law and would be filing a case within the next month or so against Facebook.

4. Approximately one month after we filed the *Lane* action, I asked Mr. Malley if he had any further contact with counsel for the Texas Group regarding the *Lane* matter. Mr. Malley told me that he had further communication with Mr. Otstott in which Mr. Malley informed Mr. Ostott that we had filed the *Lane* matter.

### B. I Made the Decision that Northern District of California Local Civil Rule 3-13 Was Not Applicable and Did Not Require Notifying the Court of the Suit by the Texas Group Against Blockbuster.

5. As counsel admitted *pro hac vice* in this matter, I am familiar with the Local Rules of this Court, including Local Rule 3-13. At the time of filing I did not believe that Rule 3-13 was applicable. My analysis is substantially the same as that which appears in our Memorandum of Law. In short, the case filed by the Texas Group is far narrower as to parties and claims than the *Lane* matter, and I believe that L.R. 3-313 is inapplicable on its face.

6. Further, I have always believed that the action filed by the Texas Group had many fatal defects that would make the opportunity for a timely recovery on behalf of the class virtually impossible. These defects included failing to sue the entity that was at the center of the wrongful conduct (Facebook), suing in a venue and under a law that could not provide global resolution, and making the only Defendant one with whom the plaintiffs had an arbitration clause.

7. Further, I viewed counsel for the Texas Group as being committed to litigate in Texas even though there seemed no basis for venue in the Eastern District of Texas and the sole rationale, I believed, was that it is a jurisdiction with a reputation for being extremely favorable for plaintiffs' lawyers from Texas.

8. Finally, all evidence and witnesses and conduct emanate from the Northern District of California. I believed that simple fact would also severely hamper the efforts of counsel for the Texas Group to create any benefit for the Class from a Court in Texas.

9. I believe the history of the Texas Group's case demonstrates that my perspectives regarding their case were valid. *See, generally,* Exhibits attached to the Decl. of David A. Stampley.

## C. My Contact with Texas Counsel

10. Since our determination that the Texas Litigation was not related, I have had very few discussions with my co-counsel, or anyone else, regarding the Texas Group. At no point prior to filing the proposed settlement did any of the counsel for the Texas Group ever make contact with me in any way.

11. On September 23, 2009, five days after the settlement papers were filed, Mr. Malley informed me that counsel for the Texas Group wanted to discuss the proposed settlement with me. As a result, I called Thomas Correa of the Correa Firm but did not reach him, and left a message.

12. On September 24, 2009, at approximately 2:45 p.m. EST, Jeremy Wilson of the Correa Firm responded and participated in a teleconference with Dave Stampley of my firm and me. Mr. Wilson stated the position that their case was filed first and that they would take actions to protect their "rights as first-filed case." He then summarized his position. I listened and believed

that he was wrong about almost every legal point that he made on the call. I thought it was worth noting that he stated the overall fairness and adequacy of the proposed settlement in the *Lane* matter was not a concern to the Texas Group. I said little in response on this call except to point out that we complied with all applicable rules and that I strongly disagreed with their analysis. Mr. Wilson requested that we schedule another call when Mr. Correa was available and we did so for 1 p.m. the following Tuesday.

13. On September 29, 2009, at approximately 1:00 p.m. EST, Tom Correa, Jeremy Wilson, Dave Stampley, and I participated in a teleconference. After listening to Mr. Correa and Mr. Wilson reiterate the points made in the prior teleconference, I asked what it was they were asking us to do. Mr. Correa stated that we must file a notice of related action so the case can be transferred to Texas.

14. I stated our position that we have complied with all applicable rules and that we disagreed with their interpretation, and asked if Texas counsel had concerns about the proposed settlement. I pointed out that it simply hurts the class to litigate in Texas, which is the wrong venue, and where the case is currently not even in the District Court. I further stated that the *Lane* action was prosecuted in a way that avoided litigating Blockbuster's arbitration clause and that Texas counsel's decision to sue only Blockbuster is the reason the Texas case led to litigation of the arbitration clause. I pointed out that only Beacon-related VPPA claims would be released under the proposed settlement.

15. Mr. Correa then proposed that we dismiss our claims against Blockbuster, to permit Texas counsel to address Blockbuster's VPPA liability. Mr. Correa reiterated his position that they have a first-filed case and that we failed to comply with an obligation to notice it, which I denied. Mr. Wilson stated that they were unaware of the *Lane* case until shortly before our filing of our motion for preliminary approval. I asked Mr. Wilson to send me any case law that supported his position. Over the next 24 hours he sent me two cases that I believe were completely inapposite to the propositions stated by them in the call.

1  16. Mr. Correa warned me that if we did not do as he demanded that they would be
2  getting involved soon, and that they would fight us every step of the way. I asked how that would
3  benefit the Class, a question to which he failed to respond.
4  17. In both of the above conversations, Texas counsel stated their purpose was to
5  communicate. There was no mention of an intention to meet and confer. In none of these
6  communications did Texas counsel express an intention to move to shorten the briefing period for
7  their motion to intervene. I was surprised when they informed me several days later by email that
8  they had satisfied their meet-and-confer obligation for the motion to intervene. However, I never
9  understood that they intended to move to shorten time. I was extremely surprised when I received
10 ECF notice that they had moved to shorten time five days after their original motion and almost
11 two weeks after the Texas group first contacted us.
12 18. I declare under penalty perjury under the laws of the United States of America that
13 the foregoing is true and correct.
14 Executed on October 12, 2009 at Newark, New Jersey.

/s Scott A. Kamber
Scott A. Kamber

Declaration of S. Kamber in Opposition to Motion for Limited Intervention     - 5 -     Case No. No. 08-cv-3845 RS