1     ACT, THAT THEY FORMED AN AGREEMENT TO THE DETRIMENT

2     -- TO ACCOMPLISH WRONGFUL MEANS TO THE DETRIMENT OF

3     THE CLASS.

4              AND WE WOULD SUBMIT TO THE COURT THAT THE

5     CASE LAW, AND I HAVE CITED A COUPLE OF CASES, AND I

6     THINK THERE ARE OTHERS THAT I COULD SUBMIT, IF

7     GIVEN THE OPPORTUNITY, THAT SUGGEST THAT WHEN TWO

8     PARTIES ARE IN PARI DELICTO IN SUCH A WAY THAT

9     ALLOWING ONE TO INDEMNIFY THE OTHER IS CONTRARY TO

10    PUBLIC POLICY.

11             AND WE HAVE ASKED THE COURT IF -- WE

12    BELIEVE THAT THAT ISSUE NEEDS TO BE SERIOUSLY

13    EXPLORED BY THIS COURT BEFORE EVEN PRELIMINARY

14    CERTIFICATION IS PERMITTED BECAUSE WE DON'T EVEN

15    THINK THAT THIS IS WITHIN THE RANGE OF PERMISSIBLE

16    SETTLEMENTS FOR FACEBOOK TO SETTLE THIS CASE ON

17    BLOCKBUSTER'S BEHALF.

18             BLOCKBUSTER -- ESPECIALLY WHEN NO

19    INJUNCTIVE RELIEF IS PROVIDED.  BLOCKBUSTER, YOU

20    KNOW, THEY DON'T EVEN PUT TOGETHER SOME PROGRAM OF

21    A COMPLIANCE OFFICER.

22             THE COURT:  WELL, AND THE PROPOSED

23    SETTLEMENT, THEY'RE STOPPING THE DEFENDANT PROGRAM.

24             MR. WILSON:  BASICALLY THEY'RE STOPPING

25    THE BEACON PROGRAM.  WE HAVE NO COMMITMENT THAT

                                              31

1    BLOCKBUSTER IS GOING TO TAKE FURTHER STEPS TO BE

2    MORE CAREFUL.

3              THE COURT:  WELL, YOU CAN SUE THEM.  YOU

4    CAN SUE THEM.  YOU CAN BRING A NEW CASE.  I MEAN,

5    THIS CASE, IF I WERE TO APPROVE THE PROPOSED

6    DISPOSITION HERE, THAT DOESN'T GIVE A, YOU KNOW,

7    GET OUT OF JAIL FREE CARD TO BLOCKBUSTER FOR ALL

8    TIME FOR EVERYTHING IT DOES.

9              THIS IS FOCUSSED, AS I UNDERSTAND IT, ON

10   THIS BEACON PROGRAM, IF YOU WILL, AND THAT'S THE

11   PROGRAM.

12             IF BLOCKBUSTER ENGAGES IN CONDUCT,

13   DIFFERENT CONDUCT, I MEAN, GO FOR IT.  GO AT THEM.

14             I MEAN, WHAT YOU'RE SUGGESTING SOMEHOW

15   THAT SHOULD THIS SETTLEMENT, THIS PROPOSED

16   DISPOSITION BE GRANTED AND AT THE END OF THE DAY,

17   THIS IS GIVING CARTE BLANCHE TO BLOCKBUSTER TO DO

18   ANYTHING IT WANTS TO DO AND I CERTAINLY, WERE I TO

19   APPROVE IT, I WOULDN'T THINK IT GOES THAT FAR.

20             MR. WILSON:  YOUR HONOR, IT CERTAINLY

21   LET'S THEM OFF THE HOOK FOR A SYSTEMIC VIOLATION OF

22   ALL OF THE VERY SIGNIFICANT PORTION OF THE USERS.

23             THE COURT:  I UNDERSTAND THAT ARGUMENT,

24   BUT THAT IDEA THAT YOU SAY THAT THERE WOULDN'T EVEN

25   BE INJUNCTIVE RELIEF, IT WOULD BE THE PARTICULAR

                                                    32

1    PROGRAM THAT IS THE SUBJECT OF THE PROCEEDINGS IN

2    THIS COURT, AS I UNDERSTAND IT, UNLESS THIS IS

3    WRONG, THAT EVERYONE SEEMS TO SUGGEST THAT THAT

4    PROGRAM IS NO MORE.

5            NOW, YOU KNOW, YOU DON'T NEED INJUNCTIVE

6    RELIEF IF THE PROGRAM HAS BEEN TERMINATED.

7            OKAY.  LET ME HEAR EITHER FROM WHOEVER

8    WANTS TO GET UP FACEBOOK COUNSEL OR PLAINTIFF'S

9    COUNSEL.

10           MR. RHODES:  GOOD MORNING, YOUR HONOR.

11   MIKE RHODES ON BEHALF FACEBOOK.  LET'S GO BACK TO

12   FIRST PRINCIPLES, THE QUESTION OF INTERVENTION,

13   PERMISSIVE OR MANDATORY.

14           A FUNDAMENTAL ARGUMENT INHERENT IN THE

15   TIMELINESS FACTOR IS WHETHER OR NOT THE FAILURE TO

16   ACT HAS RESULTED IN PREJUDICE TO THE PARTIES.

17           ATTACHED TO A DECLARATION SUBMITTED BY

18   BLOCKBUSTER DOCUMENT -- THIS IS DOCKET RECORD 54-1,

19   PAGE 4 --

20           THE COURT:  RIGHT.

21           MR. RHODES:  -- IS AN E-MAIL TO THE

22   COUNSEL THAT JUST ADDRESSED YOUR HONOR.  LOOKED YOU

23   RIGHT IN THE EYE AND GAVE YOU THE ARGUMENT.

24           THE COURT:  I SEE IT.

25           MR. RHODES:  THIS IS AN E-MAIL FROM HIM

                                                    33

1    TO BLOCKBUSTER IN MAY IN WHICH HE EXPRESSLY

2    ACKNOWLEDGES THE EXISTENCE OF THE LANE CASE AND THE

3    FACT THAT IT HAS ENTERED INTO FINAL SETTLEMENT

4    NEGOTIATIONS.

5            NOW, I CAN TELL YOU WITH GREAT CERTITUDE

6    THAT AFTER THIS DATE SETTLEMENT NEGOTIATIONS

7    CONTINUED.  WE CONDUCTED ANOTHER FULL DAY WITH

8    MR. PIAZZA, I KNOW YOU'RE FAMILIAR WITH HIS FREE

9    SCHEDULE, IN LATE JULY.

10           THE COURT:  YES.

11           MR. RHODES:  SO HE HAD ESSENTIALLY ALL OF

12   MAY, JUNE, AND JULY TO COME FORWARD AND FILE A

13   NOTICE OF RELATED CASE AND JUMP INTO THESE

14   PROCEEDINGS BEFORE MR. KAMBER AND I HAD SPENT

15   COUNTLESS HOURS, ANOTHER FULL DAY OF MEDIATION AND

16   TO TRY AND FIND THE SETTLEMENT IN THE MIX HERE.

17           THAT'S REAL AND TANGIBLE PREJUDICE TO MY

18   CLIENT, FACEBOOK, BECAUSE HE FAILED TO ACT.

19           AND I THINK, TO BE HONEST WITH YOU, IF

20   YOU LOOK AT THE INSINUATIONS IN HIS PAPERS AGAINST

21   ME PERSONALLY, AGAINST THE PROCESS, AGAINST

22   BLOCKBUSTER, I CAN LOOK YOU RIGHT IN THE EYE AND

23   SAY THAT "I HANDLED THESE NEGOTIATIONS PERSONALLY.

24   THERE WAS NOBODY ELSE.  MIKE RHODES ALONE."

25           THE COURT:  YOU'RE NOT SUGGESTING,

34

1    THOUGH, THAT SHOULD THE SETTLEMENT BE APPROVED AT

2    THE END OF THE DAY, IT'S NOT GOING TO HAVE THE

3    IMPACT?  AT LEAST IT ARGUABLY COULD HAVE THE IMPACT

4    OF BEING OF GREAT BENEFIT TO BLOCKBUSTER; RIGHT?

5             MR. RHODES:  IN THIS INSTANCE RELATING TO

6    BEACON?

7             THE COURT:  YES.

8             MR. RHODES:  BECAUSE AS YOU CORRECTLY

9    ANTICIPATED, THERE WERE 47 BEACON MERCHANTS.  PUT

10   YOURSELVES IN THE POSITION OF FACEBOOK.

11            YOU'RE GOING TO HAVE 47 OTHER CASES TO GO

12   FORWARD AND THEN HAVE THEM DEMAND I PAY THEIR

13   DEFENSE COSTS AND IF THEY LOSE MAYBE PAY THE

14   JUDGMENTS?

15            THE COURT:  LET ME ASK YOU IF THE TIME

16   ISSUE WASN'T ONE OF THE ARGUMENTS THAT YOU WERE

17   MAKING.

18            LET'S SAY THAT COUNSEL IN THE HARRIS CASE

19   ACTED WITH GREAT DISPATCH AND THEN CAME IN AND SAID

20   WE HAVE THE RIGHT TO INTERVENE.  WOULD YOU SAY THAT

21   THEY DIDN'T HAVE A RIGHT TO INTERVENE AT THAT

22   STAGE?

23            MR. RHODES:  YES.

24            THE COURT:  OKAY.  WHY NOT?

25            MR. RHODES:  I'LL USE THE TEXAS IDIUM.

                                              35

1    IT'S THE TALE WAGGING THE DOG.  THIS IS A MUCH

2    LARGER CASE.  THIS IS THE CASE AGAINST FACEBOOK AND

3    SEVEN CAUSES OF ACTION AND SEVEN NAMED DEFENDANTS

4    AND DOE ALLEGATIONS, AND THIS IS AN EXTRA RECORD

5    STATEMENT THAT I'M ABOUT TO MAKE YOU SO YOU MAY NOT

6    CONSIDER IT BUT THE REALITY IS WE WERE CONSIDERING

7    AMENDMENTS TO BRING THE REST OF THE BEACON

8    MERCHANTS IN.

9            THEIR CASE IN TEXAS IS SOLELY AGAINST

10   BLOCKBUSTER, A SOLITARY CLAIM FOR VPPA.

11           IF YOU GO BACK TO THE BEGINNING OF THE

12   RECORD IN THIS CASE, WE FILED A MOTION TO DISMISS

13   AND IN OUR MOTION TO DISMISS PAGES 9 THROUGH 12, WE

14   EXPLAINED WHY FACEBOOK IS NOT LIABLE TO VPPA.

15   WE'RE NOT A VIDEOTAPE SERVICE PROVIDER, AND IT

16   DOESN'T APPLY TO US.

17           SO HE HAS A SMALL CASE.

18           YOU CAN QUARREL WITH ME I SUPPOSE ABOUT

19   WHETHER WE SHOULD HAVE FILED A NOTICE OF RELATED

20   CASE.  FROM MY ADVANTAGE REPRESENTING FACEBOOK ON A

21   BEACON PROGRAM, I DIDN'T THINK THAT CASE WAS

22   RELATED.  MORE FUNDAMENTALLY IT'S STAYED.  IT'S UP

23   ON APPEAL.

24           THE COURT:  ALTHOUGH FOR FUTURE REFERENCE

25   I DO THINK IF YOU LOOK AT 3-13, THE FOCUS OF THE

                                                    36

1    CASE -- THE CASE YOU'RE LOOKING AT FOR PURPOSES OF

2    DETERMINING WHETHER OR NOT IT'S RELATED IS THE

3    TEXAS CASE.

4              MR. RHODES:  I HEAR YOU.  I ACKNOWLEDGE

5    THAT, YOUR HONOR.

6              THE COURT:  OKAY.

7              MR. RHODES:  BUT I STILL SAY THAT ON THE

8    MERITS, ASIDE FROM TIMELINESS WHICH I THINK IN THE

9    LAW OF INTERVENTION IS A VERY SIGNIFICANT FACTOR

10   BECAUSE OF ITS POTENTIAL TO WORK PREJUDICE TO

11   PARTIES LIKE FACEBOOK WHO WITH HIS KNOWLEDGE, FOR

12   90 MORE DAYS HE SITS THERE AND DOES NOTHING, WE

13   TAKE FURTHER ACTIONS AT A REAL COST.

14             YOU KNOW, WE'RE NOT TALKING -- WE'RE

15   TAKING TENS OF THOUSANDS OF DOLLARS, MANY HOURS TO

16   REWORK THE DEAL.  THE END PRODUCT, WHICH AS YOU

17   NOTED BEACON IS BEING KILLED.  THAT'S MORE THAN

18   INJUNCTIVE RELIEF.

19             WE SPENT MONTHS ON TRYING TO FIGURE OUT

20   HOW TO TWEAK IT AND AT THE END WE SHOT IT AND TO ME

21   FUNDAMENTALLY HAVING TO LOOK AT THE QUESTION

22   PRESENTED TODAY IN THIS CONTEXT.  THEY HAVE NO

23   RIGHT TO INTERVENE AND EVERY ARGUMENT THEY RAISED,

24   AS YOU PROPERLY POINTED OUT, CAN BE IN THE FINAL

25   APPROVAL HEARING.

37

1         AND THE IDEA THAT I MAY NOT HAVE TIME TO

2    PREPARE FOR A HEARING THAT MAY NOT OCCUR UNTIL

3    FEBRUARY, GIVEN ALL OF THE BRIEFING HE HAS DONE

4    TODAY AND KNOWING IT'S GOING TO HAPPEN, THAT

5    DOESN'T GET HIM VERY FAR.

6         THE COURT:  THE POINT THAT MR. WILSON

7    MADE WAS SHOULD I GRANT PRELIMINARY APPROVAL AND

8    START THE TRAIN DOWN THE TRACKS, THAT SOMEHOW WHEN

9    YOU GET TO THE FAIRNESS HEARING THERE'S A

10   PRESUMPTION OF SOME KIND THAT -- WHAT IS YOUR VIEW

11   ON THAT?

12        MR. RHODES:  I WISH IT WERE SO.  I WISH

13   IT WERE SO.  I DO A LOT OF CLASS ACTIONS AND I WISH

14   IT WERE SO BECAUSE I CAN TELL YOU THAT I CERTAINLY

15   HIT A FEW SPEED BUMPS IN THE FINAL APPROVAL

16   HEARING.

17        ONE FINAL POINT, AND THEN I'LL SIT DOWN.

18        THE QUESTION OF WHETHER OR NOT THE REMEDY

19   OF OPTING IS EFFECTIVE FOR THIS SMALL GROUP OF

20   PLAINTIFFS IS INTERESTING.  THESE GUYS HAVE BEEN UP

21   TO A LOT IN THE LAST WEEK.  THEY SUED FACEBOOK ON

22   FRIDAY.  THEY DIDN'T WANT TO COME HERE TO SEE WHAT

23   YOU WOULD DO.  THEY SUED US IN TEXAS.  THEY SERVED

24   IT TWO DAYS AGO OR YESTERDAY.

25        IN THEIR PRAYER THEY SEEK ATTORNEY'S FEES

38

1    FOR A STATUTORY VIOLATION.

2            AND THE LAW IS PRETTY CLEAR THAT WHEN

3    THERE'S AN ADEQUATE REMEDY OTHER THAN CLASS

4    CERTIFICATION, THAT IS TO SAY THAT SOMEBODY CAN

5    BRING AN INTEGRAL CLAIM AND SEEK TO RECOVER FEES

6    AND COSTS, SOME COURTS WILL LOOK AT THAT AND SAY

7    YOU DON'T NEED TO HAVE A CLASS.  YOU HAVE EVERY

8    INCENTIVE TO BRING AN INDIVIDUAL CLAIM BECAUSE EVEN

9    IF YOUR INDIVIDUAL PENALTY IN THIS CASE WAS SMALL,

10   THE ATTORNEY'S FEES AND COSTS WOULD BE FULLY

11   COMPENSABLE.  THAT'S WHAT THEY SAY IN THEIR

12   COMPLAINT.

13           SO THE IDEA THAT IT'S NOT AN EFFECTIVE

14   REMEDY TO THE INTERVENORS, NOT THE LAWYERS STANDING

15   HERE, BUT THE PEOPLE THAT ARE ON THE CAPTION.

16           THE COURT:  ALTHOUGH, DON'T YOU THINK

17   THAT, AND THIS IS AGAIN, PERHAPS, JUMPING AHEAD TO

18   THE QUESTION OF THE APPROVAL, BUT A $2500 STATUTORY

19   CLAIM ON AN INDIVIDUAL BASIS, HOW LIKELY IS IT?

20           I MEAN, THAT IS EXPECTING A LOT FOR A

21   CLASS MEMBER TO -- A PUNITIVE CLASS MEMBER TO

22   ACTUALLY PURSUE THAT?

23           MR. RHODES:  I DON'T DISPUTE THAT IN

24   PRACTICAL TERMS THAT MAY NOT OCCUR, BUT THAT'S NOT

25   WHAT THE LAW SAYS.

39

```
 1              THE LAW SAYS IF YOU CAN PROVIDE A REMEDY

 2     THAT OCCURS WHERE YOU CAN GET FEES AND COSTS, IT'S

 3     ONE OF THE FACTORS TO CONSIDER ON CLASS

 4     CERTIFICATION.

 5              I'M NOT SUGGESTING THAT --

 6              THE COURT:  ALTHOUGH EFFECTIVELY I'M NOT

 7     SURE YOU CAN GET -- IF IT'S A $2500 CLAIM, YOU HAVE

 8     TO GO TO A SMALL CLAIMS COURT IN TEXAS BUT MAYBE

 9     YOU CAN GET FEELS.  I'M NO EXPERT ON TEXAS SMALL

10     CLAIMS PROCEDURE BUT --

11              MR. RHODES:  BUT THE POINT IS THAT THERE

12     IS A RIGHTING OF REMEDY FOR THE INTERVENORS

13     THEMSELVES AND I SUGGEST TO YOU, AND I DON'T MEAN

14     TO BE CALLOUS, BUT I SUGGEST TO YOU THAT THE

15     INTERVENORS, THE HUMAN BEINGS THAT ARE PURPORTING

16     TO BRING THESE CLAIMS ARE NOT THE PEOPLE THAT ARE

17     SITTING IN THE FRONT OF THE TRAIN.

18              THE COURT:  WELL, BOTH SIDES, I KNOW

19     YOU'RE SAYING, WELL, OH, THIS IS ABOUT FEES.

20              AND THE OTHER SIDE IS SAYING THAT THIS IS

21     AN UNHOLY DEAL WHERE SKULDUGGERY HAS OCCURRED

22     BETWEEN BLOCKBUSTER AND FACEBOOK.

23              I MEAN, A LOT OF THAT IS FORTUNATELY

24     SOMETHING THAT I DON'T HAVE TO PLUMMET THE DEPTHS

25     OF BECAUSE WHAT I NEED TO DETERMINE IS, IS THERE A
```

40

1    LEGAL BASIS TO INTERVENE OR NOT?

2         AND THEN DEPENDING UPON THAT

3    DETERMINATION LOOK AT THE PRELIMINARY APPROVAL

4    MOTION.

5         THAT'S WHAT I HAVE IN FRONT OF ME.  SO A

6    LOT OF THIS STUFF ABOUT ALL OF THESE ACCUSATIONS OF

7    WHO IS DOING WHAT BLISSFULLY, I DON'T THINK I

8    NECESSARILY HAVE TO DO.

9         MR. RHODES:  I AGREE WITH YOU, BUT I

10   THINK THE RECORD IS CLEAR THAT THEY DID KNOW ABOUT

11   THIS A LONG TIME AGO, AND THEY DID NOT ACT.

12        THE COURT:  AND THAT FACT IS AN

13   APPROPRIATE ONE FOR ME TO FOCUS ON.

14        MR. RHODES:  THANK YOU, YOUR HONOR.

15        THE COURT:  LET ME ASK YOU WHILE YOU'RE

16   STANDING UP HERE, AND I KNOW THIS IS MERGING TO

17   SOME DEGREE THE PRELIMINARY APPROVAL QUESTION AND

18   THIS INTERVENTION ISSUE, BUT WHAT IS FLOATING OUT

19   HERE IS THIS IDEA THAT THERE IS A TYPICALITY

20   PROBLEM, THAT THE VPPA CLAIMS OF THE BLOCKBUSTER

21   PUNITIVE CLASS MEMBERS IN THE TEXAS PROCEEDING,

22   BECAUSE THERE IS VALUE IN THOSE CLAIMS IN A WAY

23   THAT PERHAPS THE OTHER PUNITIVE CLASS MEMBERS IN

24   THE NON-BLOCKBUSTER WORLD, THEY MAY NOT HAVE THE

25   STATUTORY 2500.

41

1           WHAT IS YOUR RESPONSE TO THAT?

2                MR. RHODES:  LET ME RESPOND TO THAT ON

3     THE MERITS.  THEY ACT AS IF THEY HAD THE JURY TRIAL

4     AND THEY HAVE WON.

5                THE COURT:  WELL, I RECOGNIZE THAT YOUR

6     POSITION IS THAT THERE IS NO VPPA CLAIM.

7                BLOCKBUSTER I HAVEN'T HEARD FROM.

8                MR. RHODES:  WE'RE SAYING THAT IN THE

9     CONTEXT OF A CASE LIKE THIS, AND THIS GOES TO THE

10    FAIR ADMINISTRATION OF A LAWSUIT, A YEAR AGO WE

11    FILED A MOTION TO DISMISS.

12                THE PARTIES MEET AND CONFER.  WE GO OFF

13    AND SPEND AN EXTRAORDINARY AMOUNT OF EFFORT TO

14    SETTLE THIS CASE.  IT'S NOT LIKE WE'RE TALKING

15    ABOUT CHUMP CHANGE HERE.  IT'S CLOSE TO TEN MILLION

16    DOLLARS.  THE COURT HAS DISCRETION ON SOME OF THESE

17    PENALTY PROVISIONS.

18                SO THE PREMISE THAT, WELL, YOU SOLD US

19    DOWN THE RIVER BECAUSE WE COULD GET A LOT MORE IF

20    WE TRIED THE CASE, I CONCEDE THAT POINT.  THAT'S

21    THE NATURE OF A SETTLEMENT.

22                BUT IN THE CONTEXT OF A TEN MILLION

23    DOLLAR DEAL, MULTIPLE MEDIATION SUPERVISED BY AN

24    EXPERIENCED MEDIATOR AND CONDUCTED BY COUNSEL, THIS

25    IS WHAT YOU END UP WITH IN THE SETTLEMENT ARENA.

                                                    42

```
 1            THE COURT:  I UNDERSTAND THAT, BUT IT'S

 2   NOT A QUESTION OF WHETHER OR NOT AT THE END OF THE

 3   DAY PLAINTIFFS CAN PREVAIL ON THEIR CLAIMS BECAUSE

 4   I ASSUME YOU WOULD AGREE WITH ME, THE TYPICALITY

 5   ANALYSIS IS JUST THE NATURE OF THE CLAIMS, NOT

 6   WHETHER OR NOT THEY'RE GOING TO WIN OR LOSE ON

 7   THOSE CLAIMS.

 8            MR. RHODES:  I AGREE WITH YOU.

 9            THE COURT:  SO THE QUESTION IS ARE THEY

10   DIFFERENT IN KIND WHETHER OR NOT THEY'RE GOING TO

11   SUCCEED?

12            AND THAT'S WHAT I'M TRYING TO GET AT

13   BECAUSE THERE IS SOME SUGGESTION THAT THERE IS

14   PERHAPS A SUBCLASS THAT HAS A FAIRLY DIFFERENT SET

15   OF CLAIMS IN THE SENSE OF WHAT THEY COULD RECOVER

16   THAN SOME OF THE OTHER PUNITIVE CLASS MEMBERS.

17            MR. RHODES:  I DISAGREE FOR TWO REASONS.

18            ONE IS THAT THE CENTERPIECE OF LANE IS

19   BEACON.  BEACON IS FACEBOOK AND 47 MERCHANT

20   DEFENDANTS.  ACTIVITY TAKES PLACE ON THOSE WEB

21   SITES AND IS FED BACK.

22            SOME WILL HAVE ALLEGED VPPA DISCLOSURE AS

23   DOES FACEBOOK ON AIDING AND ABETTING AND SECONDARY

24   LIABILITY THEORIES, AND SOME WILL NOT.

25            IS IT A SUBCLASS?  I DON'T THINK SO.
```

43

1       THEY WANT TO RAISE THAT ARGUMENT TO COMMENCE YOU AT

2       THE FINAL HEARING TO SAY THIS CLASS AS DENOMINATED

3       SHOULD NOT BE CERTIFIED AS REQUESTED BECAUSE

4       THERE'S THIS DISTINCT SUBCLASS.

5              BUT THAT'S NOT ON TODAY'S AGENDA, WITH

6       ALL RESPECT.  THIS IS A PRELIMINARY HEARING.

7              THIS IS SIMPLY I SEND A NOTICE AND TELL

8       PEOPLE HOW TO OBJECT, WHEN TO OBJECT AND BRING ALL

9       OF THESE ARGUMENTS FORWARD.

10             THE COURT:  YES.  THE PRELIMINARY

11      APPROVAL, THOUGH, DOES REQUIRE ME TO LOOK AT THE

12      BASIC RULE 23 FACTORS.

13             SO I AGREE WITH YOU, ALTHOUGH TYPICALITY,

14      IF I HAVE TO LOOK AT TYPICALITY EVEN IN A

15      PRELIMINARY BASIS, THESE ISSUES HAVE TO BE

16      ADDRESSED IN SOME FASHION.

17             MR. RHODES:  YES, AND I WOULD SUBMIT TO

18      YOU IF YOU LOOK AT THE COMPLAINT IN THIS

19      PROCEEDING, WHICH IS DOCUMENT 1 STARTING AT PAGE

20      34, YOUR HONOR.

21             THE COURT:  UH-HUH.

22             MR. RHODES:  YOU'LL SEE THE DEFINITION OF

23      A CLASS WHICH MORE THAN MEETS THE DEFINITION THAT

24      YOU NEED TO SATISFY YOURSELF IS MET HERE IN ORDER

25      TO PRELIMINARILY APPROVE THIS PROPOSED SETTLEMENT

                                                              44

1    CLASS.

2              THE COURT:  OKAY.  MR. KAMBER, DO YOU

3    WANT TO SAY ANYTHING?

4              MR. KAMBER:  I'LL BE BRIEF, YOUR HONOR.

5    I JUST WANTED TO POINT OUT THAT FACEBOOK REALLY IS

6    THE GRAVAMEN OF OUR CASE.  AND WHEN ONE LOOKS AT --

7    AND IT WAS INTERESTING AS MR. WILSON WHEN HE CAME

8    UP HERE ONLY MENTIONED THE WORD BEACON IN THE LAST

9    MINUTE OR TWO OF HIS PRESENTATION AND THAT WAS

10   AFTER THE DISCUSSION WAS INITIATED BY THE COURT.

11             WHEN ONE LOOKS AT THE TRANSFER PAPERS

12   THAT WENT ON DOWN IN FLORIDA, ONE NEEDS TO REMEMBER

13   THAT THEY FILED IN THE EASTERN DISTRICT OF TEXAS

14   WHICH HAD NO CONNECTION TO THIS.

15             AND WHEN THEY WENT TO THE NORTHERN

16   DISTRICT OF TEXAS, THEY CONCEDED THAT WITNESSES AND

17   FACTS AND WHAT WENT ON AND THE WRONG THAT WENT ON

18   ALL EMANATED FROM THE NORTHERN DISTRICT OF

19   CALIFORNIA.  EVERYBODY IN THIS ROOM KNOWS THAT THIS

20   CASE IS ALL ABOUT FACEBOOK BEACON.

21             THERE MAY BE THEORETICALLY A WAY TO GO

22   AGAINST A COURSE OF ACTION AGAINST BLOCKBUSTER

23   ONLY, AND WE AS PLAINTIFF'S COUNSEL WHEN WE WERE

24   MAKING OUR DECISION THOUGHT THAT WAS IMPRACTICAL.

25   THAT JUST DIDN'T MAKE ANY SENSE WHATSOEVER, AND IT

                                                    45

1      WAS NOT A WAY TO LITIGATE THE CASE.

2              IN LOOKING AT THE ARBITRATION CLAUSE

3      FORESEEING ISSUES THAT THEY HAD, OBVIOUSLY BRINGING

4      IN PARTIES THAT WERE NOT PART OF THE ARBITRATION TO

5      US MADE SENSE.

6              I'M NOT GOING TO SIT HERE AND MAKE ANY

7      CRITICISM OF THE ARBITRATION ARGUMENTS MADE BY

8      TEXAS COUNSEL, AND IT DOESN'T HAVE ANYTHING TO DO

9      WITH OUR CLASS AND THEIR CLASS, WHICH HAS

10     OVERLAPPING MEMBERS OF TWO CLASSES, AND IT DOESN'T

11     DO ANYBODY ANY GOOD.

12              AND I'M CERTAINLY NOT GOING TO COME UP

13     HERE AND DO THAT.

14              AND, IN FACT, IT WAS INTERESTING THAT

15     MR. WILSON MADE MENTION OF A CONVERSATION FROM A

16     PUBLIC INTEREST GROUP.  AND I BELIEVE THAT PUBLIC

17     INTEREST GROUP WAS EPIC BECAUSE EPIC CALLED ME THE

18     WEEK PRIOR AND ASKED ME IF WE BELIEVED THAT THIS

19     CASE WOULD EXTINGUISH THE CASE IN TEXAS.

20              AND MY COMMENT TO EPIC WAS THAT I DIDN'T

21     THINK IT WAS MY PLACE TO OPINE ON THAT.  AND I SAID

22     THAT IF THEY HAD AN INTEREST IN PURSUING -- IN

23     PUTTING IN AN AMICAS BRIEF TO THE FIFTH CIRCUIT,

24     THAT I DIDN'T WANT TO SAY ANYTHING THAT WOULD KEEP

25     THEM FROM PUTTING IN AN AMICAS MANY BRIEF BECAUSE

                                                    46

1    OBVIOUSLY IN THE WORLD OF CLASS ACTION LITIGATION

2    AND LOOKING AT THE INTEREST OF THE CLASS I CAN'T

3    THINK OF WHERE IT BENEFITS THE CLASS ANYWHERE TO

4    NOT PROCEED AND KNOCK OUT AN ARBITRATION CLAUSE AND

5    CREATE ONE MORE STATE THAT ENFORCES AN ARBITRATION

6    CLAUSE IN THIS CASE.

7                BUT HERE THAT WAS UNNECESSARY.  IT WAS

8    UNNECESSARY TO ENGAGE IN THAT LITIGATION IN ORDER

9    TO RESULT IN THE BENEFIT OF THE CLASS.

10               AND WHAT I -- YOU KNOW, THERE WAS A

11   PHRASE THAT WE LIKE TO USE.  WE DO TECHNOLOGY

12   LITIGATION.  IT'S WHAT MYSELF AND MY FIRM DO MOST

13   OF THE TIME.

14               AND THAT IS MY PHRASE IS THAT IT DOESN'T

15   DO THE CLASS ANY GOOD TO SET UP AOL 2.0 AFTER AOL

16   5.0 HAS BEEN RELEASED.

17               AND WHAT THIS ACCOMPLISHES THE SETTLEMENT

18   AND NOT TO GO INTO TOO MUCH ON THE PRELIMINARY

19   APPROVAL, BUT IT'S ALL ABOUT BEACON.

20               THE REASON WE HAD THE SECOND MEDIATION

21   SESSION, THE REASON THIS THING DIDN'T GET RESOLVED,

22   WE TRIED TO TINKER WITH THIS AND TRIED TO FIGURE

23   OUT A WAY TO MAKE BEACON WORK.

24               AND THERE HAVE BEEN PUBLIC INTEREST

25   GROUPS TRYING TO KILL OFF BEACON FOR YEARS.  AND

47

1    THE REALITY IS THAT THIS SETTLEMENT HAPPENED

2    BECAUSE THERE WAS A DISTINCTION MADE AT THE LAST

3    MEDIATION, THAT THE ONLY WAY IT PROCEED IS BY

4    KILLING OFF BEACON.

5              AND IT DOESN'T KILL OFF BEACON AFTER

6    FINAL APPROVAL.  IT KILLS OFF BEACONS WITHIN 60 OF

7    THE PRELIMINARY APPROVAL.

8              SO I FEEL IT REALLY CONTRASTS WITH THE

9    INTEREST OF THE CLASS FOR MR. WILSON TO COME HERE

10   TODAY AND TO SAY THAT HE SHOULD BE HEARD NOW AND

11   PRELIMINARY APPROVAL SHOULD BE STOPPED AND THAT

12   THERE'S NO PREJUDICE BY HOLDING THIS UP WHEN IN

13   REALITY 60 DAYS AFTER THIS COURT, IF IT WERE TO

14   DECIDE TO AWARD PRELIMINARY APPROVAL, BEACON WOULD

15   BE TERMINATED AND FUTURE HARMS WOULD BE ENDED AND I

16   THINK THAT'S THE KIND OF INJUNCTIVE RELIEF THAT

17   REALLY MATTERS.

18             AND PUTTING EVERYTHING ELSE ASIDE, THIS

19   IS ABOUT THE CLASS.  WHATEVER TAP DANCING MIGHT

20   HAVE GONE ON IN TEXAS, I OBVIOUSLY WASN'T A PARTY

21   THERE AND FOR ONCE AS PLAINTIFF'S COUNSEL IT'S NICE

22   TO NOT BE IN THE CROSS AIRS OF ANOTHER PLAINTIFF'S

23   COUNSEL COMING FORWARD.

24             BUT IN REALITY WHAT WAS SAID HERE BY

25   MR. RHODES, IT IS CLEAR THERE IS PREJUDICE FROM ANY

48

1    DELAY.  THAT TIMELINESS ISSUES WE INFORMED --

2         THE COURT:  YOU DON'T DISPUTE, AND I'M

3    NOT GOING TO ASK YOU TO OPINE ON WHAT WILL HAPPEN

4    IN TO THE TEXAS PROCEEDING IF THE SETTLEMENT HERE

5    IS ULTIMATELY APPROVED, BUT YOU DO -- IT IS YOUR

6    POSITION, AS I UNDERSTAND IT, THAT THE EFFECT OF

7    THE SETTLEMENT HERE, IF APPROVED, WOULD BE TO

8    INSULATE BLOCKBUSTER FROM ANY CLAIMS EMANATING OUT

9    OF THE BEACON PROGRAM; RIGHT?

10        MR. KAMBER:  YES, IT WOULD RELEASE -- IT

11   RELEASES ALL OF THE LIABILITIES STEMMING FROM

12   BEACON.

13        NOW, THERE COULD BE THEORETICALLY, THERE

14   COULD BE LIABILITY THAT ATTACHES FROM VPPA BECAUSE

15   THAT'S NOT THE WAY THAT BLOCKBUSTER DOES THINGS

16   BECAUSE OF THE WAY THEY RELEASE IT.

17        MR. WILSON MENTIONED INJUNCTIVE RELIEF.

18   WELL, IF IT'S DEALING WITH THE BLOCKBUSTER PIECE,

19   THAT'S REMEDIED HERE IN SPACE AND THERE'S NO

20   PROBLEM WITH THAT.

21        IF THERE ARE OTHER ISSUES OF HOW

22   BLOCKBUSTER DEALS WITH VPPA ISSUES, THIS CASE

23   DOESN'T TOUCH THAT.

24        AND MR. WILSON THEORETICALLY STILL WILL

25   HAVE HIS CASE, AND I'M NOT AN EXPERT ON HIS CASE IN

                                                    49

1    TEXAS, AND I WOULDN'T OPINE ON THAT, BUT I WILL SAY

2    THAT IT IS OUR UNDERSTANDING THAT OUR RELEASE

3    CERTAINLY RELEASES ALL LIABILITY THAT EMANATES FROM

4    THE VPPA PROGRAM WITH BLOCKBUSTER AS THE GRAVAMEN

5    OF THAT LIABILITY.

6             I WOULD JUST ALSO LIKE TO SAY ONE THING,

7    IT WAS SAID THAT I -- IN A -- THE ONLY DISCUSSION

8    THAT WE HAD WHICH WAS CHARACTERIZED LATER ON BY

9    MR. WILSON IN HIS DECLARATION AS A MEET AND CONFER,

10   THERE WAS THE POINT THAT WAS MADE HERE EARLIER

11   TODAY IS THAT WE HAD IDENTIFIED THAT THERE WAS A --

12   THAT THERE WAS AN INDEMNIFICATION AGREEMENT.

13            I WILL SAY TO THE COURT THERE WAS NO

14   DISCUSSION, THERE WAS NO COMMENT, OR I NEVER OPINED

15   ON ANYTHING THAT WOULD BE A CONFIDENTIAL DOCUMENT

16   OR ANYTHING ELSE.

17            WHAT I ASKED MR. WILSON AS I SAID AFTER A

18   YEAR OF LITIGATION WITH BLOCKBUSTER, DO YOU EVEN

19   KNOW WHETHER THEY'RE BEING INDEMNIFIED BY FACEBOOK?

20            THE COURT:  BECAUSE WE'RE GOING BACK TO

21   THIS, THIS DISCUSSION BETWEEN COUNSEL THAT, AGAIN,

22   I JUST DON'T WANT TO GO THERE, UNLESS SOMEBODY

23   THINKS IT'S SIGNIFICANT ENOUGH TO PRESENT IT TO ME

24   IN THE FORM OF A DECLARATION OR WHAT HAVE YOU, THEN

25   IT -- WELL, IT MAY NOT -- I MAY DEEM IT NOT

                                              50

1    RELEVANT, BUT AT LEAST I'LL CONSIDER IT.

2         BUT WHAT I'M NOT COMFORTABLE DOING IS

3    CONSIDERING COUNSEL'S COMMENTS AT THE PODIUM ABOUT,

4    ABOUT WHO SAID WHAT TO WHOM.

5         MR. KAMBER:  I APOLOGIZE.

6         THE COURT:  I'M NOT ASKING YOU TO

7    APOLOGIZE.  I'M JUST TELLING YOU I'M NOT GOING TO

8    CONSIDER IT.

9         MR. KAMBER:  ALL I WAS TRYING TO DO WAS

10   TO TRY TO REBUT SOMETHING THAT WAS MADE ON THE

11   RECORD THAT I DISAGREED WITH.  AND I DO NOT NEED

12   TO.

13        THE STRENGTH OF OUR ARGUMENT AS EXPRESSED

14   BY MR. RHODES WAS THE ISSUE OF TIMELINESS AND THE

15   FIRST PRINCIPLE OF REQUIREMENTS OF INTERVENTION AND

16   THE REALITY THAT THE INTEREST OF THE CLASS ARE

17   PROTECTED BY PROCEEDING WITH PRELIMINARY APPROVAL

18   AND MR. WILSON'S OWN CLIENTS INTERESTS ARE

19   PROTECTED BY HIM OPTING OUT OR HIM COMING BACK AT A

20   LATER DATE AND VOICING HIS CONCERNS ON FINAL

21   APPROVAL.

22        THE COURT:  OKAY.  MR. WILSON, ANY FINAL

23   THOUGHTS ON THIS?

24        MR. WILSON:  I'LL MAKE IT BRIEF, YOUR

25   HONOR.  ONE, THIS WAS THE THING THAT CAME HOME TO

51

1    ME AND I CONTACTED BLOCKBUSTER IMMEDIATELY AND I

2    SENT THEM THE E-MAIL.

3              THE CONCERN WAS THAT AT THAT POINT THERE

4    WAS NO INDICATION THAT FACEBOOK WAS TRYING TO

5    RESOLVE THIS ON BEHALF OF BLOCKBUSTER OR THAT THERE

6    WERE EVEN SETTLEMENT NEGOTIATIONS PENDING.  I'M ON

7    THE OUTSIDE AND LOOKING IN ON THIS.

8              AND COMING IN AND ARGUING IF THERE IS

9    SOME SETTLEMENT, FACEBOOK IS RESOLVING IT'S CLAIMS

10   AND IT'S GOING TO INCLUDE BLOCKBUSTER AND MY RIGHT

11   TO PROCEED WITH THIS CASE AND THAT SORT OF THING, I

12   MEAN, WE DIDN'T HAVE ANY INDICATION THAT WE NEEDED

13   TO SEE WHAT WAS THE NEXT STEP, REALLY, FOR COMING

14   INTO THIS COURT AND TRYING TO ARGUE THAT THEY'RE

15   IMPEDING OUR RIGHTS TO PROCEED IN THIS LITIGATION.

16             AND SO I DO ACKNOWLEDGE MR. MALLEY

17   APPARENTLY HAD THIS CONVERSATION WITH MR. --

18             THE COURT:  YOU'RE AWARE OF THE CLAIMS

19   AGAINST FACEBOOK?  WOULDN'T IT SURPRISE YOU IF

20   FACEBOOK RESOLVED THIS CASE AND LEFT ITSELF EXPOSED

21   TO BEING BROUGHT IN ON THE THIRD PARTY BASIS BY

22   SOMEBODY ELSE?

23             I MEAN, PUTTING ASIDE THIS QUESTION OF IF

24   THERE'S SOME, YOU KNOW, SUBTERRANEAN AGREEMENT OR

25   WHATEVER, YOU KNOW, MAYBE -- I HAVE BEEN A LAWYER

52

1    FOR A WHILE BEFORE I DID THIS JOB.  YOU KNOW, IT

2    STRIKES ME AS SORT OF THE TYPICAL CIRCUMSTANCES

3    THAT THE PARTY WOULD WANT TO PROTECT ITSELF NOT

4    JUST FROM THE DIRECT CLAIM BUT ANY POTENTIAL FOR

5    BEING BROUGHT IN THROUGH THE BACK-DOOR.

6              SO THIS IDEA THAT I SHOULD ASSUME SOMEHOW

7    THAT FACEBOOK IS DOING SOMETHING OTHER THAN

8    PROTECTING ITS OWN INTERESTS, I GUESS I'M NOT

9    SEEING THAT.

10             AND YOU'RE ASKING ME TO ASSUME THAT

11   SOMETHING, SOME DEAL IS GOING ON WHEN, WHEN SIMPLY

12   THE SURFACE OF WHAT I SEE IS A PARTY, WHETHER OR

13   NOT IT ULTIMATELY GETS APPROVED BUT A PARTY ACTING

14   IN A FAIRLY TYPICAL FASHION OF TRIAL TO MAKE SURE

15   THAT THERE'S NO CLAIM THAT CAN BE BROUGHT BACK

16   AGAINST THEM.

17             THAT'S WHAT YOU DO IN BEING A PRUDENT

18   SETTLING PARTY, ISN'T IT?

19             MR. WILSON:  YOUR HONOR, I GO BACK TO THE

20   PUBLIC POLICY ARGUMENTS THAT ARE PRESENTED BEFORE

21   YOUR HONOR.  THE JOINT TORTFEASORS ARE ACTING IN

22   CONCERT IN REACHING AN AGREEMENT TO TAKE A COURSE

23   OF ACTION THAT IS GOING TO VIOLATE A FEDERAL

24   REGULATORY STATUTE, AND THEN THE RECIPIENT OF THAT

25   INFORMATION IS GOING TO COME TO THIS COURT AND ASK

53

1    THAT THE CLASS BE CERTIFIED.

2            I WOULD SUBMIT THAT THE INQUIRY NEEDS TO

3    BE MADE BY THIS COURT, AND IT NEEDS TO BE

4    DETERMINED BY THIS COURT IF THAT INDEED IT IS GOING

5    ON AND IF THE COURT HAS TAKEN PART IN AN INDEMNITY

6    AGREEMENT THAT WOULD BE PART OF PUBLIC POLICY AND

7    THAT'S ALL I'M ASKING.

8            THE COURT:  WELL, YOU'RE DOING MORE THAN

9    THAT.  YOU'RE ASKING ME TO ASSUME THE EXISTENCE OF

10   AN INDEMNITY AGREEMENT THAT IS CONTRARY TO PUBLIC

11   POLICY FROM THE FACT THAT A SETTLING PARTY IS

12   PROPOSING TO SETTLE ALL POTENTIAL CLAIMS THAT COULD

13   COME BACK AND BITE IT.

14           AND THAT ASSUMPTION IS WITHOUT SOMETHING

15   MORE.  I DON'T SEE THE JUMPING OFF POINT BEING ONE

16   THAT I HAVE ANY BASIS TO MAKE BECAUSE THIS PARTY IS

17   NOT ACTING IN ANY WAY SIMPLY ON THE BASIC FACTS I

18   HAVE.

19           THERE IS NO REASON FOR ME TO QUESTION WHY

20   THEY'RE NOT SIMPLY OPERATING IN THEIR OWN

21   SELF-INTEREST.

22           NOW, YOU MAY THEN HAVE AN ARGUMENT TO SAY

23   THAT THE EFFECT OF THEIR SETTLEMENT AND SOME

24   PUNITIVE CLASS MEMBER CAN COME IN AND OBJECT AND

25   SAY, YOU KNOW, WHAT IS UNFAIR ABOUT THIS IS THE

                                              54

1    EFFECT OF THIS SETTLEMENT MEANS THAT A TORTFEASOR

2    IS GETTING OFF SCOTT FREE, AND, THEREFORE, JUDGE,

3    YOU SHOULDN'T LET THIS SETTLEMENT BE APPROVED.

4              WELL, I MAY HEAR THAT AND I WILL CONSIDER

5    IT AT THE TIME, BUT THE NOTION THAT THERE IS A

6    CONTRARY TO PUBLIC POLICY SUBTERRANEAN AGREEMENT

7    HERE FROM THE FACT THAT A SETTLING PARTY IS TRYING

8    TO MAKE SURE THAT IT CAN'T BE SUED AGAIN FOR THE

9    CONDUCT THAT IT THINKS IT'S SETTLING IS KIND OF AN

10   ASSUMPTION THAT I DON'T THINK I HAVE ANY BASIS TO

11   MAKE.

12             MR. WILSON:  I WOULD POINT OUT, YOUR

13   HONOR, THAT THE TERMS OF THE SETTLEMENT AGREEMENT

14   DEFINE BEACON MERCHANTS AND DEFINE THAT ALL CLAIMS

15   AGAINST BEACON MERCHANTS ARE PARTICULARLY SETTLED.

16   SO IT'S NOT PUTTING JUST THE REST OF THE CLAIMS

17   AGAINST FACEBOOK, IT'S PUTTING ALL OF THE --

18             THE COURT:  AND IF SOMEONE SUES ONE OF

19   THESE BEACON MERCHANTS PRESUMABLY WITHOUT ANY

20   PROTECTION, BEACON COULD TURN AROUND AND SAY I'M

21   SUING FACEBOOK, COULDN'T THEY?  I MEAN, WELL, WE

22   DON'T HAVE TO GET INTO THAT.

23             MR. WILSON:  MAY I MAKE ONE OTHER POINT?

24             THE COURT:  YES, GO AHEAD.

25             MR. WILSON:  THERE SEEMS TO BE KIND OF

55

1    THE SUGGESTION AMONGST THE PARTIES THAT THE COURT

2    CAN DETERMINE THE TYPICALITY AND ALL OF THESE OTHER

3    ISSUES.  YOU KIND OF HAVE TO DETERMINE JUST

4    GENERALLY IF IT MIGHT BE WITHIN RULE 23

5    REQUIREMENTS, AND I WOULD POINT OUT IF THE STANDARD

6    FOR THE COURT WERE TO APPLY DOES IT MEET EACH OF

7    THESE?

8         AND WE WOULD SUGGEST THAT THE APPROVAL

9    WOULD MEET A FINDING THAT IT DOES MEET COMMONALITY,

10   TYPICALITY, ADEQUACY OF REPRESENTATION.

11        THE COURT:  YOU WOULD BE THE FIRST TO

12   ARGUE I ASSUME THAT WHEN IT COMES TO THE FAIRNESS

13   HEARING I CERTAINLY SHOULD NOT VIEW THAT AS ANY

14   KIND OF BINDING DETERMINATION?

15        MR. WILSON:  THAT'S TRUE, YOU CAN

16   REEVALUATE IT THEN BUT AN INITIAL DETERMINATION

17   THAT THEY ARE MET NEEDS TO BE MADE HERE.

18        SO A TYPICALITY ARGUMENT I WOULD SUBMIT

19   THEY HAVE TO DEMONSTRATE TO THE COURT WITH

20   SATISFACTION THAT TYPICALITY HAS BEEN MET AND A

21   SPECIFIC FINDING BY THIS COURT AT THIS STAGE NOT

22   THAT TYPICALITY HAS BEEN MET.  AND NOT THAT --

23   WELL, IT MAY HAVE BEEN MET AND WE'LL EVALUATE IT AT

24   THE FAIRNESS HEARING.

25        AND ALSO FINALLY UNDER RULE 24, YOUR

56

1    HONOR, THE RULES SPECIFICALLY SAYS THAT IF OUR

2    INTERESTS ARE IMPEDED AS A PRACTICAL MATTER,

3    MR. RHODES BASICALLY SAID WE AGREE WITH YOUR HONOR

4    AS A PRACTICAL MATTER GIVEN THE DAMAGES THERE

5    ACCORDING TO THE STATUTE THAT, YOU KNOW --

6            THE COURT:  THIS IS FOR PERMISSIVE

7    JOINDER OR INTERVENTION?

8            MR. WILSON:  THIS IS FOR ACTUALLY 24 THAT

9    OUR INTERESTS, THEY KEEP SAYING OUR INTERESTS ARE

10   NOT IMPACTED, OUR INTERESTS ARE NOT IMPACTED, WE

11   CAN OPT OUT.  BUT THE RULE SAYS THAT IT CAN BE

12   IMPACTED AS A PRACTICAL MATTER.

13           AND I THINK THE COURT HAS RECOGNIZED THAT

14   IS --

15           THE COURT:  WELL, EXCEPT THERE ARE TWO

16   THINGS THAT YOU'RE -- THAT THE REPUDIATED CLASS

17   MEMBERS CAN DO.  THEY CAN ALSO OPT OUT AND THEY CAN

18   ALSO COME IN AND OBJECT AT THE FAIRNESS HEARING,

19   CAN'T THEY?

20           MR. WILSON:  YES, YOUR HONOR.

21           THE COURT:  WELL, THEN I'M NOT SURE HOW

22   THEIR RIGHTS ARE AFFECTED?  I GRANT YOU IT MAY BE

23   INCONVENIENT TO COME TO CALIFORNIA.  I'M NOT

24   SUGGESTING THAT IT'S AN EASY PROCESS, BUT IT IS AN

25   AVENUE THAT IS AVAILABLE TO PUNITIVE CLASS MEMBERS

                                            57

1    IF THEY WISH TO OBJECT.

2              MR. WILSON:  I CAN'T DISAGREE THAT

3    THEY'RE ALLOWED TO OBJECT, YOUR HONOR.  I WOULD

4    JUST DISAGREE THAT THAT MEANS THAT THIS

5    CERTIFICATION DOES NOT IMPACT THEIR RIGHTS.

6              THE COURT:  OKAY.  ALL RIGHT.  LET ME ASK

7    A COUPLE OF QUESTIONS ABOUT THE PROPOSED

8    PRELIMINARY APPROVAL.

9              FIRST OF ALL, LET ME PICK UP ON

10   MR. WILSON'S POINT, AND I DON'T KNOW WHO WANTS TO

11   ADDRESS THIS BUT DOES PRELIMINARY APPROVAL CARRY

12   WITH IT SOME PRELIMINARY DETERMINATION ON THE

13   SPECIFIC ISSUES, TYPICALITY, COMMONALITY AND THE

14   OTHER RULE 23?

15             DOES IT MEAN I'M MAKING THE FINDING ON

16   EVEN A PRELIMINARY BASIS THAT THOSE HAVE ALL BEEN

17   MET HERE?

18             MR. RHODES:  YOUR HONOR, MIKE RHODES ON

19   BEHALF OF FACEBOOK.  I WOULD SUBMIT TO YOU THAT YOU

20   ARE MAKING A FINDING THAT ENOUGH IS IN THE RECORD

21   TO WARRANT ALLOWING FACEBOOK TO SEND A NOTICE TO A

22   PROPOSED CLASS AND ON THE FINAL SETTLEMENT HEARING

23   YOU WILL THEN ADJUDICATE WHETHER THE ELEMENTS

24   REQUIRED TO FINALIZE THE JUDGMENT HAVE THE BAR

25   EFFECT OF A JUDGMENT ENTERED AND ALL OF THE

58

1    REQUIREMENTS OF RULE 23 ARE THEN AND THEREUPON MET

2    UPON A PLENARY THAT WILL INCLUDE MANY OTHER THINGS

3    INCLUDING OBJECTIONS FROM THE PROPOSED CLASS.

4          AND SO I WOULD LIKE TO SAY TO YOU THAT IT

5    IS AN INDICATION THAT YOU THINK THAT THERE IS A

6    POSSIBILITY THAT A CLASS CAN PROPERLY BE CERTIFIED

7    AS REQUESTED BY THE PARTIES, AND THERE'S ENOUGH IN

8    THE RECORDS TO ALLOW US TO PROCEED WITH THE

9    SETTLEMENT.

10          IT DOES NOT ASSURE THE FINAL JUDGMENT

11    THAT YOU WILL THEN HAVE TO ADJUDICATE INDEPENDENTLY

12    AT THAT TIME.

13          MR. KAMBER:  AND I WOULD JUST SUGGEST

14    THAT THE NINTH CIRCUIT CASE FROM IN RE: SYNCORE

15    LITIGATION, WHICH IS THE FINDING THAT THE

16    SETTLEMENT IS WITHIN THE RANGE OF POSSIBLE

17    APPROVALS.

18          THE COURT:  OKAY.  THE PROPOSED ORDER

19    THAT YOU SUBMITTED TO ME HAS A LARGE NUMBER OF

20    DATES.  YOU'RE SUBMITTING THIS TO ME WITH THE

21    SUGGESTION THAT THESE DATES ARE TO BE SELECTED BY

22    ME WITHOUT -- DO YOU HAVE SUGGESTIONS FOR --

23          MR. RHODES:  YOUR HONOR, IF YOU LOOK AT

24    THE MOVING PAPERS, THERE'S A PROPOSED CALENDAR.  WE

25    CAN GET YOU THE CITE, BUT WE DO ARTICULATE.  WE

59

1    LEFT THEM BLANK BECAUSE YOU MAY DISAGREE WITH

2    THOSE.

3              MR. KAMBER:  YOU'LL FIND ON THE

4    PLAINTIFF'S BRIEF WHICH IS DOCKET NUMBER 38 ON PAGE

5    14.

6              THE COURT:  OKAY.  THAT'S WHERE YOU HAVE

7    THE PROPOSED?

8              MR. KAMBER:  YES, WHICH IS PAGE 19 OF 20

9    OF THE ECF PAGINATION.  THOSE WOULD BE THE DATES

10   THAT RANGE FROM NOVEMBER 30TH TO THE FINAL FAIRNESS

11   HEARING OF FEBRUARY 24TH.

12             THE COURT:  HOW ABOUT THE PROPOSED THIRD

13   PARTY ADMINISTRATOR?  YOU'RE GOING TO -- IS THAT IN

14   THE PAPERS AS WELL?

15             MR. KAMBER:  I'M NOT SURE.  IT WAS

16   ROSENTHAL AND COMPANY.

17             THE COURT:  OKAY.  ANYTHING ANYONE WOULD

18   NOW MOVE FOR -- AND I'LL TAKE UNDER SUBMISSION THE

19   INTERVENTION MOTION.

20             WITH RESPECT TO THE PRELIMINARY APPROVAL,

21   ANYTHING EITHER FACEBOOK'S COUNSEL OR PLAINTIFF'S

22   COUNSEL WANT TO SAY BEYOND WHAT YOU HAVE ALREADY

23   PRESENTED TO ME IN THE PAPERS?

24             MR. RHODES:  NO, YOUR HONOR.  WE'LL

25   SUBMIT IT.

60

1           MR. KAMBER:  NO.  UNLESS YOU HAVE ANY

2    FURTHER QUESTIONS REGARDING ANY OF THE OTHER

3    ISSUES, BUT WE THINK THE PAPERS SPEAK FOR

4    THEMSELVES, YOUR HONOR.

5           THE COURT:  OKAY.  VERY GOOD.  THANK YOU.

6    I'LL GO BACK AND TAKE A LOOK THROUGH ALL OF THIS

7    AND GIVE YOU AN ORDER.

8           MR. KAMBER:  THANK YOU, YOUR HONOR.

9           MR. RHODES:  THANK YOU, YOUR HONOR.

10          (WHEREUPON, THE PROCEEDINGS IN THIS MATTER

11    WERE CONCLUDED.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                              61