# EXHIBIT 9

1   SCOTT KAMBER (admitted *pro hac vice*)
    DAVID STAMPLEY (admitted *pro hac vice*)
2   *skamber@kamberedelson.com*
    *dstampley@kamberedelson.com*
3   KAMBEREDELSON, LLC
    11 Broadway, 22nd Floor
4   New York, New York 10004
    Telephone: (212) 920-3072
5   Facsimile:  (212) 202-6364

6   JOSEPH H. MALLEY (admitted *pro hac vice*)
7   LAW OFFICE OF JOSEPH H. MALLEY
    1045 North Zang Boulevard
8   Dallas, Texas 75208
    Telephone: (214) 943-6100
9   Facsimile:  (214) 943-6170

10  DAVID C. PARISI (SBN 162248)
    SUZANNE HAVENS BECKMAN (SBN 188814)
11  *dcparisi@parisihavens.com*
    *shavens@parisihavens.com*
12  PARISI & HAVENS LLP
    15233 Valleyheart Drive
13  Sherman Oaks, California 91403
    Telephone: (818) 990-1299
14  Facsimile:  (818) 501-7852

15  ATTORNEYS FOR PLAINTIFFS

16              **UNITED STATES DISTRICT COURT**

17             **NORTHERN DISTRICT OF CALIFORNIA**

18                    **SAN JOSE DIVISION**

19  | SEAN LANE, *et al.*, | No. 08-cv-3845 RS |
20  | Plaintiffs, | [Assigned to the Hon. Richard Seeborg] |
21  | v. | |
22  | FACEBOOK, INC., a Delaware Corporation, | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT** |
    | BLOCKBUSTER, INC., a Delaware Corporation, | |
23  | FANDANGO, INC., a Delaware Corporation, | |
    | HOTWIRE, INC., a Delaware Corporation, | |
24  | STA TRAVEL, INC., a Delaware Corporation, | Location: Courtroom 4, 5th Floor |
    | OVERSTOCK.COM, INC., a Delaware corporation, | 280 South First Street |
25  | ZAPPOS.COM, INC., a Delaware Corporation, | San Jose, CA 95113 |
    | GAMEFLY, INC., a Delaware Corporation, and | Date: October 14, 2009 |
26  | DOES 1-40, corporations, | Time: 9:30 a.m. |
27  | Defendants. | |

28

---

Plaintiffs' Motion for Preliminary Approval                     Case No. 08-cv-3845 RS
of Class Action Settlement

**NOTICE OF MOTION**

NOTICE IS HEREBY GIVEN that the plaintiffs in the above-captioned matter ("Plaintiffs") will, pursuant to Federal Rule of Civil Procedure 23(e), move that the above-named Court grant preliminary approval of a proposed settlement (the "Settlement Agreement") in this class action on October 14, 2009 at 9:30 a.m., or at such other time as may be set by the Court at the Case Management Conference presently set for that time with the Court, located at 280 South First Street, San Jose, California 95113, in Courtroom 4, 5th Floor, before the Honorable Richard Seeborg.

Plaintiffs seek preliminary approval of this class action settlement, certification of the proposed class for the purposes of the settlement, sending of notice to the settlement class, and appointment of Plaintiffs and their counsel as class representatives. The Motion is based on this Notice of Motion, Plaintiffs' Brief in Support of the Motion and the authorities cited therein, oral argument of counsel, and any other matter that may be submitted at the hearing.

Dated: September 18, 2009

                  SCOTT A. KAMBER
                  DAVID A. STAMPLEY
                  KAMBEREDELSON, LLC

                  DAVID C. PARISI
                  SUZANNE HAVENS BECKMAN
                  PARISI & HAVENS LLP

                  JOSEPH H. MALLEY
                  THE LAW OFFICE OF JOSEPH H. MALLEY

                  By: s/David A. Stampley
                  Attorneys for Plaintiffs

1

**TABLE OF CONTENTS**

**NOTICE OF MOTION**..................................................................................................... ii

**TABLE OF AUTHORITIES** ............................................................................................ iv

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**........... 1

**I.     NATURE OF THE LITIGATION** .......................................................................... 2

      A.     Summary of the Litigation .............................................................................. 2

      C.     Mediation and Settlement............................................................................... 2

      D.     Defendants' Position....................................................................................... 3

**II.    TERMS OF THE SETTLEMENT** ......................................................................... 3

      A.     Definitions..................................................................................................... 3

      B.     General Relief ................................................................................................ 4

      C.     Additional Relief ........................................................................................... 5

      D.     Release .......................................................................................................... 6

**III.   THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED** ...................... 6

      A.     The Requirement of Numerosity Is Satisfied ................................................... 7

      B.     The Requirement of Commonality is Satisfied ................................................ 7

      C.     The Requirement of Typicality is Satisfied ..................................................... 8

      D.     The Requirement of Adequate Representation is Satisfied ................................ 9

      E.     The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3) ............ 9

**IV.    THE COURT SHOULD APPOINT PLAINTIFFS' COUNSEL AS CLASS COUNSEL**.......................................................................................................... 10

**V.     THE COURT SHOULD PRELIMINARILY APPROVE THE PROPOSED SETTLEMENT** ................................................................................................... 11

**VI.    THE PROPOSED PLAN OF CLASS NOTICE**...................................................... 13

**VII.   PROPOSED PRELIMINARY SCHEDULE** .......................................................... 14

**VIII.  CONCLUSION**.................................................................................................. 14

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## TABLE OF AUTHORITIES

2

3

<u>Cases</u>

4   *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997) ................................................. 6, 10

5   *Armstrong v. Bd. of Schl. Dirs. of City of Milwaukee*, 616 F.2d 305 (7th Cir. 1980) ...................... 11

6   *Celano v. Marriot Int'l, Inc.*, 242 F.R.D. 544 (N.D. Cal. 2007) ........................................ 7

7   *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168 (9th Cir. 2007) ................................................ 7

8   *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ................................................... 7

9   *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .............................................. 12

10   *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 359 (N.D. Ohio 2001). ............................ 12

11   *In re Syncor ERISA Litig.*, 516 F.3d 1095 (9th Cir. 2008) .......................................... 11, 12

12   *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007) .............................. 11

13   *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ............................... 12

14   *Pierce v. County of Orange*, 519 F.3d 985 (9th Cir. 2008) ................................................ 9

15

Other Authorities

16

17   *DeLise vs. Fahrenheit Entm't*, Civ. Action No CV-014297 (Cal. Sup. Ct. Marin Cty. Sept. 2001) 12

18   *In Re DoubleClick, Inc. Privacy Litigation*, No. 00 Civ. 0641 (NRB) (S.D.N.Y. 2001) ............... 12

19   *Manual for Complex Litigation* § 21.632 (4th ed. 2004) ........................................ 6, 11

20

<u>Rules</u>

21

22   *Dukes*, 509 F.3d at 1184 fn.12 ....................................................................... 8

23   *Dukes*, 509 F.3d at 1185 ............................................................................. 9

24   Federal Rule of Civil Procedure 23(a) ................................................................. 6

25   Federal Rule of Civil Procedure 23(a)(1)............................................................... 7

26   Federal Rule of Civil Procedure 23(a)(2)............................................................... 7

27   Federal Rule of Civil Procedure 23(a)(3).............................................................. 8, 9

28   Federal Rule of Civil Procedure 23(a)(4)............................................................... 9

1   Federal Rule of Civil Procedure 23(b)(3) ....................................................................... 7, 9

2   Federal Rule of Civil Procedure 23(c)(2)(B) ................................................................ 13

3   Federal Rule of Civil Procedure 23(e) ............................................................. 11, 12, 13

4   Federal Rule of Civil Procedure 23(e)(1) ..................................................................... 13

5   Federal Rule of Civil Procedure 23(g)(1) ..................................................................... 10

6

7                                             <u>Treatises</u>

8   Alba & Conte, 4 *Newberg on Class Actions*, §11.25 (4th Ed. 2002) ....................................... 11, 13

9   *Manual for Complex Litigation* §30.41 (3rd ed. 1995) ................................................................. 11

10  Alba & Conte, 4 *Newberg on Class Actions*, §11.53, at 167 (4th Ed. 2002) ................................. 13

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1      **MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

2         This putative class action seeks recovery based on Plaintiffs' allegation that Defendants

3 failed to obtain informed consent from consumers before causing their personal information to be

4 transmitted to Facebook. Plaintiffs assert that Facebook, via its "Beacon" program, obtained per-

5 sonal information regarding specific transactions at Beacon-affiliated companies, including the

6 other named Defendants in this lawsuit, whether or not the users were Facebook users. Defendants

7 have and continue to deny all of these allegations and that they engaged in any wrongdoing enti-

8 tling any member of the putative class to any relief. Plaintiffs contend that Defendants' alleged

9 acts violate various federal and state privacy laws, as well as other state statutory and common

10 laws and seek recovery for the alleged loss of privacy and other injuries caused by Defendants' al-

11 leged conduct.

12         The parties' representatives met and engaged in substantial private settlement mediation

13 discussions before Mr. Antonio Piazza on December 9, 2008 in San Francisco, California and

14 again on July 28, 2009. The parties were able to reach an agreement in principle in connection

15 with these mediations and through extensive, ongoing negotiations between the principal lawyers

16 for the Class (Mr. Kamber) and Facebook (Mr. Rhodes). A true copy of the proposed Stipulation

17 and Agreement of Settlement (the "Settlement Agreement") is attached hereto as *Exhibit A*.

18         Under the Settlement Agreement, Facebook will terminate the Beacon program in its en-

19 tirety. .In addition, Facebook will establish a settlement fund of $9.5 million that will be used to

20 establish an independent privacy foundation, the purpose of which will be to fund and sponsor

21 programs designed to educate users, regulators, and enterprises regarding critical issues relating to

22 protection of identity and personal information online through user control, and to protect users

23 from online threats. Out of this fund will be paid all attorneys' fees, costs, any enhanced awards to

24 the named Plaintiffs, various costs associated with establishment of the foundation and settlement

25 administration costs.

26         Given the challenges and uncertainties facing Plaintiffs if they were to litigate this matter,

27 the results achieved through the settlement are well beyond those required to satisfy preliminary

28 approval standards. Accordingly, Plaintiffs move the Court to preliminarily approve the instant set-

1    tlement; certify the settlement class; appoint Sean Lane, Mohannaed Sheikha, Sean Martin, Ali

2    Sammour, Mohammaed Zidan, Sara Karrow, Colby Henson, Denton Hunker, Firas Sheikha, Has-

3    sen Sheikha, Linda Stewart, Tina Tran, Matthew Smith, Erica Parnell, John Conway, Austin Muhs,

4    Phillip Huerta, Alicia Hunker, and M.H., a minor, by and through her parent Rebecca Holey as

5    class representatives; and Scott A. Kamber and David A. Stampley of KamberEdelson, LLC; and

6    Joseph Malley of the Law Office of Joseph H. Malley as class counsel. For convenience, a pro-

7    posed preliminary schedule of events leading to a final approval hearing is provided in Section VII

8    of this brief.

9    **I.    NATURE OF THE LITIGATION**

10        **A.    Summary of the Litigation**

11    On August 12, 2008, Plaintiffs initially brought this action individually and on behalf of a pur-

12    ported class of all Facebook members who, during the period of November 7, 2007 to December

13    5, 2007, visited one or more the Facebook Beacon Activated Affiliates' websites and engaged in

14    one or more activities that triggered the Beacon program to communicate with Facebook regarding

15    the activity, alleging that Defendants, through their Beacon program, violated the Electronic

16    Communications Privacy Act ("ECPA"), the Video Privacy Protection Act ("VPPA"), the Com-

17    puter Fraud and Abuse Act ("CFAA"), the California Consumer Legal Remedies Act ("CLRA"),

18    and the California Computer Crime Law ("CCCL"). (*See* Declaration of Scott Kamber, ¶ 4, a copy

19    of which is attached hereto as *Exhibit B*) ("Kamber Decl.") Plaintiffs alleged Defendants violated

20    consumers' privacy rights by failing to properly provide notice and obtain informed consent before

21    acquiring and transmitting personal information from Beacon-affiliated websites to Facebook.

22    (Kamber Decl. ¶ 4.)    On October 10, 2008, Facebook filed a motion to dismiss (Dkt. 14). (Kam-

23    ber Decl. ¶ 4.) Prior to the plaintiffs' filing their opposition or the Court's issuing a decision on this

24    motion, the parties agreed to enter into private mediation. (Kamber Decl. ¶ 5.)

25        **C.    Mediation and Settlement**

26        On December 9, 2008, counsel and senior corporate representatives for Facebook and

27    counsel for Plaintiffs met in person in the offices of Gregorio, Haldeman, Piazza, Rotman, Frank

28    & Feder in San Francisco, California for mediation with the assistance of Mr. Antonio Piazza. The

1   mediation session included joint meetings between the parties' representatives to review particular

2   issues relating to Plaintiffs' prior findings regarding the mechanics of users' interactions on Face-

3   book's website and the websites of Beacon affiliates. (Kamber Decl. ¶¶ 3, 6(a).) At the end of the

4   mediation session, the parties agreed on all substantive relief and memorialized their mutual un-

5   derstanding in document outlining the principal terms of settlement. (Kamber Decl. ¶ 6(a).) The

6   parties did not discuss the amount of any incentive fee or payment to class counsel until after

7   reaching agreement on the other terms of settlement. (Kamber Decl. ¶ 6(b).) The parties continued

8   to engage in settlement negotiations for the next seven months to work out the details of the set-

9   tlement. (Kamber Decl. ¶¶ 6(b)-(c).)

10        The parties concluded their negotiations and finalized the terms of the settlement in August

11   2009 after yet another mediation session on July 28, 2009 before Mr. Piazza. (Kamber Decl. ¶

12   6(e).) The parties now seek preliminary approval of this long-negotiated settlement.

13      **D.**    **Defendants' Position**

14        At all times, all Defendants have denied and continue to deny any wrongdoing whatsoever

15   or that they, or any of them, committed or have threatened or attempted to commit, any wrongful

16   acts or violations of law or duty, including, but not limited to, those alleged in the Complaint.

17   (Kamber Decl. ¶ 5.) Defendants contend that they have acted properly and therefore deny that the

18   plaintiffs and putative class are entitled to any form of damages based on the conduct alleged in

19   the Complaint. (Kamber Decl. ¶ 5.) In addition, Defendants have maintained and continue to

20   maintain that they have meritorious defenses to all claims alleged in the Complaint and that De-

21   fendants were and are prepared to vigorously defend against all claims asserted in this litigation.

22   (Kamber Decl. ¶ 5.)

23   **II.**    **TERMS OF THE SETTLEMENT**

24        The key terms of the settlement are detailed below.

25      **A.**    **Definitions**

26          1.    Section 1.3 of the Settlement Agreement defines "Class" as:

27

28

1             All Facebook members who, during the period of November 6, 2007 to the

2             Preliminary Approval Date, engaged in one or more Triggering Activities on

3             a Beacon Merchant website.

4       2.     Section 1.10 of the Settlement Agreement defines "Facebook" as "defen-

5             dant Facebook, Inc. and its successors, representatives, and assignees."

6       3.     Section 1.22 of the Settlement Agreement defines "Preliminary Approval

7             Date" as "the date entered by the Court on the Preliminary Approval and

8             Notice Order."

9       4.     Section 1.31 of the Settlement Agreement defines "Triggering Activity" as

10            "certain activity, that when completed on a Beacon Merchant website, trig-

11            gered Beacon."

12      5.     Section 1.2 of the Settlement Agreement defines "Beacon Merchant" as:

13            any company, corporation, business enterprise, or other person that entered

14            into an agreement with Facebook with respect to Beacon or otherwise

15            launched the Beacon program (specifically including, without limitation and

16            by way of example, all non-Facebook defendants named in the Complaint,

17            namely, Blockbuster, Inc., Fandango, Inc., Hotwire, Inc., STA Travel, Inc.,

18            Hotwire, Inc., Zappos.com, Inc., Overstock.com, Inc., and Gamefly, Inc.).

19   **B.**     **General Relief**

20      Facebook will establish and administer a cash settlement fund of nine million, five hundred

21 thousand dollars ($9,500,000), which will be used to establish and operate a privacy foundation

22 devoted to funding and sponsoring programs designed to educate users, regulators, and enterprises

23 regarding critical issues relating to protection of identity and personal information online through

24 user control, and to protect users from online threats. Individual class members will not receive di-

25 rect compensation. Out of the $9.5 million fund, all attorneys' fees, costs, any enhanced awards to

26 the named Plaintiffs, various costs associated with establishment of the foundation, settlement ad-

27 ministration costs, and notice and administration costs will be paid as provided for under the Set-

28

1  tlement Agreement and described below in sections II.C.2–4 on page 5. The privacy foundation

2  will have sole and exclusive control of the management and disposition of its funds.

3    **C.    Additional Relief**

4        In addition to the payments and credits discussed above, Facebook will provide the follow-

5  ing relief.

6            1.    Termination of Beacon Program: In connection with this Settlement, and

7                within sixty (60) days of the Preliminary Approval Date, Facebook shall

8                terminate the Beacon program in its entirety.

9            2.    Payment of Notice and Administrative Fees: The full cost of claims admini-

10                stration and effectuation of the Settlement Agreement shall be paid out of

11                the settlement fund.

12            3.    Compensation of Class Representatives: In addition to any benefits afforded

13                under the settlement, and in recognition of their efforts on behalf of the

14                class, subject to Court approval, Sean Lane shall receive $15,000, Sean

15                Martin and Mohammad Sheikha shall each receive $7,500 and the other

16                representative Plaintiffs shall each receive $1,000 as appropriate compensa-

17                tion for their time and effort serving as the class representatives in the litiga-

18                tion against Defendants. Facebook or Defense Counsel shall pay such

19                amount from the Settlement Fund to the Representative Plaintiffs, in care of

20                Class Counsel, within thirty (30) days of the Effective Date.

21            4.    Payment of Attorneys' Fees and Expenses: Defendants have agreed that a

22                payment out of the Settlement Fund to Class Counsel, subject to Court ap-

23                proval, of up to one-third of the settlement fund in attorneys' fees and for

24                the reimbursement of Class Counsel's costs is fair and reasonable, and De-

25                fendants will not object to or otherwise challenge Class Counsels' applica-

26                tion for payment of fees from the Settlement Fund if limited to such an

27                amount. Proposed Class Counsel has, in turn, agreed not to seek more than

28                said amount from the Court.

**D.    Release**

Upon the entry of a final order approving this settlement and following the expiration of the time for appeal or the entry of a decision on such appeal, class representatives and each and every member of the settlement class who have not timely filed a request to be excluded from the settlement class will release and forever discharge Facebook and all Beacon Merchants, and each of their respective past and present officers, directors, employees, insurers, agents, representatives, partners, joint-venturers, parents, subsidiaries, affiliates, attorneys, successors and assigns from any and all manner of claims for payment, non-economic, or injunctive relief of any kind or nature and any and all liabilities, demands, obligations, losses, actions, causes of action, damages, costs, expenses, attorneys' fees and any and all other claims of any nature whatsoever, whether known or unknown, that have been, could have been, or in the future might be asserted in the pending litiga-tion or in any other court or proceeding, arising from or relating to any of the allegations or state-ments made in, or in connection with, the Litigation (and including, without limitation, any and all claims based upon any of the laws, regulations, statutes, or rules cited, evidenced and referenced by all such allegations and statements), or any other known or unknown claims arising from or re-lating to Beacon (including, without limitation, arising from or relating to the use of data gathered through Beacon) and shall be permanently barred and enjoined from instituting, prosecuting, or from asserting, either directly, indirectly, derivatively, or representatively any claims against De-fendants, as further provided for in the attached Settlement Agreement.

**III.    THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED**

Prior to granting preliminary approval of a settlement, the Court should determine that the proposed settlement class is a proper class for settlement purposes. *Manual for Complex Litigation* § 21.632 (4th ed. 2004); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). The Court may certify a class when the plaintiff demonstrates that the proposed class and proposed class rep-resentatives meet the following prerequisites of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a)(1)–(4). After meeting the strictures of Rule 23(a), the plaintiff must then demonstrate that common questions of law or fact predominate and

1   that maintaining the suit as a class action is superior to other methods of adjudication. Fed. R. Civ.

2   P. 23(b)(3).

3        In determining whether to certify a class, courts do not inquire into the merits of the plain-

4   tiff's claims. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974). As such, a court accepts

5   the allegations of the plaintiff's complaint as true, but may consider matters beyond the pleadings

6   to determine if the claims are suitable for resolution on a class-wide basis. *Celano v. Marriot Int'l,*

7   *Inc.*, 242 F.R.D. 544, 548 (N.D. Cal. 2007).

8        **A.    The Requirement of Numerosity Is Satisfied**

9        The numerosity prerequisite is met when "the class is so numerous that joinder of all

10  members is impractical. Fed. R. Civ. P. 23(a)(1). To satisfy this requirement there is no specific

11  number required, nor are Plaintiffs required to state the exact number of potential class members.

12  *Celano*, 242 F.R.D. at 548. Generally, the numerosity requirement is satisfied when the class com-

13  prises 40 or more members. *See id.*, 242 F.R.D. at 549. In this case, the class is estimated to num-

14  ber in the millions of individuals, easily enough to satisfy the numerosity requirement. (*See* Kam-

15  ber Decl. ¶ 3.)

16       **B.    The Requirement of Commonality is Satisfied**

17       The second threshold to certification requires that there be questions of law or fact com-

18  mon to the class. Fed. R. Civ. P. 23(a)(2). "[P]laintiffs may demonstrate commonality by showing

19  that class members have shared legal issues by divergent facts or that they share a common core of

20  facts but base their claims for relief on different legal theories." *Dukes v. Wal-Mart, Inc.*, 509 F.3d

21  1168, 1177 (9th Cir. 2007). "[O]ne significant issue common to the class may be sufficient to war-

22  rant certification." *Id.* As alleged in this case, all class members share the common issue of having

23  their privacy rights affected when Defendants allegedly caused or permitted unauthorized com-

24  munications of private and personally identifying information to be delivered to Facebook and

25  others through the use of the Beacon program without adequate notice, consent, or opportunity to

26  opt out.

27       This common issue among class members results in common factual and legal questions

28  such as: (a) What was the Beacon program and how did it work? (b) What information did the

---

Plaintiffs' Motion for Preliminary Approval          7                    Case No. 08-cv-3845 RS
of Class Action Settlement

1   Beacon program collect and what did it do with that information? (c) Was there proper or any no-

2   tice, of the operation of the Beacon program to consumers? (d) Was there proper or any oppor-

3   tunity to decline the operation of the Beacon program provided to consumers? (e) Did Face-

4   book members, by virtue of their membership, give prior consent to the operation of the

5   Beacon program on the non-Facebook websites? (f) Did the operation, function, and/or im-

6   plementation of the Beacon program violate the ECPA? (g) Did the operation, function, and/or

7   implementation of the Beacon program violate the VPPA? (h) Did the implementation of the

8   Beacon program by the CLRA defendants violate the CLRA? (i) Did the operation, function,

9   and/or implementation of the Beacon program violate the CCCL? (j) Did the operation, func-

10  tion, and/or implementation of the Beacon program violate the CFAA?? (k) Is Facebook liable

11  under a theory of aiding and abetting, or conspiracy, for Affiliate Defendants' violations of the

12  VPPA? (l) Did the Beacon program send back to Facebook personally identifiable informa-

13  tion? (m) Did Facebook and the CLRA Defendants, by conduct set forth in the Complaint, en-

14  gage in unfair, deceptive, untrue, or misleading promotion, implementation, and operation of

15  their websites? (n) Was Facebook unjustly enriched by its actions in implementing the Bea-

16  con program? (o) Are class members entitled to damages as a result of the implementation of

17  the Beacon program, and, if so, what is the measure of those damages?

18          In addition, such common questions for the settlement include whether the settlement is

19  fair, and what is the proper form of notice. Accordingly, the commonality requirement is satisfied.

20      **C.      The Requirement of Typicality is Satisfied**

21          Rule 23 next requires that a plaintiff's claims be typical of those of the class. Fed. R. Civ.

22  P. 23(a)(3). "[T]ypicality focuses on the relationship of facts and issues between the class and its

23  representatives." *Dukes*, 509 F.3d at 1184 fn.12 (citation omitted) ("[u]nder the rule's permissive

24  standards, representative claims are 'typical' if they are reasonably coextensive with those of ab-

25  sent class members; they need not be substantially identical[;] some degree of individuality is to

26  be expected in all cases, but that specificity does not necessarily defeat typicality"). Here, Defen-

27  dants' alleged practice of causing or permitting unauthorized communications of private and per-

28  sonally identifying information to be delivered to Facebook and others through the use of the Bea-

1 con program without adequate notice, consent, or opportunity to opt out is alleged to have resulted

2 in Plaintiffs and the proposed settlement class having their privacy rights violated in breach of the

3 state and federal law, as well as the terms and conditions and use of Facebook.com, owed equally

4 Plaintiffs and to members of the class. It is alleged that Plaintiffs and each proposed class member

5 were all subjected to Defendants' identical wrongful conduct in a nearly identical manner. As such,

6 Plaintiffs' claims are typical of those of the proposed class and Fed. R. Civ. P. 23(a)(3) is met.

7       **D.      The Requirement of Adequate Representation is Satisfied**

8              The final Rule 23(a) prerequisite requires that the proposed class representatives have and

9 will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).

10 "This factor requires: (1) that the proposed representative Plaintiffs do not have conflicts of inter-

11 est with the proposed class, and (2) that Plaintiffs are represented by qualified and competent

12 counsel." *Dukes*, 509 F.3d at 1185.

13             In this case, Plaintiffs have the same interests as the proposed class members—all have al-

14 legedly been wrongfully harmed by Defendants' alleged mishandling of private and personally

15 identifiable information through the Facebook Beacon program. Therefore, Plaintiffs have no in-

16 terests antagonistic to the interests of the proposed class. Further, class counsel are well respected

17 members of the legal community, have regularly engaged in major complex litigation, and have

18 had extensive experience in consumer class action lawsuits that are similar in size, scope and

19 complexity to the present case. (*See* Firm Resume of KamberEdelson, LLC, a copy of which is at-

20 tached hereto as *Exhibit C*.) Accordingly, both Plaintiffs and their counsel have and will ade-

21 quately represent the class.

22       **E.      The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3)**

23             Once the subsection (a) prerequisites are satisfied, Federal Rule of Civil Procedure

24 23(b)(3) provides that a class action can be maintained where the questions of law and fact com-

25 mon to members of the class predominate over any questions affecting only individuals, and the

26 class action mechanism is superior to the other available methods for the fair and efficient adjudi-

27 cation of the controversy. Fed. R. Civ. P 23(b)(3); *Pierce v. County of Orange*, 519 F.3d 985, 991

28 n.5 (9th Cir. 2008). In this case and in the context of the proposed settlement, common issues of

---

Plaintiffs' Motion for Preliminary Approval                    9                    Case No. 08-cv-3845 RS
of Class Action Settlement

1  fact and law predominate. Defendants' alleged practice of causing or permitting unauthorized
2  communications of private and personally identifying information to be delivered to Facebook and
3  others through the use of the Beacon program without adequate notice, consent, or opportunity to
4  opt out is common to the class members' claims and their damages and predominates over any is-
5  sues applicable to any individual members of the class.

6      In addition, the instant class action is superior to any other method available to fairly, ade-
7  quately, and efficiently resolve the class members' claims. Absent a class action, most members of
8  the class would find the cost of litigating their claims to be prohibitive, and such multiple individ-
9  ual actions would be judicially inefficient. Also, because the action, with the Court's permission,
10  will now settle, the Court need not consider issues of manageability relating to trial. *See Amchem*,
11  521 U.S. at 620 (citation omitted) ("[c]onfronted with a request for settlement-only class certifica-
12  tion, a district court need not inquire whether the case, if tried, would present intractable manage-
13  ment problems, for the proposal is that there be no trial"). Accordingly, common questions pre-
14  dominate and a class action is the superior method of adjudicating this controversy.

15  **IV.    THE COURT SHOULD APPOINT PLAINTIFFS' COUNSEL AS CLASS COUNSEL**

16      Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must
17  fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making
18  this determination, the Court must consider counsel's: (1) work in identifying or investigating po-
19  tential claims; (2) experience in handling class actions or other complex litigation, and the types of
20  claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to
21  representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i–iv).

22      As discussed above, proposed class counsel have extensive experience in prosecuting class
23  actions and other complex litigation. (Kamber Decl. ¶ 9; *see also Exhibit C*.) Further, proposed
24  class counsel have diligently investigated and prosecuted this matter, dedicating substantial re-
25  sources to the investigation of the claims at issue in the action, and have successfully negotiated
26  the settlement of this matter to the benefit of the class. (Kamber Decl. ¶ 10.) Counsel and class
27  representatives, assisted by non-legal experts, spent over three months considering legal theories
28  as well as investigating factual and technology-related issues regarding Defendants' acquisition

1  and sharing of personal information and their related notice and choices practices. (Kamber Decl.

2  ¶ 3.) Accordingly, the Court should appoint Plaintiffs' counsel to serve as class counsel for the

3  proposed class pursuant to Rule 23(g) and Scott A. Kamber and David Stampley of KamberEdel-

4  son, LLC and Joseph Malley of the Law Office of Joseph H. Malley as class counsel.

5  **V.    THE COURT SHOULD PRELIMINARILY APPROVE THE PROPOSED**

6  **SETTLEMENT**

7       After certifying the settlement class, the Court should preliminarily approve the settlement.

8  The procedure for review of a proposed class action settlement is a well-established two-step

9  process. Fed. R. Civ. P. 23(e); *see also* Alba & Conte, 4 *Newberg on Class Actions*, §11.25, at

10  38-39 (4th Ed. 2002). The first step is a preliminary, pre-notification hearing to determine whether

11  the proposed settlement is "within the range of possible approval." *Newberg*, §11.25, at 38-39

12  (quoting *Manual for Complex Litigation* §30.41 (3rd ed. 1995)); *In re Syncor ERISA Litig.*, 516

13  F.3d 1095, 1110 (9th Cir. 2008). This hearing is not a fairness hearing; its purpose, rather, is to as-

14  certain whether there is any reason to notify the class members of the proposed settlement and to

15  proceed with a fairness hearing. *In re Syncor ERISA Litig.*, 516 F.3d at 1110. Notice of a settle-

16  ment should be sent where "the proposed settlement appears to be the product of serious, in-

17  formed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant prefer-

18  ential treatment to class representatives or segments of the class, and falls within the range of pos-

19  sible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). The

20  *Manual for Complex Litigation* characterizes the preliminary approval stage as an "initial evalua-

21  tion" of the fairness of the proposed settlement made by the court on the basis of written submis-

22  sions and informal presentation from the settling parties. *Manual for Complex Litigation* § 21.632

23  (4th ed. 2004). If the court finds a settlement proposal "within the range of possible approval," it

24  then proceeds to the second step in the review process—the final approval hearing. *Newberg*,

25  §11.25, at 38-39. The standard of scrutiny for preliminary approval is more relaxed than for final

26  approval. *Armstrong v. Bd. of Schl. Dirs. of City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980).

27       A strong judicial policy exists that favors the voluntary conciliation and settlement of com-

28  plex class action litigation. *In re Syncor*, 516 F.3d at 1101 (citing *Officers for Justice v. Civil Serv.*

1   *Comm'n*, 688 F.2d 615 (9th Cir. 1982). While the district court has discretion regarding the ap-

2   proval of a proposed settlement, it should give "proper deference to the private consensual deci-

3   sion of the parties." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). In fact, when a

4   settlement is negotiated at arms' length by experienced counsel, there is a presumption that it is

5   fair and reasonable. *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 359, 380 (N.D. Ohio

6   2001). Ultimately, the Court's role is to ensure that the settlement is fundamentally fair, reason-

7   able, and adequate. Fed. R. Civ. P. 23(e)(2); *In re Syncor*, 516 F.3d at 1100.

8        In this case, there is no question that the proposed settlement is at least "within the range of

9   possible approval." Only after extended arms-length negotiations, conducted under the supervision

10  of Mr. Antonio Piazza, were the parties able to reach an agreement as to relief for the class. (Kam-

11  ber Decl. ¶ 6.) Under that agreement, class members will benefit in the near-term from the termi-

12  nation of the Beacon program. In the long-term, class members and consumers in general will

13  benefit from the realization of a privacy foundation. The settlement's formulation for allocating

14  settlement resources, which does not include compensation to members of the at-large class, is

15  consistent with other settlements resolving claims that a defendant's insufficient online notice and

16  choice resulted in unconsented sharing of personal information with affiliated third-party busi-

17  nesses. *See, e.g.*, *In Re DoubleClick, Inc. Privacy Litigation*, No. 00 Civ. 0641 (NRB) (S.D.N.Y.

18  2001) (DoubleClick, an Internet ad-serving company, revised its notice, choice, and data collection

19  practices and conducted a privacy-oriented public information campaign by distributing 300 mil-

20  lion Internet banner ads); *DeLise vs. Fahrenheit Entm't*, Civ. Action No CV-014297 (Cal. Sup. Ct.

21  Marin Cty. Sept. 2001) (sellers of interactive music CD updated privacy policies, added warning

22  labels to CDs, and purged previously collected data).

23        A comparison of the potential costs and benefits of consummating the Settlement Agree-

24  ment versus continuing to prosecute this matter requires consideration of a number of factors.

25  These factors include the strengths of the Plaintiffs' claims and ability to prevail at trial—in which

26  class counsel remain confident—and the relief Plaintiffs anticipate from a successful trial out-

27  come. Countervailing considerations include the legal and factual burdens Plaintiffs would bear in

28  bringing the matter to trial, the defenses Defendants would assert—in which Defendants have ex-

---

1  pressed continued confidence (Kamber Decl. ¶ 5), the complexities of class action practice, and

2  the risks that inevitably attend litigation, including the risk that Plaintiffs will not ultimately pre-

3  vail and so will not secure any post-trial relief. Even if successful in prosecuting this matter, Plain-

4  tiffs would have forfeited the valuable, additional relief now being offered at Defendants' discre-

5  tion, and which could not be compelled from Defendants following trial.

6      In advocating for approval of the Settlement Agreement, class counsel are aided by their

7  collective experience and awareness of the costs and risks described above and are mindful of the

8  interests of Plaintiffs and the putative class, particularly given the proposed settlement's substan-

9  tial and prompt relief and meaningful long-term benefits. It is apparent that the proposed settle-

10 ment serves the best interests of class members. Accordingly, this settlement easily falls well

11 "within the range of possible approval" and merits the Court's preliminary approval.

12 **VI.    THE PROPOSED PLAN OF CLASS NOTICE**

13     Rule 23(c)(2)(B) provides that, "[f]or any class certified under Rule 23(b)(3), the court

14 must direct to class members the best notice practicable under the circumstances, including indi-

15 vidual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P.

16 23(c)(2)(B). Rule 23(e)(1) similarly says, "The court must direct notice in a reasonable manner to

17 all class members who would be bound by a proposed settlement, voluntary dismissal, or com-

18 promise." Fed. R. Civ. P. 23(e)(1). Notice is "adequate if it may be understood by the average class

19 member." *Newberg on Class Actions*, §11.53, at 167 (4th Ed. 2002).

20     The proposed settlement provides for a notice campaign designed to reach virtually all

21 members of the proposed class. After entry of preliminary approval, Facebook shall display to

22 each potential member of the class as identified as users whose information was likely to have

23 been transmitted to Facebook via Beacon, as determined by Facebook based on reasonable efforts,

24 an internal Facebook message containing the Court-approved Notice or links to such Notice, and a

25 link to a blog post, in a form substantially similar to that attached as *Exhibit 2* to the Settlement

26 Agreement.

27     Additionally, during the Notice period, Facebook shall also cause the Court-approved

28 summary form of publication notice, in a form substantially similar to that attached as *Exhibit 5* to

Plaintiffs' Motion for Preliminary Approval         13              Case No. 08-cv-3845 RS
of Class Action Settlement

1  the Settlement Agreement (the "Publication Notice"), to be published in one daily issue of the *USA*

2  *Today*.

3        Each of the above-described summary notices, which are neutral in tone and neither pro-

4  mote nor discourage the assertion of claims, direct potential members of the class to a website

5  where a detailed explanation of the litigation and class members' options are presented in a man-

6  ner designed to allow each of them to make an informed decision. The text of the proposed web

7  notice is attached as *Exhibit 2* to the Settlement Agreement.

8        The notice to the class will be completed within ninety (90) days after preliminary ap-

9  proval of the settlement is granted. As such, the proposed methods of notice comport with Rule 23

10  and the requirements of Due Process and should be approved by this Court.

11  **VII.    PROPOSED PRELIMINARY SCHEDULE**

12        The parties propose the following schedule leading to the Fairness Hearing for final ap-

13  proval of the settlement:

14      1.    Facebook begins to send notice to targeted users as soon as practicable after en-

15          try of Preliminary Approval and Notice Order (PAO) to be completed on or be-

16          fore November 30, 2009;

17      2.    Publication notice to current and former class members to be completed on or

18          before November 30, 2009;

19      3.    Deadline for Opt-outs/Objections: February 1, 2010(or such date as is conven-

20          ient for the Court);

21      4.    Submission of papers in support of final approval and application for attorneys'

22          fees: 14 days prior to Final Fairness Hearing Date; and

23      5.    Final Fairness Hearing: February 24, 2009 (or such date as is convenient for the

24          Court)

25  **VIII.   CONCLUSION**

26        For the foregoing reasons, Plaintiffs respectfully ask that the Court grant preliminary ap-

27  proval of the proposed Settlement Agreement, approve the form and manner of notice described

28

1 | above, and enter the proposed order separately submitted herewith (a copy of which is *Exhibit 4* to

2 | the Settlement Agreement), and grant such further relief the Court deems reasonable and just.

3 |

4 | Dated: September 18, 2009

SCOTT A. KAMBER
DAVID A. STAMPLEY
KAMBEREDELSON, LLC

JOSEPH H. MALLEY
THE LAW OFFICE OF JOSEPH H. MALLEY

DAVID C. PARISI
SUZANNE HAVENS BECKMAN
PARISI & HAVENS LLP


By:  s/ David A. Stampley
_____

Attorneys for Plaintiffs

1          UNITED STATES DISTRICT COURT

2         NORTHERN DISTRICT OF CALIFORNIA

3               SAN JOSE DIVISION

4

5  SEAN LANE, MOHAMMAED SHEIKHA,              Case No.  5:08-cv-03845-RS
   SEAN MARTIN, ALI SAMMOUR,
6  MOHAMMAED ZIDAN, SARA KARROW,
   COLBY HENSON, DENTON HUNKER,
7  FIRAS SHEIKHA, HASSEN SHEIKHA,             Complaint Filed:   August 12, 2008
   LINDA STEWART, TINA TRAN,                  Trial Date:   Not Yet Set
8  MATTHEW SMITH, ERICA PARNELL,
   JOHN CONWAY, AUSTIN MUHS,
9  PHILLIP HUERTA, ALICIA HUNKER,
   individuals, on behalf of themselves and all
10 others similarly situated, and M.H., a minor,
   by and through her parent REBECCA
11 HOLEY,

12              Plaintiffs,

13        v.

14 FACEBOOK, INC., a Delaware Corporation,
   BLOCKBUSTER, INC., a Delaware
15 Corporation, FANDANGO, INC., a Delaware
   Corporation, HOTWIRE, INC., a Delaware
16 Corporation, STA TRAVEL, INC., a
   Delaware Corporation, OVERSTOCK.COM,
17 INC., a Delaware Corporation,
   ZAPPOS.COM, INC., a Delaware
18 Corporation, GAMEFLY, INC., a Delaware
   Corporation, and DOES 1-40, corporations,
19
20              Defendants.

21              **SETTLEMENT AGREEMENT**

22

23

24

25

26

27

28

                                              **5:08-CV-03845-RS**

1    Whereas, the parties hereby enter into this Stipulation and Agreement of Settlement as

2    follows:

3    Representative Plaintiffs, on behalf of themselves and all Class Members, on the one

4    hand, and defendant Facebook, Inc. ("Facebook"), on the other hand (each, a "Party";

5    collectively, the "Parties") hereby enter into this Stipulation and Agreement of Settlement

6    ("Settlement Agreement"), subject to the approval of the Court pursuant to Rule 23 of the Federal

7    Rules of Civil Procedure.

8    **I.    CERTAIN DEFINITIONS**

9    As used in this Settlement Agreement, certain capitalized persons and terms are defined as

10   follows:

11   1.1.    <u>Beacon</u>: the program launched by Facebook on November 6, 2007 and all

12   iterations thereof bearing the "Beacon" name.   Facebook's initial press release announcing

13   Beacon is linked here: http://www.facebook.com/press/releases.php?p=9166

14   1.2.    <u>Beacon Merchant</u>: any company, corporation, business enterprise, or other person

15   that entered into an agreement with Facebook with respect to Beacon or otherwise launched the

16   Beacon program (specifically including, without limitation and by way of example, all non-

17   Facebook defendants named in the Complaint, namely, Blockbuster, Inc., Fandango, Inc.,

18   Hotwire, Inc., STA Travel, Inc., Hotwire, Inc., Zappos.com, Inc., Overstock.com, Inc., and

19   Gamefly, Inc.)

20   1.3.    <u>Class</u>:  all Facebook members who, during the period of November 6, 2007 to the

21   Preliminary Approval Date, engaged in one or more Triggering Activities on a Beacon Merchant

22   website.

23   1.4.    <u>Class Counsel</u>:  the Representative Plaintiffs' counsel of record in the Litigation,

24   namely, Scott A. Kamber and David A. Stampley of KamberEdelson, LLC and Joseph H. Malley

25   of the Law Office of Joseph H. Malley, P.C.

26   1.5.    <u>Class Member</u>:  a Person who falls within the definition of the Class set forth in

27   subsection 1.3 herein.

28

1       1.6.   <u>Class Period</u>: the period from November 6, 2007 through the Preliminary

2  Approval Date.

3       1.7.   <u>Complaint</u>: the Class Action Complaint on file in the Litigation as of the Effective

4  Date of this Settlement Agreement.

5       1.8.   <u>Court</u>: the United States District Court for the Northern District of California.

6       1.9.   <u>Defense Counsel</u>: Facebook's counsel of record in the Litigation, namely, Michael

7  G. Rhodes of Cooley Godward Kronish LLP.

8       1.10.  <u>Facebook</u>:  defendant Facebook, Inc. and its successors, representatives, and

9  assignees.

10      1.11.  <u>Effective Date</u>: the first date as of which all of the events and conditions specified

11  in section 8 of this Settlement Agreement have occurred.

12      1.12.  <u>Fee Application</u>:  an application by Class Counsel to the Court for an award of

13  attorneys' fees, incentive awards to Representative Plaintiffs, and reimbursement of actual

14  expenses and costs incurred in connection with the Litigation, as well as any interest thereon.

15      1.13.  <u>Fee Award</u>: an order by the Court granting Class Counsel's Fee Application in

16  whole or in part.

17      1.14.  <u>Final</u>:  (a) if no appeal from the Judgment is filed, the date of expiration of the

18  time for the filing or noticing of any appeal from the Judgment; or (b) if an appeal from the

19  Judgment is filed, and the Judgment is affirmed or the appeal dismissed, and no petition for a writ

20  of certiorari ("Writ Petition") with respect to the appellate court's judgment affirming the

21  Judgment or dismissing the appeal ("Appellate Judgment") is filed, the date of expiration of the

22  time for the filing of a Writ Petition; or (c) if a Writ Petition is filed and denied, the date the Writ

23  Petition is denied; or (d) if a Writ Petition is filed and granted, the date of final affirmance of the

24  Appellate Judgment or final dismissal of the review proceeding initiated by the Writ Petition.

25  Any proceeding, order, appeal, or Writ Petition pertaining solely to the Fee Award will not in any

26  way delay or preclude the Final Approval Order and Judgment.

27

28

1        1.15.   <u>Judgment or Final Approval Order and Judgment</u>: the Judgment and Order of

2    Dismissal With Prejudice to be entered by the Court, substantially in the form attached hereto as

3    Exhibit 1.

4        1.16.   <u>Litigation</u>:  the putative class action pending in the United States District Court for

5    the Northern District of California and captioned *Lane at al. v Facebook, Inc. et al.*, Case No.

6    1:08-CV-03845 (RS).

7        1.17.   <u>Mediator</u>:  Anthony Piazza, Esq., of Gregorio, Haldeman, Piazza, Rotman, Frank

8    & Feder, 201 Mission Street, Suite 1900, San Francisco, CA, 94105.

9        1.18.   <u>Net Settlement Fund</u>:  the Settlement Fund less all Administrative Costs (as

10   defined, for example and without limitation,  in subsections 4.2, 4.3, 4.5, 4.6, and 4.10, below),

11   the Fee Award, and any taxes or tax expenses.

12       1.19.   <u>Notice</u>:  the Notice of Pendency of Class Action and Proposed Settlement,

13   substantially in the form attached hereto as Exhibits 2 and 3, to be distributed in accordance with

14   the terms of section 4(A), below, which will notify the Class Members of the pendency of the

15   Litigation, the material terms of the proposed Settlement, and their options with respect thereto.

16       1.20.   <u>Person</u>: an individual, corporation, partnership, limited partnership, association,

17   joint stock company, estate, legal representative, trust, unincorporated association, government or

18   any political subdivision or agency thereof, or any other business or legal entity, and such

19   individual's or entity's spouse, heirs, predecessors, successors, representatives, and assignees.

20       1.21.   <u>Preliminary Approval Date</u>:  the date entered by the Court on the Preliminary

21   Approval and Notice Order.

22       1.22.   <u>Preliminary Approval and Notice Order</u>:  a Court order, substantially in the form

23   attached hereto as Exhibit 4, providing for, among other things, preliminary approval of the

24   Settlement and dissemination of the Notice to the Class.

25       1.23.   <u>Privacy Foundation</u>:  a non-profit foundation that shall be formed and created by

26   Facebook and funded from the Net Settlement Fund.

27

28

1    1.24.  Protected Persons:  Facebook and the Beacon Merchants, collectively, and each of

2    their respective past and present officers, directors, employees, insurers, agents, representatives,

3    partners, joint-venturers, parents, subsidiaries, affiliates, attorneys, successors and assigns.

4    1.25.  Released Claims:  any and all claims for payment, non-economic, or injunctive

5    relief of any kind or nature and any and all liabilities, demands, obligations, losses, actions,

6    causes of action, damages, costs, expenses, attorneys' fees and any and all other claims of any

7    nature whatsoever, arising from or relating to any of the allegations or statements made in, or in

8    connection with, the Litigation (and including, without limitation, any and all claims based upon

9    any of the laws, regulations, statutes, or rules cited, evidenced and referenced by all such

10   allegations and statements), or any other known or unknown claims arising from or relating to

11   Beacon (including, without limitation, arising from or relating to the use of data gathered through

12   Beacon).

13   1.26.  Representative Plaintiffs:  subject to Court approval, Sean Lane, Mohannaed

14   Sheikha, Sean Martin, Ali Sammour, Mohammaed Zidan, Sara Karrow, Colby Henson, Denton

15   Hunker, Firas Sheikha, Hassen Sheikha, Linda Stewart, Tina Tran, Matthew Smith, Erica Parnell,

16   John Conway, Austin Muhs, Phillip Huerta, Alicia Hunker, and M.H., a minor, by and through

17   her parent Rebecca Holey, as well as any others appointed by the Court in the Preliminary

18   Approval and Notice Order to serve as Representative Plaintiffs.

19   1.27.  Settlement:  the terms of settlement set forth in this Settlement Agreement.

20   1.28.  Settlement Fund:  the total sum of nine million five hundred thousand dollars

21   ($9,500,000), which shall be paid in accordance with the Settlement Agreement.

22   1.29.  Settling Parties:  collectively, Facebook, the Representative Plaintiffs, and all

23   Class Members.

24   1.30.  Triggering Activity: certain activity, that when completed on a Beacon Merchant

25   website, triggered Beacon.

26   1.31.  The plural of any term defined herein includes the singular, and vice versa.

27

28

## II.    INTRODUCTION

### A.    Background of the Settlement

2.1.    On August 12, 2008, the Representative Plaintiffs commenced the Litigation alleging claims against Facebook (and other defendants) arising out of Beacon. The Complaint alleged violations of (i) the Electronic Communications Privacy Act, 18 U.S.C. §2510; (ii) Computer Fraud and Abuse Act, 18 U.S.C. 1030; (iii) Video Privacy Protection Act, 18 U.S.C. § 2710; (iv) California's Consumer Legal Remedies Act, California Civil Code § 1750; and (v) California's Computer Crime Law, Penal Code § 502.

2.2.    On October 10, 2008, Facebook filed a motion to dismiss the Complaint. The hearing for that motion has been taken off the Court's calendar. (*See* Dkt. No. 23.)

2.3.    Commencing in September 2008, the Parties have conducted an extensive series of settlement negotiations including, among other things, an in person mediation conducted by the Mediator on December 9, 2008, during which the Parties have candidly aired the strengths and weaknesses in their respective litigation positions.

2.4.    At the December 9, 2008 mediation, the Parties tentatively reached an agreement in principle for the resolution of all claims alleged in the Litigation, subject to additional negotiations, confirmatory discovery and communications and, further and without limitation, the Parties' entering into a formal memorandum of understanding and thereafter reaching agreement on final settlement documentation, including this Settlement Agreement.

2.5.    At the above referenced mediation, the Parties executed a Memorandum of Understanding (the "MOU"), which sets forth the Parties' tentative framework for the proposed Settlement memorialized in this Settlement Agreement.

2.6.    After extensive subsequent negotiations, counsel for the parties (namely, Michael G. Rhodes of Cooley Godward Kronish LLP, for Facebook, and Scott A. Kamber of KamberEdelson, LLC) conducted a second mediation before the Mediator on July 28, at which the remaining open issues in dispute were resolved, which led to the parties' drafting and execution of this Settlement Agreement.

1        **B.**     <u>**Facebook's Denial of Wrongdoing and Liability**</u>

2        2.7.     Facebook denies any and all wrongdoing whatsoever. Nothing in this Settlement

3 Agreement shall be construed or deemed to be evidence of or an admission, presumption, or

4 concession on the part of Facebook of any fault, liability, coverage or wrongdoing as to any facts

5 or claims asserted in the Litigation (or any infirmity in the defenses that Facebook has asserted or

6 could assert in the Litigation), or any other actions or proceedings, and shall not be interpreted,

7 construed, deemed, invoked, offered, or adduced or received in evidence or otherwise used

8 against Facebook in the Litigation, or in any other action or proceeding, whether civil, criminal,

9 or administrative.

10        **C.**     <u>**The Settlement Is Fair, Adequate, and Reasonable**</u>

11        2.8.     Class Counsel have conducted extensive research and investigation relating to the

12 claims and the underlying events and transactions alleged in the Complaint during the prosecution

13 of the Litigation which included: (a) the interview of the Representative Plaintiffs to assess the

14 potential claims of each individual; (b) the review of public statements, including consumer-

15 facing statements on Facebook's website, press releases attributed to Facebook, and articles about

16 Facebook; (c) research of the applicable law with respect to the claims asserted in the Complaint

17 and arguments asserted in Facebook's motion to dismiss; and (d) the review of documents and

18 other information made available by Facebook to Class Counsel for their review. Although

19 Class Counsel believe that the claims asserted against Facebook in the Litigation have substantial

20 merit, Class Counsel recognize and acknowledge that continued prosecution of the Litigation

21 through trial and possible appeal would be protracted and expensive.

22        2.9.     Class Counsel have also taken into account the uncertain outcome and the risk of

23 any litigation, especially in complex actions such as the Litigation, as well as the difficulties and

24 delays inherent in such litigation. Class Counsel are mindful of the inherent problems of proof

25 and possible defenses to the claims asserted in the Litigation.

26        2.10.    As noted, Class Counsel have conducted extensive discussions and arm's length

27 negotiations with Defense Counsel including with the assistance of the Mediator, with respect to a

28 resolution of the claims in the Litigation and with the goal of achieving the best relief possible

                 **5:08-CV-03845-RS**

1  consistent with the interests of the Class and the strengths and weaknesses of the claims and

2  defenses asserted in the Litigation.

3      2.11.  Based on evaluation of all of these factors, Class Counsel have concluded in light

4  of the applicable law that the terms of the Settlement are fair, adequate, and reasonable, and that it

5  is desirable and in the best interests of the Representative Plaintiffs and all Class Members that

6  the Litigation be fully and finally settled on the terms set forth in this Settlement Agreement.

7      **NOW THEREFORE,** in consideration of the promises and mutual covenants set forth

8  herein, it is hereby STIPULATED AND AGREED, by and among the Parties to this Settlement

9  Agreement, through their respective attorneys, subject to approval of the Court pursuant to Rule

10  23 of the Federal Rules of Civil Procedure and satisfaction of all the terms and conditions set

11  forth herein, that the Litigation and all Released Claims shall be compromised, settled, released,

12  and dismissed with prejudice, upon and subject to the following terms.

13  **III.    CLASS CERTIFICATION**

14      3.1    The Parties stipulate to the certification of the Class, for settlement purposes only,

15  pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure.

16      3.2    The class certification contemplated by this Settlement Agreement is for purposes

17  of settlement only, and nothing in this Settlement Agreement shall constitute, in this or in any

18  other action or proceeding, an admission by Facebook or a finding or evidence that any claims

19  that either were brought or could have been brought in the Litigation are appropriate for class

20  treatment or that any requirement for class certification is or could otherwise be satisfied.  By

21  entering into this Settlement Agreement, Facebook in no way waives its right to challenge or

22  contest the continued maintenance of the Litigation or any other lawsuit or class action and to

23  oppose certification of any class or otherwise oppose the claims of the class for litigation

24  purposes.  Nor may the fact that Facebook entered into this Settlement Agreement be offered,

25  received, or construed as an admission, finding, or evidence, for any purpose, including the

26  appropriateness of class certification.

27

28

7.                                    **5:08-CV-03845-RS**

1    **IV.    SETTLEMENT CONSIDERATION**

2        **A.    Dissemination of the Notice**

3        As soon as reasonably practicable after the Court certifies the proposed Class,

4    preliminarily approves the proposed Settlement, and approves the forms of Notice, Facebook

5    shall:

6        4.1.    Distribute the Court approved Notice or links to such Notice via an internal

7    Facebook message targeting users whose PII was likely to have been transmitted to Facebook via

8    Beacon, as determined by Facebook based on reasonable efforts. The internal Facebook message

9    shall contain a link to a blog post, in a form substantially similar to that attached hereto as Exhibit

10    2.

11        4.2.    During the Notice period, Facebook shall also cause the Court-approved summary

12    form of publication notice, in a form substantially similar to that attached hereto as Exhibit 3 (the

13    "Publication Notice"), to be published in one daily issue of the national edition of *USA Today*.

14    The cost of the Publication Notice shall constitute an Administrative Cost and be paid from the

15    Settlement Fund.

16        4.3.    To the extent that additional notices to the Class are ordered by the Court or

17    become necessary for the Court's approval of the Settlement Agreement, such additional notices

18    may be made in the same manner as the original Notice, but the out-of-pocket costs, if any, of any

19    additional notices, will constitute Administrative Costs and will be reimbursed to Facebook from

20    the Settlement Fund.

21        4.4.    Within ten (10) days of the filing of the Settlement Agreement with the Court,

22    Facebook shall properly notify the appropriate state and federal officials of this Settlement

23    Agreement pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

24        **B.    Settlement Fund**

25        4.5.    The Settlement Fund shall consist of a total of $9.5 million ($9,500,000.00). The

26    Settlement Fund shall be kept under the control and possession of Facebook but within twenty

27    (20) days of Preliminary Approval, the Settlement Fund shall be deposited into a separate bank

28    account specifically established by Facebook for purpose of this Settlement.

1       4.6.    Upon the formation of the Privacy Foundation in accordance with Section 4.19,

2 Facebook shall distribute to the Privacy Foundation the Settlement Fund of $9.5 million less the

3 Fee Award, costs, incentive awards, and Administrative Costs of this Settlement as provided

4 herein (including, without limitation, the advance to the third party Class administrator specified

5 in Section 4.10, below). Once transferred, the Privacy Foundation shall have sole and exclusive

6 control over the management and disposition of those funds.

7       **C.**    **Administrative Costs**

8       4.7.    Subject to the Court's approval, the Settlement Fund will be applied to payment of

9 the reasonable costs incurred administering the Settlement as variously specified herein

10 ("Administrative Costs").

11       4.8.    All Administrative Costs that are reasonably and necessarily incurred prior to the

12 Effective Date shall be advanced from the Settlement Fund, subject to prior approval by Class

13 Counsel, Defense Counsel, and the Court.

14       4.9.    Under no circumstances will the Representative Plaintiffs, Class Counsel, or any

15 Class Member have any liability for Administrative Costs under the Settlement. If the Settlement

16 is terminated or fails to become Final for any reason, Facebook will absorb such costs in their

17 entirety.

18       4.10.    Within twenty (20) days of the Preliminary Approval Date, Facebook shall pay to

19 a third party class action administrator to be designated by Class Counsel the sum of $250,000 to

20 be used to cover the administrative and other incidental costs associated with responding to

21 inquiries from Class Members about this Settlement and the process by which this Settlement will

22 be subject to judicial approval. Such amount shall be deducted from the Settlement Payment as a

23 credit therefrom and constitute an Administrative Cost. If the Court refuses to approve this

24 Settlement for any reason, then the class action administrator shall promptly account to Facebook

25 for the amount of actual expenses incurred in connection with the administration of this

26 Settlement and return to Facebook the unused balance.

27

28

1         4.11.   Any disputes over the propriety of any Administrative Costs or the reimbursement
2    thereof from the Settlement Fund shall be finally resolved by the Mediator in the manner directed
3    thereby.

4         **D.**     **<u>Attorneys' Fees, Expenses, & Incentive Awards</u>**

5         4.12.   Class Counsel have never received any payment for prosecuting this case on
6    behalf of Representative Plaintiffs and Members of the Class, nor have they been reimbursed for
7    their out-of-pocket expenses.  On or before the date specified in the Preliminary Approval and
8    Notice Order, Class Counsel will submit their Fee Application requesting approval of a Fee
9    Award consisting of an award of attorneys' fees in an amount of up to one-third of the Settlement
10   Fund as defined in Section 1.28.  Facebook agrees that a request by Class Counsel for such a Fee
11   Award is fair and reasonable and it will not object to or otherwise challenge Class Counsels' Fee
12   Application from the Settlement Fund if limited to such an amount.  Class Counsel have, in turn,
13   agreed not to seek more than said amount from the Court.

14        4.13.   The amount of any Fee Award, costs and expenses shall be paid from the
15   Settlement Fund.  In the event the Settlement is not finally approved, Facebook is under no
16   obligation to pay attorneys' fees, incentive awards, costs or expenses, or interest thereon.

17        4.14.   Notwithstanding any appeal, objection, or challenge to the Court's entry of the
18   Judgment or Final Approval Order and Judgment, no later than ten (10) business days after the
19   entry of such order Defense Counsel or Facebook shall pay to Class Counsel the Fee Award from
20   the Settlement Fund provided Class Counsel provides adequate security for the recovery of
21   amounts paid in the event of reversal on appeal of the final approval of this Settlement.

22        4.15.   The Fee Application and the Court's decision to grant or deny it, in whole or in
23   part, are to be considered by the Court separately from the Court's consideration of the fairness,
24   reasonableness, and adequacy of the Settlement.  Any order or proceedings relating to the Fee
25   Application or Fee Award, or any appeal from any order relating thereto or reversal or
26   modification thereof, will not operate to terminate or cancel this Settlement Agreement, or affect
27   or delay the finality of the Judgment approving the Settlement and this Settlement Agreement.
28

1    No order of the Court or modification or reversal on appeal of any order of the Court concerning

2    any Fee Award shall constitute grounds for cancellation or termination of this Agreement.

3          4.16.   In addition to any benefits afforded under the Settlement, and in recognition of

4    their efforts on behalf of the Class, subject to Court approval, Sean Lane shall receive fifteen

5    thousand dollars ($15,000); Sean Martin and Mohammad Sheikha shall each receive seven

6    thousand five hundred dollars ($7,500) and the other Representative Plaintiffs shall each receive

7    one thousand dollars as appropriate compensation for their time and effort serving as the

8    Representative Plaintiffs in the Litigation.  Facebook or Defense Counsel shall pay such amount

9    from the Settlement Fund to the Representative Plaintiffs, in care of Class Counsel, within thirty

10    (30) days of the Effective Date.

11         4.17.   Except as otherwise provided in this section, each Party will bear his/her/its own

12    costs of suit, including attorneys' fees, incurred in bringing or defending against the Litigation.

13    **E.**     **Tax Liability For Settlement Fund**

14         4.18.   Under no circumstances will  Facebook or Defense Counsel have any liability for

15    taxes or tax expenses under the Settlement.

16    **F.**     **Formation of Privacy Foundation**

17         4.19.   Within twenty (20) days of the entry of the Judgment or Final Approval Order and

18    Judgment, utilizing the net proceeds of the Settlement Fund, Facebook shall form and establish

19    the a non-profit foundation ("Privacy Foundation"), the purpose of which shall be to fund projects

20    and initiatives that promote the cause of online privacy, safety, and security. The out-of-pocket

21    expenses (including filing fees, legal fees, and naming costs) shall constitute an Administrative

22    Cost that shall be deducted from the Settlement up to a maximum cap of $50,000, inclusive.

23         4.20.   The charter and bylaws of the Privacy Foundation shall be to fund and sponsor

24    programs designed to educate users, regulators, and enterprises regarding critical issues relating

25    to protection of identity and personal information online through user control, and to protect users

26    from online threats.   The Privacy Foundation shall be prohibited from directly or indirectly

27    sponsoring litigation except to defend its resources.  Consistent with the terms of this section,

28

1   Facebook shall submit the form of initial charter and bylaws to the Court in connection with the

2   parties seeking final approval of this Settlement.

3        4.21.   The Privacy Foundation shall have three directors.   The initial directors shall be

4   chosen by mutual agreement of the parties, through their respective counsel.   In the event that the

5   three directors cannot be selected through mutual agreement, each Party shall nominate one

6   director to serve on the Board of the Privacy Foundation and then each side shall further nominate

7   a proposed third director and the Mediator shall make the final and binding selection as to the

8   identity of the third director.   During its first year, the Privacy Foundation shall unanimously

9   determine a plan for terms and succession of its officers and directors and a permanent name for

10  the Foundation.   After the initial directors have served their initial terms, all future directors shall

11  be nominated and selected in accordance with the charter and by-laws of the foundation.   The

12  Privacy Foundation's governance and operations shall be determined by majority vote of the

13  Board.

14       4.22.   The Privacy Foundation also shall have a two member "Board of Legal Advisors"

15  who shall offer nonbinding advice on compliance with the provisions of this Agreement, attend

16  all formal meetings and offer nonbinding advice to the officers and directors.   Michael Rhodes

17  and Scott A. Kamber, or their designees, shall serve as the initial board of legal advisors.   During

18  its first year, the board of legal advisors, in consultation with the directors and officers, shall

19  determine a plan for terms and succession of members of the board of legal advisors.

20       **G.**     **Termination of the Beacon Program**

21       4.23.   In connection with this Settlement, and within sixty (60) days of the Preliminary

22  Approval Date, Facebook shall terminate the Beacon program in its entirety.   In the event that this

23  Settlement is not finalized in its entirety, then Facebook reserves the right to restart and/or

24  reactivate Beacon in whole or part.

25  **V.**     **RELEASES**

26       5.1.   Upon the Effective Date, each of the Representative Plaintiffs and each of the

27  Class Members will be deemed to have, and by operation of the Judgment will have, fully,

28

1  finally, and forever released, relinquished, and discharged the Protected Persons from all

2  Released Claims.

3      5.2.    The Representative Plaintiffs, on behalf of all Class Members, acknowledge and

4  agree that they have read and understand the contents of Section 1542 of the Civil Code of the

5  State of California, and, to the fullest extent permitted by law, the Representative Plaintiffs and

6  all Class Members expressly, knowingly, intentionally, and irrevocably waive any and all rights

7  and benefits that they may have under Section 1542 or any other similar state or federal statute, or

8  common law or other legal principle.  Section 1542 reads as follows:

9          **Section 1542.  (General Release - Claims Extinguished)  A GENERAL**

10         **RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE**

11         **CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR**

12         **HER FAVOR AT THE TIME OF EXECUTING THE RELEASE,**

13         **WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY**

14         **AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

15     5.3.    The Representative Plaintiffs and one or more Class Members may hereafter

16  discover facts different from or in addition to those that they now know or believe to be true with

17  respect to the releases provided for in this section (Section 5).  Nevertheless, the Representative

18  Plaintiffs and all Class Members hereby expressly waive and release upon the Effective Date any

19  and all Released Claims, whether known or unknown, suspected or unsuspected, foreseen or

20  unforeseen, contingent or non-contingent, without regard to the subsequent discovery or existence

21  of such different or additional facts.

22     5.4.    Notwithstanding anything to the contrary in this Settlement Agreement, the

23  releases contained in Section 5 herein do not extend to any action or proceeding to enforce or

24  defend any rights or obligations arising under this Agreement.

25  **VI.   PRELIMINARY APPROVAL AND NOTICE ORDER; FINAL FAIRNESS HEARING**

26     6.1.    Promptly after execution of this Settlement Agreement, Class Counsel will

27  move the Court for entry of the Preliminary Approval and Notice Order, requesting, *inter alia*,

28  preliminary approval of the Settlement and for a stay of all proceedings in the Litigation against

13.                                    **5:08-CV-03845-RS**

1   the Protected Persons until the Court renders a final decision on approval of the Settlement. The

2   motion shall include (a) the proposed Preliminary Approval and Notice Order in the form

3   attached as Exhibit 4 hereto, (b) the proposed forms of Notice, substantially in the form of

4   Exhibits 2 and 3 hereto; and (c) a proposed Final Approval Order and Judgment finally approving

5   the Settlement in the form attached as Exhibit 1 hereto.

6       6.2.   After dissemination of the Notice in accordance with the Preliminary Approval

7   and Notice Order, Class Counsel will move the Court for Final Approval Order and entry of the

8   Judgment,

9           (a)   certifying the settlement Class, and, fully and finally approving the

10  Settlement contemplated by this Agreement and its terms as being fair, reasonable and adequate

11  within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its

12  consummation pursuant to its terms and conditions;

13          (b)   finding that the notice given to Class Members as contemplated in

14  subsections 4.1-4.3 above constitutes the best notice practicable under the circumstances and

15  complies in all respects with the requirements of Rule 23 of the Federal Rules of Civil Procedure

16  and due process;

17          (c)   directing that the Litigation be dismissed with prejudice as to Protected

18  Persons and, except as provided for herein, without costs;

19          (d)   discharging and releasing the Protected Persons from all Released Claims;

20          (e)   permanently barring and enjoining the institution and prosecution, by

21  Plaintiffs and the Class Members, of any other action against the Protected Persons in any court

22  asserting any Released Claims;

23          (f)   reserving continuing and exclusive jurisdiction over the Settlement,

24  including all future proceedings concerning the administration, consummation and enforcement

25  of this Agreement;

26          (g)   determining pursuant to Fed. R. Civ. P. 54(b) that there is no just reason for

27  delay and directing entry of a final judgment as to defendants in the Litigation; and

28

14.                                    **5:08-CV-03845-RS**

1          (h)     containing such other and further provisions consistent with the terms of

2 this Settlement Agreement to which the parties expressly consent in writing.

3        6.3.     The Parties will request that the Court hold a hearing, at least ninety (90) days

4 after the appropriate state and federal officials are served with proper notice of this Settlement

5 Agreement pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, on whether the

6 Settlement should be granted final approval and whether Class Counsels' Fee Application should

7 be granted.

8        6.4.     Following dissemination of the Notice as provided in the Preliminary Approval

9 and Notice Order, Class Members will have the right to opt out of the Settlement in accordance

10 with the procedures set forth in the Notice. Any right to opt out shall be personal to the Class

11 Member and shall not be assignable.

12        6.5.     In the event that 1,500 or more Class Members opt out of the Settlement,

13 Facebook will be entitled at its sole option to void, nullify, terminate, and/or rescind the

14 Settlement Agreement and the MOU. Such option must be exercised at least fourteen (14) days

15 before the final fairness hearing on the approval of the Settlement.

16 **VII.**   **OPT-OUT AND OBJECTIONS**

17        7.1.     Any Person may opt out of the Class at any time during the period of time

18 approved by the Court and as will be outlined in the Court-approved Notice. Opt-outs must be

19 post-marked by a date approved by the Court and specified in the Notice. In order to exercise the

20 right to opt out, the Person seeking to opt-out must complete and return a request for exclusion to

21 the claims administrator during the opt-out period. Except for those Persons who have properly

22 opted out, all Class Members will be bound by this Settlement and the Judgment to be entered

23 following final approval of this Settlement Agreement. Any Person who elects to opt out of the

24 Settlement Class shall not (i) be bound by any orders or Judgment entered in this Litigation; (ii)

25 be entitled to relief under this Settlement; (iii) gain any rights by virtue of this Settlement; or (iv)

26 be entitled to object to any aspect of this Settlement. Any request for exclusion must be

27 personally signed by the Person requesting exclusion. So-called "mass" or "class" opt-outs shall

28 not be allowed.

                 **5:08-CV-03845-RS**

1      7.2.     Any Class Member who intends to object to this Settlement must include his/her

2    name and address, include all arguments, citations, and evidence supporting the objection and that

3    they are a member of the Class, and provide a statement whether the objector intends to appear at

4    the final fairness hearing, either with or without counsel.  Objections must be post-marked by a

5    date approved by the Court and specified in the Notice.  Any Class Member who fails to timely

6    file a written objection and notice of his or her intent to appear at the fairness hearing pursuant to

7    this paragraph or as detailed in the Notice, shall not be permitted to object to this Settlement at the

8    fairness hearing, and shall be foreclosed from seeking any review of this Settlement by appeal or

9    other means.

10   **VIII.   CONDITIONS**

11      8.1.     The Effective Date of this Settlement Agreement is conditioned upon the

12   occurrence of all of the following events:

13           (a)     The Court enters the Preliminary Approval and Notice Order;

14           (b)     Facebook does not exercise its option under Section 6.5 herein to void,

15   nullify, terminate, and/or rescind the Settlement Agreement and the MOU;

16           (c)     The Court enters the Judgment, providing, among other things, that the

17   Class is certified for settlement purposes, that there has been adequate and sufficient notice of the

18   Settlement to the Class, and that the terms and conditions of the Settlement are fair, reasonable,

19   and adequate as a settlement of the claims of the Class in the Litigation;

20           (d)     The Judgment becomes Final;

21           (e)     The Litigation is dismissed with prejudice as to Facebook and the Protected

22   Persons; and

23           (f)     The Representative Plaintiffs and all Class Members release Facebook and

24   all Protected Persons from the Released Claims.

25      8.2.     In the event that any one or more of these conditions is not met, this Settlement

26   Agreement will be of no force or effect, and the Parties will be deemed to be in the same position

27   as they occupied prior to entering into this Settlement Agreement, without waiver of any rights,

28   claims or defenses, unless the Parties mutually agree in writing to proceed with this Agreement.

1    8.3.   If the Court does not enter the Preliminary Approval and Notice Order,
2  substantially in the form of Exhibit 4 hereto, the Final Approval Order and Judgment,
3  substantially in the form of Exhibit 1 hereto, or if the Court enters the Final Approval Order and
4  Judgment and appellate review is sought and, on such review, the Final Approval Order and
5  Judgment is finally vacated, modified, or reversed, then this Agreement and the Settlement
6  incorporated therein shall be cancelled and terminated, unless all parties who are adversely
7  affected thereby, in their sole discretion within thirty (30) days from the date of receipt of such
8  ruling to such parties, provide written notice to all other parties hereto of their intent to proceed
9  with the Settlement under the terms of the Preliminary Approval and Notice Order or the Final
10 Approval Order and Judgment as modified by the Court or on appeal.  Such notice may be
11 provided on behalf of Plaintiffs and the Class Members by Class Plaintiffs' Counsel.  No Party
12 shall have any obligation whatsoever to proceed under any terms other than substantially in the
13 form provided and agreed to herein; provided, however, that no order of the Court concerning any
14 Fee and Expense Application, or any modification or reversal on appeal of such order, shall
15 constitute grounds for cancellation or termination of this Agreement by any Party.  Without
16 limiting the foregoing, defendant Facebook shall have, in its sole and absolute discretion, the
17 option to terminate the Settlement in its entirety in the event that the Judgment, upon becoming
18 Final, does not provide for the dismissal with prejudice of all of the claims against them asserted
19 in the Litigation.

20    8.4.   If this Settlement Agreement is not finally approved for any reason or fails to
21 become effective or Final in accordance with its terms, the Settlement Fund, less any outstanding
22 Administrative Costs incurred or due and owing, and any amounts incurred or due and owing in
23 connection with taxes or tax expenses provided for herein, will revert entirely to Facebook.

24    8.5.   If a case is commenced with respect to Facebook under Title 11 of the United
25 States Code (Bankruptcy) or a trustee, receiver, or conservator is appointed under any similar
26 laws, and if a final order of a court of competent jurisdiction is entered determining that payments
27 by Facebook pursuant to the Settlement are a preference, voidable or fraudulent transfer, or
28

17.                    5:08-CV-03845-RS

1   similar transaction, then the releases given and Judgment entered in favor of the Protected
2   Persons pursuant to this Settlement Agreement will be null and void.

3       8.6.    If additional notice, other than that specified in this Settlement is ordered by the
4   Court, or the Court requires that notice be provided to Class Members via standard mail as a
5   condition for the Court's approval of the Settlement, the costs of such additional notice are
6   deemed Administrative Costs and will be reimbursed to Facebook from the Settlement Fund.

7   **IX.    MISCELLANEOUS PROVISIONS**

8       9.1.    The Parties acknowledge that it is their intent to consummate this Settlement
9   Agreement, and agree to cooperate to the extent reasonably necessary to effectuate and
10  implement all terms and conditions of this Settlement Agreement and to exercise their best efforts
11  to accomplish such terms and conditions.

12      9.2.    The Parties intend the Settlement to be a final and complete resolution of all
13  disputes between them with respect to the Litigation and the Released Claims.  The Settlement
14  compromises claims that are contested and will not be deemed an admission by any Settling Party
15  as to the merits of any claim or defense.

16      9.3.    The time to appeal from an approval of the Settlement shall commence upon the
17  Court's entry of the Judgment regardless of whether an application for attorneys' fees and
18  expenses has been submitted to the Court or resolved.

19      9.4.    Neither this Settlement Agreement, the Settlement, nor any act performed or
20  document executed pursuant to or in furtherance of the Settlement is or may be deemed to be an
21  admission of, or evidence of:  (i) the validity of any Released Claims; (ii) any wrongdoing or
22  liability of Facebook; or (iii) any fault or omission of Facebook in any civil, criminal, or other
23  proceeding in any court, administrative agency, or other tribunal.   Neither this Settlement
24  Agreement nor the Settlement, nor any act performed or document executed pursuant to or in
25  furtherance of this Settlement Agreement or the Settlement shall be admissible in any proceeding
26  for any purpose, except to enforce the terms of the Settlement, and except that any of the
27  Protected Persons may file this Settlement Agreement and/or the Judgment in any action that may
28  be brought against them in order to support any defense or counterclaim, including without

1  limitation those based on principles of *res judicata*, collateral estoppel, release, good faith

2  settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion

3  or similar defense or counterclaim.

4      9.5.    All of the Exhibits to this Settlement Agreement are material and integral parts

5  hereof and are fully incorporated herein by this reference. Any inconsistency between this

6  Settlement Agreement and the Exhibits attached hereto shall be resolved in favor of this

7  Agreement.

8      9.6.    The Parties acknowledge and agree that this Settlement Agreement and the

9  Exhibits attached hereto constitute the entire agreement among the Parties, that they have not

10  executed this Settlement Agreement in reliance on any promise, representation, inducement,

11  covenant, or warranty except as expressly set forth herein, and that this Settlement Agreement

12  supersedes all other prior statements or agreements, whether oral and written, to the extent any

13  provision hereof is inconsistent with any such prior oral or written statements or agreements.

14      9.7.    This Settlement Agreement may not be amended except by a writing executed by

15  all Parties hereto or their respective successors-in-interest.

16      9.8.    The Court will retain jurisdiction with respect to implementation and enforcement

17  of the terms of this Settlement Agreement and over any disputes arising under this Settlement

18  Agreement, and all Parties hereby submit to the jurisdiction of the Court for such purposes.

19      9.9.    Each Party represents and warrants to all other Parties that such Party:  (a) was

20  represented by attorneys of the Party's choosing in connection with the execution of this

21  Settlement Agreement; (b) has read and understood all aspects of this Settlement Agreement and

22  all of its effects; and (c) has executed this Settlement Agreement as a voluntary act of the Party's

23  own free will and without any threat, force, fraud, duress, or coercion of any kind.

24      9.10.   Class Counsel represents and warrants that it is expressly authorized by the

25  Representative Plaintiffs to take all appropriate action required or permitted to be taken by the

26  Class pursuant to this Settlement Agreement to effectuate its terms, and is expressly authorized to

27  enter into any modifications or amendments to this Agreement on behalf of the Class.

28

1    9.11.   If any provision of this Settlement Agreement is declared by the Court to be

2    invalid, void, or unenforceable, the remaining provisions of this Settlement Agreement will

3    continue in full force and effect, unless the provision declared to be invalid, void, or

4    unenforceable is material, at which point the Parties shall attempt to renegotiate the Settlement

5    Agreement or, if that proves unavailing, either Party can terminate the Settlement Agreement

6    without prejudice to any Party.

7    9.12.   This Agreement shall be binding upon, and inure to the benefit of, the successors

8    and assigns of the parties hereto.  Without limiting the generality of the foregoing, each and every

9    covenant and agreement herein by Plaintiffs and Class Counsel be binding upon all Class

10   Members.

11   9.13   This Settlement Agreement will be construed as if the Parties jointly prepared it,

12   and any uncertainty or ambiguity will not be interpreted against any one Party because of the

13   manner in which this Settlement Agreement was drafted or prepared.

14   9.14.   The headings used in this Settlement Agreement are for convenience only and will

15   not be used to construe its provisions.

16   9.15.   This Settlement Agreement may be executed by facsimile and in any number of

17   counterparts, all of which will be construed together and will constitute one document.

18   9.16.   This Agreement shall not be modified in any respect except by a writing executed

19   by all the parties hereto, and the waiver of any rights conferred hereunder shall be effective only

20   if made by written instrument of the waiving party.  The waiver by any party of any breach of this

21   Agreement shall not be deemed or construed as a waiver of any other breach, whether prior,

22   subsequent or contemporaneous, of this Agreement.

23   9.17.   To the extent necessary, the Parties agree to submit any disputes relating to the

24   substance or wording of this Settlement Agreement or the terms or content of the Settlement

25   Agreement to the Mediator.  If the Mediator is unable to resolve the dispute, then the dispute will

26   be submitted to the Court.  The Court shall retain exclusive jurisdiction over the implementation

27   and enforcement of this Agreement.

28

1       9.18.   This Settlement Agreement will be governed by, and construed in accordance

2   with, the laws of the State of California.

3       9.19.   Each Person executing this Settlement Agreement as Class Counsel or Defense

4   Counsel hereby warrants that such Person has the full authority to make any and all

5   representations or warranties made in this Settlement Agreement, to agree to all terms and

6   conditions of this Settlement Agreement, and to execute this Settlement Agreement.

7       9.20.   The Parties and their counsel shall keep confidential the terms of this Settlement

8   Agreement until such time as they mutually agree on the content and timing of a joint press

9   release announcing the Settlement, or until Plaintiffs file a motion for preliminary approval of the

10   Settlement pursuant to subsection 6.1 above, whichever is sooner.   Notwithstanding the

11   foregoing, prior to the time that such press release is issued or Plaintiffs file a motion for

12   preliminary approval of the Settlement pursuant to subsection 6.1 above, whichever is sooner, the

13   Parties and their counsel may disclose the fact of such settlement, and defendants in the Litigation

14   may disclose the terms of this Settlement Agreement to their accountants, financial, tax and legal

15   advisors and such other Persons as required to comply with any obligations or requirements that

16   may exist under applicable federal and state tax or securities laws.

17       **IN WITNESS WHEREOF,** the Parties have executed and caused this Settlement

18   Agreement to be executed by their duly authorized attorneys, as of the dates set forth below.

19

20

21

22

23

24

25

26

27

28