1    Dated: 9 - 17 , 2009                COOLEY GODWARD KRONISH LLP

2

3                                        _michael Rk_

4                                        Michael G. Rhodes (116127)
                                         COOLEY GODWARD KRONISH LLP
5                                        Five Palo Alto Square
                                         3000 El Camino Real
6                                        Palo Alto, CA  94306-2155

7                                        Attorneys for Defendant
                                         FACEBOOK, INC.
8

9

10                                       Scott A. Kamber
                                         David A. Stampley
11                                       KAMBEREDELSON, LLC
                                         11 Broadway, 22d Floor
12                                       New York, NY 10004
                                         Tel.:  (212) 920-3072
13

14

15                                       Joseph H. Malley
                                         LAW OFFICE OF JOSEPH H. MALLEY
16                                       1045 North Zang Boulevard
                                         Dallas, Texas 75208
17                                       Ph. (214) 943-6100

18                                       Class Counsel, on behalf of Plaintiffs individually,
19                                       and on behalf of the Class

20

21

22

23

24

25

26

27

28

                                         22.                    5:08-CV-03845-RS

| | |
|---|---|
| 1 | Dated: Sept. 17, 2009               COOLEY GODWARD KRONISH LLP |

Michael G. Rhodes (116127)
COOLEY GODWARD KRONISH LLP
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306-2155

Attorneys for Defendant
FACEBOOK, INC.

Scott A. Kamber
David A. Stampley
KAMBEREDELSON, LLC
11 Broadway, 22d Floor
New York, NY 10004
Tel.: (212) 920-3072

Joseph H. Malley
LAW OFFICE OF JOSEPH H. MALLEY
1045 North Zang Boulevard
Dallas, Texas 75208
Ph. (214) 943-6100

Class Counsel, on behalf of Plaintiffs individually,
and on behalf of the Class

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SEAN LANE, MOHANNAED SHEIKHA, SEAN MARTIN, ALI SAMMOUR, MOHAMMAED ZIDAN, SARA KARROW, COLBY HENSON, DENTON HUNKER, FIRAS SHEIKHA, HASSEN SHEIKHA, LINDA STEWART, TINA TRAN, MATTHEW SMITH, ERICA PARNELL, JOHN CONWAY, AUSTIN MUHS, PHILLIP HUERTA, ALICIA HUNKER, individuals, on behalf of themselves and all others similarly situated, and M.H., a minor, by and through her parent REBECCA HOLEY, | Case No.  5:08-cv-03845-RS |
| Plaintiffs, | |
| v. | **[PROPOSED]** **FINAL JUDGMENT AND ORDER OF DISMISSAL WITH PREJUDICE** |
| FACEBOOK, INC., a Delaware Corporation, BLOCKBUSTER, INC., a Delaware Corporation, FANDANGO, INC., a Delaware Corporation, HOTWIRE, INC., a Delaware Corporation, STA TRAVEL, INC., a Delaware Corporation, OVERSTOCK.COM, INC., a Delaware Corporation, ZAPPOS.COM, INC., a Delaware Corporation, GAMEFLY, INC., a Delaware Corporation, and DOES 1-40, corporations, | |
| Defendants. | |

This matter came before the Court for hearing pursuant to the Preliminary Approval and Notice Order, dated _____, 2009, on the application of the Plaintiffs and Facebook, Inc. ("Facebook") (Plaintiffs and Facebook are collectively, the "Parties") for

approval of the settlement set forth in the Settlement Agreement dated _____, 2009 ("Settlement Agreement"). Due and adequate notice having been given of the Settlement ("Settlement") set forth in the Settlement Agreement as required in the Preliminary Approval and Notice Order, and the Court having considered all papers filed and proceedings had herein and good cause appearing therefore, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.      This Judgment incorporates by reference the definitions in the Settlement Agreement, and all defined terms used herein shall have the same meanings as set forth in the Settlement Agreement.

2.      This Court has jurisdiction over the subject matter of the Litigation and over all parties to the Litigation, including all Class Members.

3.      Pursuant to Federal Rule of Civil Procedure 54(b), there is no just reason for delay and final judgment is entered as to all defendants in the Litigation.

4.      Pursuant to Federal Rule of Civil Procedure 23, this Court hereby affirms its findings and conclusion, set forth in the Preliminary Approval and Notice Order, that, for purposes of the Settlement Agreement and Settlement, this Class meets the prerequisites for maintenance of a class action under Rule 23. The Court hereby makes final its previously conditional certification of the Class.

5.      Pursuant to Federal Rule of Civil Procedure 23(e), this Court hereby approves the Settlement and finds that the Settlement is, in all respects, fair, reasonable, and adequate for the Class. The Court finds that the Settlement Agreement and the Settlement are fair, reasonable, and adequate as to the Parties, grants final approval of the Settlement Agreement and the Settlement in all respects, and directs the Parties to perform the terms of the Settlement Agreement.

6.      This Court hereby dismisses with prejudice and without costs (except as otherwise provided in the Settlement Agreement and by other Order of the Court) the Litigation as to Protected Persons. Notwithstanding the foregoing, this

Judgment does not dismiss any of the individual claims asserted by any persons or entities who have validly and timely requested exclusion from the Settlement Class as provided for in the Preliminary Approval and Notice Order. A list of persons and entities who validly and timely requested exclusion is attached hereto as Exhibit 1. Notwithstanding the dismissal of the Litigation, Facebook shall not claim and shall not be awarded any costs, attorneys' fees or expenses to be paid by Class Counsel or from the Settlement Fund.

7.  As set forth in paragraphs 5.1 – 5.4 of the Settlement Agreement, upon the Effective Date, the Representative Plaintiffs and each of the Class Members shall be deemed to have, and by operation of the Judgment shall have fully, finally, and forever released, relinquished, and discharged the Protected Persons from all Released Claims.

8.  The persons identified in Exhibit 1 hereto have requested exclusion from the Settlement as of the deadline for opting out.  These persons so identified shall not share in the benefits of the Settlement.  In addition, this Final Approval Order and Judgment does not affect their legal rights to pursue any claims they may have against Defendants.  With regard to all other members of the Class, such Class Members are hereinafter barred and permanently enjoined from prosecuting further the Released Claims against Protected Persons.

9.  Under the circumstances, the notice of this Settlement provided to the Class Members in accordance with the Preliminary Approval and Notice Order was the best notice practicable of the proceedings and matters set forth herein, including the proposed Settlement, to all Persons entitled to such notice, and said notice fully satisfied the requirements of Federal Rule of Civil Procedure 23 and the requirements of due process.

10.  The Court adjudges that the payment of attorneys' fees and expenses to Class Counsel and the payment of incentive awards to Class Representatives as

[PROPOSED] FINAL JUDGMENT AND ORDER OF DISMISSAL WITH PREJUDICE

respectively set forth in the Settlement Agreement are fair, reasonable and adequate, and that said attorneys' fees and expenses shall be paid to Class Counsel and said incentive awards shall be paid to Class Representatives, and the Court approves anaward from the Settlement Amount of $_____ to pay Class Counsel's attorneys' fees, plus $_____ to reimburse Class Counsel for payment of costs and expenses reasonably incurred in prosecuting and settling the Action, plus $_____ to pay incentive awards to Class Representatives. Neither Class Counsel's application for attorneys' fees and reimbursement of expenses, nor any order entered by this Court thereon, shall in any way disturb or affect this Judgment, and all such matters shall be construed separate from this Judgment.

11.    Neither the Settlement Agreement nor the Settlement nor any act performed or document executed pursuant to or in furtherance of the Settlement Agreement or the Settlement (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claims, of any wrongdoing or liability of Protected Persons, or a finding or evidence that any claims that either were brought or could have been brought in the Litigation are appropriate for class treatment or that any requirement for class certification is or could otherwise be satisfied; or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of Protected Persons in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal.

12.    Protected Persons may file this Judgment and/or the Settlement Agreement from this action in any other action that may be brought against them in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good-faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim.

Protected Persons may rely on this Judgment and/or the Settlement Agreement from this action to seek a dismissal of any claim brought against Facebook or any of the Protected Persons, in any court whatsoever, which derives from the Released Claims.

13.     Without affecting the finality of this Judgment in any way, this Court hereby retains continuing jurisdiction over (a) implementation of the Settlement; (b) distribution or disposition of the Settlement Fund; (c) further proceedings, if necessary, on applications for attorneys' fees, expenses, and costs in connection with the Litigation and the Settlement; and (d) the Parties for the purpose of construing, enforcing, and administering the Settlement Agreement.

14.     The Court finds that during the course of the Litigation, the Parties and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11, and that the Settlement Agreement is the product of good-faith negotiations.

15.     If the Settlement does not become effective in accordance with the terms of the Settlement Agreement, then this Judgment shall be rendered null and void to the extent provided by and in accordance with the Settlement Agreement and shall be vacated and, in such event, all orders entered and releases delivered in connection herewith shall be null and void to the extent provided by and in accordance with the Settlement Agreement.

IT IS SO ORDERED.

DATED: _____          _____
                                       The Honorable Richard Seeborg
                                       United States District Court Magistrate Judge

[PROPOSED] FINAL JUDGMENT AND ORDER OF DISMISSAL WITH PREJUDICE

## NOTICE

**NOTE:  IF YOU ARE A MINOR, PLEASE IMMEDIATELY GIVE THIS NOTICE TO YOUR PARENT OR LEGAL GUARDIAN.  ONLY YOUR PARENT OR GUARDIAN MAY INTERPOSE OBJECTIONS OR COMMENTS TO THE SETTLEMENT ON YOUR BEHALF OR EXCLUDE YOU FROM THE SETTLEMENT.**

**THIS NOTICE SUMMARIZES THE TERMS OF A PROPOSED CLASS-ACTION SETTLEMENT UNDER WHICH YOU MAY HAVE LEGAL RIGHTS.**

**From: Facebook**

**Subject:  Federal Court's Notice of Proposed Class-Action Settlement.  Please Read.**

### I.    OVERVIEW

A federal court has directed that this notice be sent to inform you of a proposed class-action settlement.   Your rights and options – and the deadlines to exercise them – are explained in this Notice.

The settlement will resolve a lawsuit against Facebook, Inc. ("Facebook"), Blockbuster, Inc., Fandango, Inc., Hotwire, Inc., STA Travel, Inc, Overstock.com, Inc., Zappos.com, Inc. and Gamefly, Inc. (collectively, "Defendants") filed in the Northern District of California, San Jose Division, Case No.  5:08-cv-03845-RS (the "Lawsuit").

### A.    WHAT IS THE LAWSUIT ABOUT?

The case involves claims arising out of the Facebook Beacon program, which Facebook launched in November, 2007.   Beacon was designed to allow users to share information with their selected friends about actions taken on affiliated, but third party, websites (such as the sites operated by the other defendants in this lawsuit).

The Beacon program is described as follows on the Facebook website at

http://www.facebook.com/beacon/faq.php as follows:

**How does Beacon work?**

Facebook Beacon is a way for you to bring actions you take online into Facebook. Beacon works by allowing affiliate websites to send stories about actions you take to Facebook. Here's how that process happens.

If you are logged in to Facebook and visit a Beacon Affiliate, an action you take (like writing a review or purchasing an item) may trigger that website to want to publish a story to Facebook. Before that happens, the website will send some information to Facebook in order for Facebook to generate a notification that will display in the lower right corner of your screen. If you click "No, Thanks" no stories or information will be published anywhere on Facebook. Any information that was sent to Facebook's servers will be deleted. If you click "Close" or ignore the story the story will be sent to Facebook but not yet published.



The next time you visit your home page, you'll see a message remind you that this story is being sent. There are three things you can do with this story: approve the story by clicking Okay, remove the story by clicking Remove, or ignore the entire message by doing nothing. If you approve the story and click Okay, the story will be published in your Wall and may appear in your friends News Feeds. If you remove the story using the Remove link next to it, the story will never appear in your Wall or a friend's News Feed. If you ignore the whole message, it will go away after a few days and nothing will be published to Wall or News Feed. However, when you ignore a story, it remains queued so that the next time you generate a Beacon story, this home page message will have two stories instead of one.



Once this story has been published, it will appear in your Wall and may appear in the News Feeds of your friends.

The plaintiffs in this lawsuit asserted allegations about the level of notice and choice they received regarding how Beacon collected information about their activities on affiliated websites and transmitted it to Facebook for publication. The complaint alleged violations of (i) the Electronic Communications Privacy Act, 18 U.S.C. §2510; (ii) Computer Fraud and Abuse Act, 18 U.S.C. 1030; (iii) Video Privacy Protection Act, 18 U.S.C. § 2710; (iv) California's Consumer Legal Remedies Act, California Civil Code § 1750; and (v) California's Computer Crime Law, Penal Code § 502.

**B.    WHAT DOES THE SETTLEMENT DO?**

A proposed settlement agreement as set forth in a Stipulation and Agreement of Settlement (the "Settlement Agreement") will resolve the claims asserted in the lawsuit against Facebook and the other Defendants.    Under the Settlement Agreement, Facebook will terminate the Beacon program within 60 days of Preliminary Approval, if so approved by the Court. In addition, Facebook has agreed to establish a gross settlement fund of $9.5 million, the net proceeds

(determined after court approved administrative costs, attorneys' fees and other costs are paid) of which will fund a non-profit foundation ("Privacy Foundation"), the purpose of which shall be to fund projects and initiatives that promote the cause of online privacy, safety, and security. In consideration for the Settlement payment, Facebook and the other Defendants will be dismissed with prejudice from the lawsuit and will be released from any and all liability arising out of or relating to the claims and allegations in the lawsuit.

The Court still has to decide whether or not to approve the Settlement.

## II.   DETAILED INFORMATION ABOUT THE LAWSUIT AND SETTLEMENT

### A.   WHY SHOULD I READ THIS NOTICE ?

The proposed Settlement of this Lawsuit affects the rights of all current or former Facebook users in the United States whose activities on affiliated websites were communicated to Facebook via the Facebook Beacon program during the period of November 6, 2007 to [Date Preliminary Order is entered]. The Court ordered that this Notice be distributed to all potential class members because you have a right to know about the proposed Settlement of this Lawsuit and about your options relating to the Settlement, before the Court decides whether or not to approve the Settlement. The Court further ordered that a Publication Notice be published in one daily issue of the national edition of *USA Today*.

This Notice provides a summary of the terms of the proposed Settlement. It also explains the Lawsuit and Class Members' legal rights under the Settlement.

### B.   WHAT IS A CLASS ACTION?

In a class action, one or more "Plaintiffs" sue on behalf of all people who have claims similar to theirs. All of these people are members of the "Class." One court resolves the issues for all members of the Class, except for those persons who exclude themselves, or opt-out, from the Class.

## C.     WHY IS THERE A SETTLEMENT?

Facebook does not believe that it did anything wrong.  In fact, Facebook denies any and all liability for the claims alleged in the Lawsuit.  The Court has not decided in favor of the Class or Facebook, and by requiring Facebook to provide this Notice, the Court is not expressing any view on the merits of the Lawsuit.

Instead, the parties engaged in a series of settlement negotiation sessions mediated by Anthony Piazza, Esq., of Gregorio, Haldeman, Piazza, Rotman, Frank & Feder.  Eventually, both sides agreed to a Settlement.  By settling their claims, both sides avoid the uncertainty and cost of a trial or appeal.  The Representative Plaintiffs and Facebook believe that the Settlement is fair and in the best interest of all members of the Class.

On _____, 2009, the parties entered into a formal Settlement Agreement, which is on file with the Court and available through the following link: [WEBSITE]

## D.     HOW DO I KNOW IF I AM PART OF THE SETTLEMENT?

On _____, 2009, Judge Seeborg entered an order granting preliminary approval of the Settlement and certifying the following "Class" for purposes of the Settlement:

> All Facebook members who, during the period of November 6, 2007 to [ Date Preliminary Order is entered], engaged in one or more activities on a  website of any company, corporation, business enterprise, or other person that entered into an agreement with Facebook with respect to the Beacon functionality, which triggered Beacon, the program launched by Facebook on November 6, 2007 and all iterations thereof bearing the "Beacon" name.

Excluded from the Class are any judicial officer to whom this Litigation is assigned; Facebook and any of its affiliates; any current or former employees, officers, or directors of Facebook; any persons currently residing outside of the United States; and all Persons who timely and validly request exclusion from the Class pursuant to this Notice.  Members of the Class that are not excluded from the Class are referred to as "Class Members."

### E.    WHO REPRESENTS ME IN THIS CASE?

To represent the Class, the Court has appointed Sean Lane, Mohannaed Sheikha, Sean Martin, Ali Sammour, Mohammaed Zidan, Sara Karrow, Colby Henson, Denton Hunker, Firas Sheikha, Hassen Sheikha, Linda Stewart, Tina Tran, Matthew Smith, Erica Parnell, John Conway, Austin Muhs, Phillip Huerta, Alicia Hunker, and M.H., a minor, by and through her parent Rebecca Holey as Representative Plaintiffs, and their counsel of record, Scott A. Kamber and David A. Stampley of KamberEdelson, LLC and Joseph H. Malley of the Law Office of Joseph H. Malley, P.C as class counsel.  If you want to be represented in this lawsuit by your own attorney, you may hire one at your own expense, and you may appear in this litigation through your own attorney.

### F.    WHAT DOES THE SETTLEMENT PROVIDE?

Under the Settlement, Facebook will terminate the Beacon program. In addition, Facebook will pay a total of nine million five hundred thousand dollars ($9,500,000) into an interest-bearing account.   The original deposit of $9,500,000, plus accrued interest, will constitute the "Settlement Fund."  The Settlement Fund will be used: (i) to set up and a non-profit Privacy Foundation, described below; (ii) to pay certain costs of administering the Settlement, as approved by the Court; and (iii) to pay attorneys' fees and expenses to Class Counsel in the amount awarded by the Court as well as any compensation to the Representative Plaintiffs, which the parties have proposed be in an amount totalling $41,500 distributed among 21 individuals.  After the deduction of administrative costs and Class Counsel's attorneys' fees and expenses and Representative Plaintiffs' compensation, the balance of the Settlement Fund (the "Net Settlement Fund") will be applied in accordance with the the Settlement Agreement.

In brief, the Plan of Allocation requires, among other things, that the Net Settlement Fund be used to form and establish the Privacy Foundation, the purpose of which shall be to fund projects and initiatives that promote the cause of online privacy, safety, and security. Individual class members will not be receiving a monetary benefit pursuant to the Settlement Agreement.

### G.   WHAT AM I GIVING UP IF I PARTICIPATE IN THE SETTLEMENT?

If the Settlement is granted final approval, the Court will enter a judgment dismissing all claims against Facebook and the other Defendants in the Lawsuit with prejudice, and releasing any and all claims for payment, non-economic, or injunctive relief of any kind or nature and any and all liabilities, demands, obligations, losses, actions, causes of action, damages, costs, expenses, attorneys' fees and any and all other claims of any nature whatsoever, arising from or relating to any of the allegations or statements made in, or in connection with, the Lawsuit (and including, without limitation, any and all claims based upon any of the laws, regulations, statutes, or rules cited, evidenced and referenced by all such allegations and statements), or any other known or unknown claims arising from or relating to Beacon (including, without limitation, arising from or relating to the use of data gathered through Beacon) against Facebook and any "Beacon Merchant," which is any company, corporation, business enterprise, or other person that entered into an agreement with Facebook with respect to Beacon or otherwise launched the Beacon program (specifically including, without limitation and by way of example, all non-Facebook defendants named in the Lawsuit, namely, Blockbuster, Inc., Fandango, Inc., Hotwire, Inc., STA Travel, Inc., Hotwire, Inc., Zappos.com, Inc., Overstock.com, Inc., and Gamefly, Inc.).

As a result, if you are a Class Member and do not exclude yourself from the Class, you will be barred from bringing any of the claims described above.  This means that you will not be able to sue, continue to sue, or be part of another lawsuit against Facebook and its affiliates or any Beacon Merchant, for any of the claims identified in the preceding paragraph.  You will be bound by all proceedings, orders, and judgments entered in connection with the Settlement, whether favorable or unfavorable.  You will be represented by the Representative Plaintiffs and Class Counsel for purposes of the Settlement, unless you choose to hire your own lawyer at your own expense to represent you in this case.

In short, <u>if you do not exclude yourself from the Class, and the Settlement is granted final approval, your claims against Facebook and its affiliates and all Beacon Merchants will be forever released as described above</u>.   If you do nothing, you will be deemed to have accepted the Settlement and any decisions of the Court with respect to the Settlement and the lawsuit.

### H.        WHAT IF I WANT TO EXCLUDE MYSELF (OPT-OUT) FROM THE SETTLEMENT?

If you do <u>not</u> want to remain a member of the Class and participate in the Settlement, then you may exclude yourself from the Class by mailing or delivering (email is not permitted) your written request, as follows:

> Your <u>original</u>, <u>signed</u> request for exclusion must be <u>RECEIVED on or before [DATE,</u> 2009 and mailed to [insert claims administrator information]

Your request for exclusion must contain your name and address, be <u>signed</u> by you, and include the reference "*Lane  et al. v. Facebook, Inc. et al.*, Civil Action No. 1:05-CV-01720."

### I.        HOW WILL THE LAWYERS IN THE CASE BE PAID?

From the inception of the litigation in August 2008 to the present, Class Counsel have not received any payment for their services in bringing or prosecuting this case.  Nor have they been reimbursed for any out-of-pocket expenses.

If the Court approves the Settlement, Class Counsel will make a motion, or "Fee Application," to the Court for an award of attorneys' fees of up to one third (1/3) of the Settlement Fund and reimbursement of expenses and costs already incurred or expected to be incurred in the prosecution of this Lawsuit. Class Counsel's Fee Application may also include an application on behalf of certain of the Representative Plaintiffs for appropriate compensation for their time and effort serving as the Representative Plaintiffs.  Such awards as may be granted by the Court will be paid from the Settlement Fund.   The Fee Application will be heard at the Settlement hearing described below.

Class Counsel's Fee Application will be based on various factors, including the time and effort already invested in the prosecution of the Lawsuit, the benefits obtained for the Class by

bringing this lawsuit, as specified herein and in the Settlement Agreement, as well as the time and effort that will be required of Class Counsel prior to final approval of this Settlement. Facebook takes no position on the application for attorneys' fees, costs and expenses.

**J.     CAN I COMMENT IN SUPPORT OF OR IN OPPOSITION TO THE SETTLEMENT?**

If you decide to remain in the Class (*i.e.*, you do not opt out), and you wish to comment in support of or in opposition to the Settlement or Class Counsel's Fee Application, you may do so by mailing or delivering (email is not permitted) your written comments, as follows:

Your original, signed comments must be filed with the Court no later than [DATE], 2009, at the following address:

> Clerk of the United States District Court for the Northern District of California
> San Jose Division
> 280 South 1st Street
> San Jose, CA 95113

Your written comments must contain your name and address, be signed by you, and include the reference "*Lane  et al. v. Facebook, Inc. et al.*, Civil Action No. 1:05-CV-01720". You must also mail or deliver copies of such objections, papers, and briefs, such that they are received no later than [date], to the Parties' counsel at the addresses listed above, in Section II(H).

Objecting is simply telling the Court that you do not like the Settlement or any aspect of the Settlement.  You can object only if you are a member of, and do not exclude yourself from, the Settlement Class.  If you do not comply with these procedures and deadlines for submitting written comments or appearing at the hearing, you will not be entitled to object, speak at the hearing, you will not be entitled to contest in any way the Settlement or the Court's decision on the Fee Application, and you will not be able to contest any other orders or judgments that the Court may enter in connection with the Settlement.

**K.     WHEN AND WHERE WILL THE COURT HOLD A HEARING ON THE SETTLEMENT?**

The Court will hold a hearing on [DATE] at [TIME], before the Honorable Richard Seeborg, United States Magistrate Judge for the Northern District of California, 280 South 1st Street San Jose, CA 95113.

The purpose of the hearing will be to determine: (a) whether the proposed Settlement should be approved as fair, reasonable and adequate; (b) whether the Class should be certified for purposes of the Settlement; (c) whether Class Counsel's Fee Application should be granted and in what amount; and (d) whether the lawsuit and Class Members' claims should be dismissed with prejudice pursuant to the Settlement.

The Court reserves the right to adjourn or continue the Settlement hearing without further notice to the Class.

**L.     DO I HAVE TO COME TO THE HEARING?**

No. You are not required to attend the hearing in order to participate in the Settlement. Nor do you have to attend the hearing for the Court to consider your objection or other written comments. As long as you mail your written comments on time and follow the procedures set forth above, the Court will consider them.

However, you may attend the Settlement hearing at your own expense if you wish. You may also ask your own lawyer to attend on your behalf, at your expense.

**M.     ARE THERE MORE DETAILS ABOUT THE SETTLEMENT?**

This Notice contains only a summary of certain provisions in the Settlement. The full terms and provisions of the Settlement are contained in the Settlement Agreement. A copy of the Settlement Agreement is on file with the Court and can be viewed through the following link: [website]. The Clerk of the Court, located at 280 South 1st Street, San Jose, CA 95113, maintains files containing the Settlement Agreement and all other documents filed in the lawsuit. Copies of these documents are available for inspection and copying during the Court's normal business hours.

**N.**      **HOW DO I GET MORE INFORMATION ABOUT THE SETTLEMENT?**

You can get more information by sending a letter or email to[insert information from claims administrator regarding automated process]:

_____

Facebook employees cannot give you legal advice, and they will not be able to answer questions about the lawsuit or the settlement.

**PLEASE DO NOT TELEPHONE THE COURT ABOUT THIS NOTICE.**

Dated: _____        **BY ORDER OF:**
                                      **THE UNITED STATES DISTRICT COURT**
                                      **NORTHERN DISTRICT OF CALIFORNIA**

.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SEAN LANE, MOHANNAED SHEIKHA, SEAN MARTIN, ALI SAMMOUR, MOHAMMAED ZIDAN, SARA KARROW, COLBY HENSON, DENTON HUNKER, FIRAS SHEIKHA, HASSEN SHEIKHA, LINDA STEWART, TINA TRAN, MATTHEW SMITH, ERICA PARNELL, JOHN CONWAY, AUSTIN MUHS, PHILLIP HUERTA, ALICIA HUNKER, individuals, on behalf of themselves and all others similarly situated, and M. H., a minor, by and through her parent REBECCA HOLEY, | Case No.  5:08-cv-03845-RS |
| Plaintiffs, | **[PROPOSED] PRELIMINARY APPROVAL AND NOTICE ORDER** |
| v. | |
| FACEBOOK, INC., a Delaware Corporation, BLOCKBUSTER, INC., a Delaware Corporation, FANDANGO, INC., a Delaware Corporation, HOTWIRE, INC., a Delaware Corporation, STA TRAVEL, INC., a Delaware Corporation, OVERSTOCK.COM, INC., a Delaware Corporation, ZAPPOS.COM, INC., a Delaware Corporation, GAMEFLY, INC., a Delaware Corporation, and DOES 1-40, corporations, | |
| Defendants. | |

WHEREAS the Parties have applied for an order granting preliminary approval of a proposed settlement of the above-captioned action ("Litigation"), in accordance with a Settlement Agreement dated September ___, 2009 ("Settlement Agreement"), which together with the Exhibits annexed thereto set forth the terms and conditions of a proposed settlement of the Litigation whereby the Litigation will be dismissed with prejudice ("Settlement");

WHEREAS the Court has read and considered the Settlement Agreement and the Exhibits annexed thereto; and

1    WHEREAS all defined terms contained herein shall have the same meanings as set forth

2  in the Settlement Agreement;

3    NOW, THEREFORE IT IS HEREBY ORDERED THAT:

4    **1.**    The Court grants preliminary approval of the Settlement Agreement and the

5  proposed Settlement set forth herein, subject to further consideration at the Settlement Hearing

6  described below.

7    **2.**    The Court grants a stay of all proceedings in the Litigation until the Court renders

8  a final decision on approval of the Settlement.

9    **3.**    Solely for the purposes of the Settlement Agreement and the proposed Settlement,

10  the Court certifies the following Class:

> All Facebook members who, during the period of November 6, 2007 to the
> date this Order is entered, engaged in one or more activities on a website
> of any company, corporation, business enterprise, or other person that
> entered into an agreement with Facebook with respect to the Beacon
> functionality, which triggered Beacon, the program launched by Facebook
> on November 6, 2007 and all iterations thereof bearing the "Beacon"
> name.

Excluded from the Class are any judicial officer to whom this Litigation is assigned; Facebook

and any of its affiliates; any current or former employees, officers, or directors of Facebook; any

persons presently residing outside of the United States; and all Persons who timely and validly

request exclusion from the Class pursuant to the Notice disseminated in the accordance with the

this Order.

**4.**    Solely for the purposes of the Settlement Agreement and the proposed Settlement

this Court finds and concludes that the Class is ascertainable and that there is a well-defined

community of interest in the questions of law and fact involved affecting the Class Members.

The Court finds and concludes that (a) the Persons who are part of the Class are so numerous that

joinder of all such Persons is impracticable; (b) there are questions of law or fact common to the

Class that predominate over any individual questions; (c) the claims of the Representative

Plaintiffs are typical of those of the Class; (d) in negotiating and entering into the Agreement, the

1    Representative Plaintiffs and their counsel have fairly and adequately represented and protected

2    the interests of all Persons who are part of the Class; and (e) a class action is superior to other

3    available methods for the fair and efficient adjudication of the controversy, considering (i) the

4    interests of the Persons who are part of the Class individually controlling the prosecution of

5    separate actions; (ii) the extent and nature of any litigation concerning the controversy already

6    commenced by Persons who are part of the Class; (iii) the desirability or undesirability of

7    concentrating litigation of the claims in this particular forum; and (iv) the difficulties likely to be

8    encountered in the management of the Litigation as a class action.

9         5.     To act on behalf of the Class in connection with the Agreement and proposed

10   Settlement, the Court appoints Representative Plaintiffs Sean Lane, Mohannaed Sheikha, Sean

11   Martin, Ali Sammour, Mohammaed Zidan, Sara Karrow, Colby Henson, Denton Hunker, Firas

12   Sheikha, Hassen Sheikha, Linda Stewart, Tina Tran, Matthew Smith, Erica Parnell, John Conway,

13   Austin Muhs, Phillip Huerta, Alicia Hunker, and M.H., a minor, by and through her parent

14   Rebecca Holey as representatives of the Class and their counsel of record, Scott A. Kamber and

15   David A. Stampley of KamberEdelson, LLC and Joseph H. Malley of the Law Office of Joseph

16   H. Malley, P.C., as class counsel.

17        6.     Within twenty (20) days of the date of this Order, Facebook shall pay to [Insert

18   name of administrator], third party class action administrator, the sum of $250,000 to be used to

19   cover the administrative and other incidental costs associated with responding to inquiries from

20   Class Members about this Settlement and the process by which this Settlement will be subject to

21   judicial approval.

22        7.     If the Settlement Agreement is not approved by the Court or the Settlement is

23   terminated or fails to become effective in accordance with the terms of the Settlement Agreement,

24   this conditional class certification shall be vacated without further order of the Court and without

25   prejudice to the right of any party to seek or oppose class certification thereafter. Otherwise,

26   upon the Effective Date of the Settlement, this class certification shall become unconditional.

27        8.     A hearing ("Settlement Hearing") shall be held before this Court on [date] at

28   [time], at the United States District Court for the Northern District of California, San Jose

1    Division, 280 South 1st Street, San Jose, CA 95113, to determine whether the proposed

2    Settlement, resolving and dismissing the Litigation on the terms and conditions provided for in

3    the Settlement Agreement, is fair, reasonable, and adequate to the Class and should be approved

4    by the Court; whether a Final Judgment and Order of Dismissal as provided in Exhibit 1 of the

5    Settlement Agreement should be entered herein; and to determine the amount of fees and

6    expenses that should be awarded to Class Counsel and the amount of the incentive award that

7    shall be awarded to representatives of the Class.  The Court may adjourn the Settlement Hearing

8    without further notice to Class Members.

9        9.    The Parties have proposed that the Class be given notice of the proposed

10   Settlement in the following manner:

11        a.    As soon as reasonably practicable after the date of this Order, Facebook

12   shall distribute the Court approved Notice or links to such Notice, in a form substantially similar

13   to that attached hereto as Exhibit 2, via an internal Facebook message in the "Updates" section of

14   the Inbox section of Facebook users' personal accounts targeting users whose PII was likely to

15   have been transmitted to Facebook via Beacon, as determined by Facebook based on reasonable

16   efforts; and

17        b.    During the Notice Period, Facebook shall cause the Court-approved

18   summary form of publication notice, in a form substantially similar to that attached hereto as

19   Exhibit ___ (the "Publication Notice"), to be published in one daily issue of the national edition of

20   *USA Today*.

21        c.    Within ten (10) days of the filing of the Motion for the Entry of the

22   Preliminary Approval and Notice Order with the Court, Facebook shall properly notify the

23   appropriate state and federal officials of this Settlement Agreement pursuant to the Class Action

24   Fairness Act of 2005, 28 U.S.C. § 1715.

25        The Court approves the form and content of the Notices, and finds that under the

26   circumstances, transmission of the Notice as proposed by the Parties meets the requirements of

27   Federal Rule of Civil Procedure 23 and due process, is the best notice practicable under the

28   circumstances, and shall constitute due and sufficient notice to all Persons entitled thereto.

**5:08-cv-03845-RS**

1     d.  At least seven (7) days prior to the Settlement Hearing, Facebook's

2 Counsel shall serve on Class Counsel and file with the Court proof, by affidavit or declaration,

3 that Facebook has fulfilled the requirements set forth in subsections (a) through (c) of this section

4 (9), above.

5    10.  All Persons who fall within the Class definition and who do not timely and validly

6 exclude themselves from the Class shall be bound by all determinations and judgments in the

7 Litigation concerning the Settlement, whether favorable or unfavorable to the Class.

8    11.  Persons who wish to exclude themselves from the Class shall request exclusion

9 within the time and the manner set forth in the Notice, such that the request is received on or

10 before [     , 2009],  to the Parties' counsel at the addresses listed in the Notice.

11 Unless the Court orders otherwise, no request for exclusion shall be valid unless it is made within

12 the time and the manner set forth in the Notice. A request for exclusion must state: (a) the name,

13 address, and telephone number of the person requesting exclusion and, if applicable, on whose

14 behalf such exclusion is being requested, and (b) that the person wishes to be excluded from the

15 Settlement Class.  All persons who submit valid and timely requests for exclusion in the manner

16 set forth in this paragraph shall have no rights under and shall not share in the settlement relief,

17 and shall not be bound by any Order finally disposing of this matter.

18    12.  Any Class Member may enter an appearance in the Litigation, at the Class

19 Member's own expense, individually or through counsel of the Class Member's choice.  Any

20 Class Member who does not enter an appearance will be represented by Class Counsel.  Pending

21 final determination of whether the Settlement should be approved, neither the Representative

22 Plaintiffs nor any Class Member, either directly, representatively, or in any other capacity, shall

23 commence or prosecute against any of the Protected Persons, any action or proceeding in any

24 court or tribunal asserting any of the Released Claims.

25    13.  Any Class Member may appear and show cause why the proposed Settlement

26 should or should not be approved as fair, reasonable, and adequate; or why a Judgment should or

27 should not be entered thereon; or why attorneys' fees and expenses should or should not be

28 awarded to Class Counsel; provided, however, that no Class Member or any other Person shall be

1  heard on or entitled to contest the Court's decision on any of the foregoing matters unless that

2  Person has (a) no later than [date], filed written objections and any supporting papers and briefs

3  with the Clerk of the United States District Court for the Northern District of California, 280

4  South 1st Street, San Jose, CA 95113; and (b) mailed or delivered copies of such objections,

5  papers, and briefs, such that they are received no later than [date], to the Parties' counsel at the

6  addresses listed in the Notice.

7       **14.**    Unless otherwise ordered by the Court, any Class Member who does not make his,

8  her, or its objection in the manner provided shall be deemed to have waived such objection and

9  shall forever be foreclosed from making any objection to the fairness, reasonableness, or

10  adequacy of the proposed Settlement, or to any award of attorneys' fees and expenses to Class

11  Counsel.

12       **15.**    The Settlement Fund shall be kept under the control and possession of Facebook

13  but within twenty (20) days of this Order, the Settlement Fund shall be deposited into a separate

14  bank account specifically established by Facebook for purpose of this Settlement.

15       **16.**    All papers in support of the Settlement or any application by Class Counsel for

16  attorneys' fees or reimbursement of expenses shall be filed and served by [date]. The Parties may

17  respond to any objection to the Settlement or the application for attorneys' fees and

18  reimbursement of expenses, provided that such response is filed and served no later than [date].

19       **17.**    Any application for attorneys' fees or reimbursement of expenses made by Class

20  Counsel shall be considered separately from the fairness, reasonableness, and adequacy of the

21  Settlement. The application by Class Counsel for attorneys' fees and/or reimbursement of

22  expenses shall be filed and served at least fourteen (14) calendar days prior to the Settlement

23  Hearing.

24       **18.**    At the Settlement Hearing, the Court shall determine whether to grant any

25  application for attorneys' fees or reimbursement of expenses made by Class Counsel.

26       **19.**    All reasonable costs incurred in giving notice to Class Members and administering

27  the Settlement shall be borne and paid as set forth in the Settlement Agreement.

28

5:08-CV-03845-RS

20.    Neither the Settlement Agreement, nor any of its terms or provisions, nor any of the negotiations or proceedings in connection therewith, shall be construed as an admission or concession by Facebook of the truth of any of the allegations in the Litigation, or of any liability, fault, or wrongdoing of any kind.

21.    The Court reserves the right to adjourn the date of the Settlement Hearing without further notice to the Class Members, and retains jurisdiction to consider all further applications arising out of or in connection with the proposed Settlement.   The Court may approve the Settlement, with such modifications as may be agreed to by the Parties, if appropriate, without further notice to the Class.

22.    If the Settlement is not approved or consummated for any reason whatsoever, the Settlement and all proceedings had in connection therewith shall be without prejudice to the rights of the Parties status quo ante.

DATED: _____    _____

The Honorable Richard Seeborg
United States District Court Magistrate Judge

5:08-cv-03845-RS

# LEGAL NOTICE OF PROPOSED CLASS ACTION SETTLEMENT

**THIS NOTICE MAY CONCERN YOUR LEGAL RIGHTS IF YOU WERE A USER OF**
*www.facebook.com* **BETWEEN NOVEMBER 6, 2007 AND SEPTEMBER __, 2009.**

**THIS IS NOT AN ADVERTISEMENT OR ATTORNEY SOLICITATION.**

**IF YOU ARE A MINOR, IMMEDIATELY GIVE THIS NOTICE TO YOUR PARENT OR LEGAL GUARDIAN.**

---

**This notice is being published because a settlement has been proposed by all parties in the class action matter of:**

**SEAN LANE,** *et al.,* **Plaintiffs v. FACEBOOK, INC., BLOCKBUSTER, INC., FANDANGO, INC., HOTWIRE, INC., STA TRAVEL, INC., OVERSTOCK.COM, INC., ZAPPOS.COM, INC., GAMEFLY, INC. (Delaware corporations), and DOES 1-40, corporations, Defendants (Case No. 08-cv-3845 RS)**

**pending in the UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION.**

---

## WHAT'S THE PURPOSE OF THIS NOTICE?

This notice is being published by order of the Court, before the Court considers final approval of the proposed settlement.

- This notice is to inform you of actions you may take in response to the proposed settlement.
- Your choices are: (1) do nothing; (2) opt out of the proposed settlement; or (3) object to the proposed settlement. If you choose to object to the proposed settlement or opt out of the proposed settlement, you must follow certain procedures.
- In addition, you may attend the Court's hearing about the proposed settlement.

This notice summarizes some of the information related to the proposed settlement. For more details, go to
_____.

## WHAT'S THE LAWSUIT ABOUT?

Facebook, located on the web at *www.facebook.com*, is a social networking website. This lawsuit relates to Facebook's Beacon program, which Facebook launched in November of 2007. Beacon was designed to allow users to share information with their selected friends about actions taken on affiliated, but third-party, websites (such as the sites operated by the other Defendants in this lawsuit).

The plaintiffs filed this class action lawsuit on August 12, 2008, alleging that Facebook and its affiliates did not give users adequate notice and choice about Beacon and the collection and use of users' personal information. The Defendants deny that they did anything wrong, and the Court has not made any decision about which side was right in this lawsuit.

## WHAT DOES THE SETTLEMENT DO?

The proposed settlement would resolve this lawsuit before it gets to the point of asking the Court to take a position on which side is right—which could take a long time. Instead, both sides have agreed to the proposed settlement.

NOTE: This is not a settlement in which class members file claims to receive compensation. Under the proposed settlement agreement, Facebook will terminate the Beacon program. In addition, Facebook will provide $9.5 million to set up a non-profit foundation that will: fund projects and initiatives that promote the cause of online privacy, safety, and security; cover attorneys' fees capped at no more than one-third of the settlement; as well as reimbursement of expenses and costs,

plus interest on the same; fund compensation for representative plaintiffs; and cover settlement administration costs.

## AM I AFFECTED?

You may be a Class Member if, between November 6, 2007 and September [█], 2009, you visited a Facebook-affiliated website that was participating in Facebook's Beacon program.

## WHAT ARE MY OPTIONS?

- *Do nothing*: If you choose to do nothing, you will be legally bound by the settlement. By doing nothing, you will be giving up the right to sue Facebook and the other Defendants over claims related to or arising out o the Beacon program.

- *Opt out*: If you do not want to be legally bound by the settlement, you must exclude yourself by [date] or you will not be able to sue, or continue to sue, the Defendants and certain other parties for the claims listed in the settlement agreement. To opt out, you *must* mail your original, signed exclusion request to:

  *Counsel for Plaintiffs*: KamberEdelson, LLC, Attn: Scott Kamber, 11 Broadway, 22nd Floor, New York, NY 10004

  *Counsel for Defendants*: Cooley Godward Kronish LLP, % Facebook Beacon Class Action Settlement, Attn: Michael Rhodes, 4401 Eastgate Mall, San Diego, CA 92121

- *Object*: If you wish to object to the terms of the settlement, you *must* file your objection no later than [date] with:

  Clerk's Office, U.S. District Court, Northern District of California, 280 South First St., Rm. 2112, San Jose, CA 95113

  In addition, you *must* mail or deliver copies of your objection and any related briefs or papers to the parties' counsel at the addresses listed above for receipt no later than [date].

  If you under the age of 18, you must provide a copy of this Notice to your parent or guardian. Only your parent or guardian may interpose objections or comments to the settlement on your behalf or exclude you from the settlement.

- *Attend the settlement hearing*: On [date], the Court will hold a hearing to consider whether to grant final approval to the proposed settlement. You may comment in support of or in opposition to the proposed settlement, but you do not have to attend the hearing and, if you do choose to attend the hearing, you do not have to speak at the hearing.

---

**For a full copy of the Notice of Settlement and details on required procedures, deadlines, and your options and obligations, visit [website].**

1  SCOTT KAMBER (admitted *pro hac vice*)
   DAVID STAMPLEY (admitted *pro hac vice*)
2  *skamber@kamberedelson.com*
   *dstampley@kamberedelson.com*
3  KAMBEREDELSON, LLC
   11 Broadway, 22nd Floor
4  New York, New York 10004
   Telephone: (212) 920-3072
5  Facsimile:  (212) 202-6364

6  JOSEPH H. MALLEY (admitted *pro hac vice*)
   LAW OFFICE OF JOSEPH H. MALLEY
7  1045 North Zang Boulevard
   Dallas, Texas 75208
8  Telephone: (214) 943-6100
   Facsimile:  (214) 943-6170
9

10 DAVID C. PARISI (SBN 162248)
   SUZANNE HAVENS BECKMAN (SBN 188814)
11 *dcparisi@parisihavens.com*
   *shavens@parisihavens.com*
12 PARISI & HAVENS LLP
   15233 Valleyheart Drive
13 Sherman Oaks, California 91403
   Telephone: (818) 990-1299
14 Facsimile:  (818) 501-7852

15 ATTORNEYS FOR PLAINTIFFS

16                **UNITED STATES DISTRICT COURT**

17              **NORTHERN DISTRICT OF CALIFORNIA**

18                    **SAN JOSE DIVISION**

19 SEAN LANE, *et al.*,                          No. 08-cv-3845 RS

20              Plaintiffs,                        [Assigned to the Hon. Richard Seeborg]

   v.
21                                                 **DECLARATION OF SCOTT A.**
   FACEBOOK, INC., a Delaware Corporation,        **KAMBER IN SUPPORT OF**
22 BLOCKBUSTER, INC., a Delaware Corporation,     **PLAINTIFFS' MOTION FOR**
   FANDANGO, INC., a Delaware Corporation,        **PRELIMINARY APPROVAL OF**
23 HOTWIRE, INC., a Delaware Corporation,         **CLASS ACTION SETTLEMENT**
   STA TRAVEL, INC., a Delaware Corporation,      **AGREEMENT**
24 OVERSTOCK.COM, INC., a Delaware corporation,
   ZAPPOS.COM, INC., a Delaware Corporation,      Location: Courtroom 4, 5th Floor
25 GAMEFLY, INC., a Delaware Corporation, and     280 South First Street
   DOES 1-40, corporations,                       San Jose, CA 95113
26                                                 Date: October 14, 2009
              Defendants.                          Time: 9:30 a.m.
27

28

   Declaration of S. Kamber in Support                    Case No. No. 08-cv-3845 RS
   of Motion for Preliminary Approval

**DECLARATION OF SCOTT A. KAMBER**

1

2      I, Scott A. Kamber, declare as follows:

3      1.     I am one of plaintiffs' counsel in the above-captioned litigation. I make this

4 declaration in support of plaintiffs' motion for final approval of the settlement and for ap-

5 proval of their application for fees and expenses. I have actively participated in all aspects

6 of this litigation, including negotiation of the settlement, and am fully familiar with the

7 proceedings in the matter in which resolution is sought by the parties. If called upon, I am

8 competent to testify that the following facts are true and correct to the best of my knowl-

9 edge, information, and belief.

10     2.     I represent that the disclosures contained herein relating to mediation and

11 negotiation between the parties are with the consent of Michael Rhodes of Cooley God-

12 ward Kronish LLP and are not violative of any settlement or mediation privilege.

13     3.     For over three months prior to the filing of the complaint in this matter, my-

14 self and attorneys under my direct supervision worked closely with co-counsel Joseph

15 Malley and certain class representatives, investigating facts and developing legal theories

16 contained in the complaint. This pre-complaint effort occupied hundreds of hours of attor-

17 ney and client time as well as consultations with certain nonlegal experts. This case im-

18 pacted millions of class members and dealt with highly technical areas of the implementa-

19 tion of the sharing of class member information between Internet sites by Facebook and

20 required a tremendous effort to understand the issues, the mechanisms by which Facebook

21 shared certain information, and Facebook's implementation of the consent mechanism. I

22 believe that this understanding allowed us to plead this case with the detail and accuracy

23 that motivated rather early settlement negotiations between the parties. Based on my ex-

24 perience, I believe that the promptness of relief is an absolutely critical feature in address-

25 ing resolution of internet usage issues that involve injunctive relief. Our research, con-

26 firmed through the settlement process, is that there are millions of class members and that

27 numerosity is satisfied.

28

---

Declaration of S. Kamber in Support          - 2 -          Case No. No. 08-cv-3845 RS
of Motion for Preliminary Approval

4.      On August 12, 2008, the plaintiffs in this matter filed a complaint on their own behalf and on behalf of a purported class of all Facebook members who had visited the websites of one or more entities affiliated with Facebook, including Facebook's co-defendants in this matter, between November 7 and December 5, 2007, inclusive, and whose activities on those affiliated sites were communicated to Facebook via Facebook's Beacon program. Plaintiffs alleged that the defendants failed to provide them proper and adequate notice regarding Beacon's transmissions of information about them to Facebook, failed to obtain their consent for such transmissions, and engaged in actions that violated the Electronic Communications Privacy Act ("ECPA"), the Video Privacy Protection Act ("VPPA"), the Computer Fraud and Abuse Act ("CFAA"), the California Consumer Legal Remedies Act ("CLRA"), and the California Computer Crime Law ("CCCL"). (Dkt. 1). .

5.      At all times, all Defendants have denied and continue to deny that they have engaged in any wrongdoing or committed, threatened to commit, or attempted to commit any wrongdoing of any kind, including that alleged in the complaint in this matter. On October 10, 2008, Facebook, pursuant to Federal Rule of Civil Procedure 12(b)(6), moved to dismiss plaintiffs' causes of action under Count I, alleging ECPA violations; Counts III and IV, alleging violations of the VPPA against Facebook, and regarding which Facebook argued that it is not a "Video Tape Service Provider" as defined in the statute and that it cannot be held secondarily liable; Count V, alleging violations of the CLRA by defendants Facebook, Fandago, Hotwire, Gamefly, and STA, and regarding which Facebook argued that the complaint lacked the particularity required by Federal Rule of Civil Procedure 9(b) and that the plaintiffs were not "consumers" as defined by the statute; and Count VI, alleging violations of the CCCL against defendants Facebook, Fandago, Hotwire, Gamefly, and STA, alleging, *inter alia*, that plaintiffs failed to adequately plead damages or losses attributable to Facebook's conduct. Facebook did not challenge Count II, alleging VPPA violations by Blockbuster, Fandago, Overstock, and Gamefly. (Dkt. 14). Plaintiffs' counsel have briefed their response to Facebook's motion to dismiss and believe that plaintiffs would prevail in an adjudication of that motion.

1    6.    Plaintiffs did not file their brief following Facebook's filing of its motion to
2 dismiss. Instead, the parties agreed to private and confidential mediation of the matter and
3 engaged in nine months of substantive, arms-length negotiations.

4        a.    On December 9, 2008, representatives of Facebook and plaintiffs met
5 with mediator Antonio Piazza in the offices of Gregorio, Haldeman, Piazza, Rotman, Frank
6 & Feder in San Francisco, California. I led the plaintiffs' negotiating team, which included
7 Joseph Malley of the Law Office of Joseph H. Malley and David Stampley, Michael
8 Aschenbrener, and Alan Himmelfarb of KamberEdelson, LLC. Facebook was represented
9 by Mark Howitson, Deputy General Counsel, Ted Ullyot, General Counsel, Sam
10 O'Rourke, Associate General Counsel from Facebook and Michael Rhodes and Maria Os-
11 trovsky of the law firm of Cooley Godward Kronish LLP. With the assistance of Mr. Pi-
12 azza, Plaintiffs' counsel met with Facebook's representatives and with the participation of
13 Facebook CEO, Mark Zuckerberg. Throughout the day, the parties' representatives met
14 unilaterally with Mr. Piazza. In addition, Mr. Stampley and Mr. Aschenbrener met sepa-
15 rately with Mr. O'Rourke of Facebook and Ms. Ostrovsky of Cooley Godward to view and
16 discuss examples of users' interactions on Facebook's website and on the websites of af-
17 filiates deploying the Beacon program. After a full day of mediation, the parties agreed on
18 all substantive relief and memorialized their mutual understanding in document outlining
19 the principal terms of settlement.

20        b.    At no point prior to reaching agreement on the substantive terms of
21 settlement did the parties discuss the amount of any incentive fees or payments to class
22 counsel. This took place for the first time at the end of the mediation and immediately
23 prior to the memorialization of terms set forth above.

24        c.    In the following months, I personally negotiated with Mr. Rhodes of
25 Cooley Godward to flesh out the settlement framework and implementation. and other at-
26 torneys at my firm met with other outside and in-house counsel at Facebook. On February
27 11, 2009, Mr. Stampley and Mr. Aschenbrener met with Mr. O'Rourke, Facebook Associ-
28 ate General Counsel, at Facebook's offices to continue discussing the mechanics of users'

1   online experiences when interacting with the websites of Facebook and its affiliates. Over

2   the following months, the parties continued to negotiate, exchange information regarding

3   settlement details, and examine creative approaches to potential injunctive relief compati-

4   ble with Facebook's business model.

5           d.     In the late spring, the parties reached a seeming impasse regard the

6   details of injunctive relief involving changes to the Facebook website and Beacon program

7   operation. In my opinion, the parties were unable to resolve this impasse without substan-

8   tively diverging from the framework agreed upon in the principal terms of settlment previ-

9   ously memorialized during mediation. Since this required revisiting a previously agreed-to

10   substantive term, I refused to engage in any resolution of this issue outside the presence of

11   the mediator and requested that the parties schedule an additional mediation session in an

12   effort to conclude the settlement process.

13           e.     On July 28, 2009, the parties' representatives again met in person with

14   mediator Antonio Piazza and, afterwards, continued negotiating the details of a settlement

15   agreement. To break the impasse over the terms, the parties with the active input of the

16   mediator agreed Facebook would terminate the Beacon program itself within 60 days of

17   preliminary approval. I believed this provided clarity with respect to the relief being of-

18   fered and was beneficial to the class. This obviated the need to define what may be permis-

19   sible moving forward with Beacon, and allowed the parties to move forward in a manner

20   that provided maximum benefit to the class. Further, at this mediation session, I was able

21   to obtain an accelerated funding of the Foundation by Facebook. With the assistance of Mr.

22   Piazza, the parties were able to successfully conclude the negotiation of the major sticking

23   points with the settlement agreement. Less than a month later, all parties had given their

24   consent to the terms contained in the settlement agreement. Having reached full agreement

25   on terms and conditions of a settlement, the parties now seek the Court's preliminary ap-

26   proval.

27           7.     I have participated directly in the mediation and negotiation efforts and the

28   petition for preliminary approval of the proposed settlement now before this Court.

1  Throughout our mediation and negotiation efforts and in advising our clients of the pro-

2  posed settlement, plaintiff's counsel's has at all times considered the fairness, reasonable-

3  ness, and adequacy of the settlement for the class, taking into account: the strength of

4  plaintiffs' case; the risk, expense, complexity, and likely duration of any further litigation;

5  the risk of certifying a class and then maintaining class action status through trial; the

6  amount offered in settlement; the extent of discovery completed and the stage of the pro-

7  ceedings; and the experience and views of plaintiffs' counsel. Against the backdrop of

8  counsels' collective experience in prosecuting complex class actions, co-counsel and I

9  have considered the claims set forth in the complaint and our continued confidence in the

10  merit of those claims, the scope of relief offered in the settlement compared to the potential

11  relief at the conclusion of litigation, and the risks and costs of continued litigation. Taking

12  these factors into account, it is my opinion that the proposed settlement is fair, reasonable,

13  and adequate, well within the range of possible approval, and therefore deserving of the

14  Court's preliminary approval.

15      8.      A true and correct copy of the proposed settlement agreement entered into by

16  the parties in this matter is attached as Exhibit A to the Notice of Motion of which this dec-

17  laration is an exhibit.

18      9.      Proposed class counsel possesses extensive experience in prosecuting class

19  actions and other complex litigation. A copy of the firm resume of KamberEdelson, LLC is

20  attached as Exhibit C to the Notice of Motion of which this declaration is an exhibit.

21      10.     Further, proposed class counsel have diligently investigated and prosecuted

22  this matter, dedicating substantial resources to the investigation of the claims at issue in the

23  action, and have successfully negotiated the settlement of this matter to the benefit of the

24  class.

25      11.     I declare under penalty perjury under the laws of the United States of Amer-

26  ica that the foregoing is true and correct.

27

28

Declaration of S. Kamber in Support
of Motion for Preliminary Approval

- 6 -

Case No. No. 08-cv-3845 RS

1 | Executed on September 18, 2009 at New York, New York.

2

3 

4

                s/<u>Scott A. Kamber</u>

                   Scott A. Kamber

**KamberEdelson, LLC**

11 Broadway, 22nd Floor, New York, NY 10004
t 212.920.3072  f 212.920.3081

www.kamberedelson.com

**KAMBEREDELSON, LLC**
**FIRM RESUME**

KAMBEREDELSON, LLC handles complex litigation and provides corporate counsel on behalf of consumers, technology companies, and traditional brick-and-mortar businesses. With attorneys strategically located in Chicago, New York, Los Angeles, and Florida, our practice is national in scope.

Our philosophy can be summed up easily: Use the approach that gets the best results. This is the type of phrase with which hundreds of firms would be quick to agree, but, in reality, most would view as a slogan instead of a guiding philosophy. Historically, the practice of law has been at odds with the business of law. Law firms have powerful incentives to resolve cases successfully, but not necessarily quickly. They tend to design case strategies and argue cases in very predictable ways that avoid quick resolution in favor of protracted battles and increased legal costs. On the transactional side, it is an open secret within these firms that there is no risk in telling a company that it cannot do something but a great deal of risk in giving new projects the green light. We do things differently. We have learned from the numerous hats we have worn that there are many ways to protect clients through litigation and that the most exciting part of practicing law is finding and utilizing all of the avenues to get to the right result as efficiently as possible. On the transactional side, our job is to help our clients implement their visions in a legal, cost efficient way. We should not be creating barriers; we should be finding solutions.

While our lawyers went to top law schools and were trained at some of the most recognizable law firms in the country, each of our attorneys brings something more to the table. Virtually all of our senior lawyers have either founded or served in an executive capacity for a business that was not a law firm. Others have held significant roles in government such as assistant state attorneys general who, while in office, focused on business compliance and technology-related issues. Complementing our lawyers' diverse professional backgrounds and entrepreneurial perspectives, our practice itself began life as a plaintiff's consumer class action firm. In consumer class actions, fees are contingent on winning, meaning there is a tremendous incentive to act as efficiently as possible. We are used to getting paid depending on the results we get for our clients. And, that's the way we like it.

The attorneys of KAMBEREDELSON have been recognized as leaders in our fields by state and federal legislatures, national and international media groups, the courts and our peers. We have testified before the United States Senate on class action issues and have repeatedly been asked to work on federal and state legislation involving cellular telephony and other issues. Our attorneys have appeared on dozens of national and international television and radio programs to discuss our cases, the intersection of technology and the law, and class action and consumer protection issues more generally. Our reputation for leadership in class action litigation has led state and federal courts to appoint us lead counsel in many high-profile class action suits, including the 2007 contaminated pet food recall class actions against Menu Foods and the recent Thomas the Tank Engine lead paint class actions against RC2 Corporation. Our attorneys speak regularly at seminars on consumer protection and technology issues to both corporate and consumer audiences in the United States and around the world, teach class action law at law schools and are asked to serve as testifying experts in cases involving class action and consumer issues.

## LITIGATION

The KAMBEREDELSON philosophy is demonstrated in practice every day by the way we litigate. Whether prosecuting or defending actions, our approach is seen in our results. Simply put, we reach the right result more quickly and efficiently than the traditional law firm. Our attorneys have handled a wide range of general commercial litigation matters, from partnership fights to litigation involving corporate takeovers and business-to-business disputes. We have litigated cases involving tens of thousands of dollars to "bet the company" lawsuits involving up to hundreds of millions of dollars. Our attorneys have collectively tried hundreds of cases as well as scores of arbitrations and mediations. All of our attorneys have regularly practiced in state and federal trial and appellate courts.

We have been recognized as a leader in plaintiffs' class and mass action litigation and almost always serve as the lead counsel in the cases we accept. Whether prosecuting or defending class actions, it is the results we have achieved for our clients that say the most about our firm.

**Technology consumer protection class actions**: KAMBEREDELSON is a leader in plaintiffs' class and mass action litigation, with a particular emphasis on technology class actions. We have settled the only class actions to date alleging text-message spam under the Telephone Consumer Protection Act, including a $7 million settlement with Timberland Co. We have prosecuted over 100 cases involving mobile content, settling numerous nationwide class actions, including against industry leader AT&T Mobility, and an injunctive settlement against Facebook, Inc. Our attorneys also settled an international class action against Register.com, which alleged that the company engaged in deceptive practices in placing advertising on "coming soon" pages of newly registered domain names.

**Class action defense**: Our founding attorneys began their careers defending class actions at large national firms. We have successfully handled numerous class actions on behalf of banks, securities firms, and numerous retailers. Key representations include: Successfully defending banks in a series of class actions alleging violations of the Truth in Lending Act, each time resulting in the dismissal of the plaintiffs' case; securing the immediate voluntary dismissal of a $50 million class action lawsuit against a national bank, resulting in national law firm's awarding founding KAMBEREDELSON partner Jay Edelson with its first official departmental commendation; settling a $20 million class action lawsuit against auto title company for approximately $100,000 in actual costs while obtaining broad class-wide releases; helping numerous companies deal with the threat of class action litigation, each time resolving issues at nominal costs without suits ever being brought. The lessons we have learned on both sides of the bar enlightened us to an approach to the defense of class actions that differs greatly from those of traditional firms. We believe that defense firms have strong financial incentives to litigate class actions aggressively over long periods of time, even in instances where doing so is contrary to the interests of their clients. We find that most defense firms behave predictably and inflexibly, often due to their relative lack of experience with class actions (as compared to plaintiffs' class action attorneys), and, in doing so, fail to utilize many tools they have at their disposal.

**Data privacy and security**: KAMBEREDELSON attorneys have served as lead counsel in the prosecution of numerous class actions, including against Facebook, Sears, TD Ameritrade, and others involving the failure to protect customers' private information, some resulting from actual security breaches. In *Wormley v. GeoCities*, our attorneys resolved what is believed to be the first Internet privacy case to resulted in recovery of a benefit for impacted class members.

**Commercial litigation***: We have litigated a wide range of commercial matters, including on behalf of Internet marketing companies, banks, the airline industry, commercial lenders, defense contractors, health care providers, energy companies, and many others. In a case seeking nearly $1 million, we leveraged unique arguments and extra-litigation "pressure points" to settle the case in fewer than 90 days for less than three percent of the original demand. Our attorneys have also been asked by other law firms and lawyers to represent them in their most sensitive issues, including malpractice cases, fee disputes, and employment issues.

**Digital rights management and intellectual property**: We have been one of the only firms to consistently challenge the use of faulty digital rights management schemes, and win. We were lead counsel in one of the largest computer virus cases ever resolved, and which resulted in the replacement of hundreds of thousand of music CDs by Sony BMG. We have challenged and

achieved changes in digital rights protection schemes used by some of the world's largest game publishers, including Ubisoft.

**Consumer protection**: We successfully prosecuted and achieved the only class action settlements to date in cases alleging text message spam under the Telephone Consumer Protection Act, including a $7 million settlement with Timberland Co. We have prosecuted over a hundred cases involving the unauthorized sale of mobile content, settling numerous nationwide class actions, including against industry leader AT&T Mobility, and obtaining injunctive settlements against Facebook and Microsoft. We have successfully prosecuted countless class action suits against domain registration companies, health clubs, dating agencies, phone companies, debt collectors, and other businesses on behalf of consumers.

**Products liability and mass torts**: We have been appointed lead counsel for plaintiffs in state and federal products liability class settlements, including a $30 million settlement resolving the "Thomas the Tank Engine" lead paint recall cases, a $32 million settlement involving the largest pet food recall in the history of the United States and Canada, and a $100 million settlement involving Starlink Corn Products. Our attorneys were part of a team of lawyers representing a group of public housing residents in a suit for contamination-related injuries, a group of employees exposed to secondhand smoke on a riverboat casino, and a class of individuals suing a hospital and national association of blood banks for failure to warn of risks of Hepatitis C infection as a result of past blood transfusions.

**Rights of the insured**: We have prosecuted and settled multi-million dollar suits against J.C. Penney Life Insurance for allegedly illegally denying life insurance benefits under an unenforceable policy exclusion and against a Wisconsin insurance company for terminating the health insurance policies of groups of self-insureds. In the latter case, our attorneys obtained a preliminary injunction preventing termination of class members and a settlement guaranteeing each class member would remain insured.

**Shareholder rights**: We have successfully prosecuted securities class actions against companies such as Command Systems and Loch Harris on behalf of shareholders. In each matter, shareholders received 100% of the damages we alleged.

## E-DISCOVERY AND INFORMATION TECHNOLOGY

In our own cases and as consultant for other firms, we translate and incorporate recent developments in the law and technology of e-discovery and information technology into results for our clients. Led by nationally-recognized e-discovery expert Steven Teppler, our firm has taken the lead on e-discovery issues including data protection, information technology, document management and retrieval, loss or destruction of information, authentication and admissibility issues uniquely inherent to computer generated information such as spoliation allegations arising from acts of unauthorized or illegal data manipulation or alteration. We have been routinely asked by both small and large law firms alike to serve as co-counsel in particularly complex electronic discovery issues. Mr. Teppler currently serves as Co-Vice-Chair of the American Bar Association Information Security Committee and is a contributing author to an American Bar Association book with the working title "Foundations of Digital Evidence" (publication expected March 2009).

Case 3:09-cv-00217-M   Document 46-12   Filed 11/02/09   Page 37 of 44   PageID 633
Case5:08-cv-03845-RS   Document38-7   Filed09/18/09   Page4 of 11
KamberEdelson, LLC
Page 4

## INTERNATIONAL LAW AND ARBITRATION

Our attorneys have represented US and foreign corporations, senior government officials and private individuals on matters that require particularized knowledge of international concerns. We have handled ICC arbitrations, resolved multibillion-dollar disputes involving petroleum leasing rights and served as the attorneys of record on landmark cases involving the Foreign Sovereign Immunities Act. Founding KAMBER-EDELSON partner Scott A. Kamber has travelled to over 30 countries and personally negotiated transactions or disputes on five continents, worked with the President of the United Nations General Assembly and handled transactions for the Olympic Committees of several Eastern European and Latin American nations.

## CORPORATE COUNSEL

Our attorneys have been hired to handle complex mergers and acquisitions, IPOs, the negotiation of consumer and business contracts, and securities work. Our attorneys include a former general counsel of a computer technology company, a former general counsel of an Internet marketing company, and a senior attorney from one of the largest corporate practice groups in the country. We have experience representing private equity investors in mergers, handling acquisitions, leveraged buy-outs, and tender offers, as well as financing activities involving debt and equity issuances (including initial public offerings). We have represented clients in offerings and structured financing in excess of $300 million. We can ensure SEA, SEC, Sarbanes-Oxley, and all other forms of government compliance. And, we have experience in the venture capitalism industry and can seek out and structure large-scale investment agreements.

Our corporate practice is also informed by our experience in seeing companies take on compliance liabilities because they are not aware of the options available to protect themselves while protecting other parties in interest—such as consumers. Even the largest companies, who hire the most expensive attorneys, routinely include language in consumer contracts that actually increases their exposure to future lawsuits.

These same companies also fail to include language in their consumer contracts and related material to fully protect them and their business partners from legal exposure. Moreover, few companies handle emerging legal problems in the best possible way—they generally overreact to problems (which can encourage litigation or make settlement more expensive), seize upon the latest headlines to the detriment of higher priority risks, or bury their heads in the proverbial sand. Our view is that businesses should be proactive and our job is to help predict legal issues that will confront them in the future. Our experience in legal and political consulting has obtained meaningful results for corporations and consumers alike:

> Preparation of the business, consumer advertising, and contractual materials of a ten-person legal marketing start-up so it could comply with often conflicting state rules on attorney advertising and referral relationships, as well as state consumer protection statutes generally. Although the owners of this company had previously received negative scrutiny from state ethics boards, they have since avoided all such inquiries and have grown to employ over 150 people in fewer than 4 years. When a class action lawsuit was later threatened against this client (relating to an issue inherent to the consumer contracts of a company our client acquired), KAMBEREDELSON was able to resolve the client's liability for nothing more than a refund to the potential named representative. Developing a state and federal legislative strategy designed to help educate lawmakers about new technology fields and to work on new legislation to protect our clients.

> Developing a state and federal legislative strategy in the wake of the 2008 pet food contamination recalls designed to protect against future occurrences. The strategy resulted in our attorneys working on federal legislation and testifying before Congress about our efforts.

Representation of one of the most heavily trafficked Internet marketing, content and commerce firms in all aspects of litigation and counseling, including successfully defending business-to-business disputes and preventing potential class action lawsuits and consumer-initiated investigations.

Advising an Internet advertising company on numerous intellectual property, product development and financing matters.

Restructuring of a timber reclamation company to maximize its business and marketing units. The company has now expanded from a two-person start-up to an organization employing approximately 200 people. Structuring potential joint venture transactions between international Olympic Committees and private sector concerns for the financing of Olympic efforts.

Advising entrepreneurs in strategies for financing and business growth that maximize the percentage of stock held by the founders while growing the company, including such advisory work for a business group that spun-off from a fortune 50 corporation.

Performing "class action audits" aimed at identifying and correcting potential areas of noncompliance and liability.

## ATTORNEY BIOGRAPHIES

### NEW YORK

**SCOTT A. KAMBER** is a founding member of KAMBEREDELSON. He has served as lead counsel in dozens of class actions, resulting in hundreds of millions of dollars in relief for his clients. His class action cases have established precedent concerning Internet privacy rights, liability for database breaches, the responsibilities of growing genetically modified foods, the relationships between corporation and consumers concerning the definition of consent, digital rights management, and shareholder rights.

Mr. Kamber has worked as a financial consultant, and, after entering private legal practice, represented both plaintiffs and defendants in a wide range of commercial litigation, initially at the defense firm Hughes Hubbard & Reed.

While his defense background influences Mr. Kamber's litigation philosophy, his interest and background in privacy rights and the Internet dates back to the 1990's, when he resolved what is believed to be the first Internet privacy case to recover a benefit for impacted class members. A particular area of interest for Mr. Kamber has been the litigation and resolution of matters that have set the standard for digital rights management for computer software, video games and music. In pursuit of these matters, Mr. Kamber has gained extensive courtroom experience and tried over 15 cases to verdict.

Additionally, Mr. Kamber has also had an active and broad practice involving international law, which has catered to his love of negotiations and dispute resolution. Mr. Kamber has traveled to over 30 countries, handled negotiations on five continents and structured transactions with the Olympic Committees of several Eastern European and Latin American nations. Mr. Kamber has worked to vindicate the rights of African torture victims and worked with the President of the United Nations General Assembly. Mr. Kamber is a frequent lecturer on international matters and is a regular speaker and moderator for the Center for International Legal Studies based in Austria.

Mr. Kamber graduated *cum laude* from University of California, Hastings College of the Law in 1991 where he was *Order of the Coif*, Articles Editor for HASTINGS CONSTITUTIONAL LAW QUARTERLY and a

member of the Moot Court Board. Mr. Kamber graduated with University and Departmental Honors from The Johns Hopkins University in 1986. Mr. Kamber is admitted to practice in the State of New York as well as the United States Supreme Court, the United States Court of Appeals for the Second Circuit and Ninth Circuit, and the United States District Courts for the Southern and Eastern Districts of New York. In addition, Mr. Kamber is well versed in the procedures and practice of numerous arbitration forums, both domestic and international.

**DAVID A. STAMPLEY** is senior counsel to KAMBEREDELSON. His practice focuses on technology law, particularly the litigation of issues affecting the privacy and security of consumers' personal information.

Mr. Stampley brings extensive experience in the areas of both technology and complex litigation. Prior to joining KAMBEREDELSON, Mr. Stampley served as an assistant attorney general for New York and led aggressive Internet Bureau enforcement actions recognized for producing meaningful privacy protections and corporate security standards. In this capacity, he handled New York and multistate cases involving DoubleClick, Ziff Davis Media, Eli Lilly (prozac.com), and AOL/Netscape (SmartDownload).

Additionally, in the private sector, Mr. Stampley was general counsel and compliance specialist at Neohapsis, a provider of information risk management, security consulting, and lab testing services. He also previously served as Director of Privacy for Reynolds & Reynolds, a global Fortune 1000 technology solutions provider. Prior to entering the legal field, Mr. Stampley was a business applications programmer and systems analyst.

Beyond Mr. Stampley's technology law and corporate compliance expertise, he gained extensive trial experience as an assistant district attorney in the premier public prosecutor's office, the Manhattan D.A.'s office (New York County). His 30 trials included serving as co-counsel in the case against Edward Leary, the "Manhattan Subway Bomber." Mr. Stampley is a Certified Information Privacy Professional and a faculty member of the Institute for Applied Network Security. He frequently speaks at conferences on security and privacy compliance issues and has been a guest lecturer at the New York University Stern School of Business and DePaul University's Graduate Information Technology Studies. He served as an invited expert on the Platform for Privacy Preferences (P3P) Vocabulary Working Group of the WorldWide Web Consortium (W3C).

Mr. Stampley is a graduate of the University of Virginia School of Law, where he was a Dillard Fellow, and Mississippi State University. Following law school, he clerked for the Honorable Lenore L. Prather of the Supreme Court of Mississippi.

**DEBORAH KRAVITZ** is senior counsel at Kamber Edelson. With a unique career history that spans the corporate world, the U.S. government and high-profile law firms, her practice focuses on complex civil and criminal litigation, including SEC enforcement and securities litigation, white collar criminal defense, and corporate compliance.

In addition to practicing with defense firms of national and international stature (most recently with Heller Ehrman), Ms. Kravitz also served as a Federal Prosecutor in the Tax Division of the Department of Justice and as the Chief Compliance Officer of a global company that provided services to the oil and gas industries. In her role as Chief Compliance Officer, Ms. Kravitz was an integral member of the senior management team and was responsible for the implementation of a global compliance program during a period of time when the company was under a Deferred Prosecution Agreement arising from violations of the Foreign Corrupt Practices Act. This broad range of experience allows Ms. Kravitz to develop practical solutions to a wide array of commercial, litigation and compliance matters.

Ms. Kravitz graduated, with honors, from the University of Maryland School of Law in 1991, where she was an Assistant Editor for the Law Review and member of the Moot Court Board. Following law school,

Case 3:09-cv-00217-M   Document 46-12   Filed 11/02/09   Page 40 of 44   PageID 636
Case5:08-cv-03845-RS   Document38-7   Filed09/18/09   Page7 of 11
KAMBEREDELSON, LLC
Page 7

Ms. Kravitz clerked for the Honorable Deborah K. Chasanow in the U.S. District of Maryland. Ms. Kravitz received her B.A. in International Studies from the Johns Hopkins University in 1987. She is admitted to practice in the State of Maryland.

**STEVEN W. TEPPLER** is senior counsel to KAMBEREDELSON. Mr. Teppler concentrates his practice on data protection and information technology law, including electronic discovery, loss or destruction of information, authentication and admissibility issues uniquely inherent to computer generated information, including spoliation issues arising from unauthorized or illegal data manipulation or alteration. He is the Co-Vice-Chair of the American Bar Association Information Security Committee as well as the Florida Bar's Professional Ethics Committee.

Mr. Teppler has authored over a dozen articles relating to information technology law and routinely presents his work at conferences. Mr. Teppler's recent publications include: *Spoliation in the Digital Universe, The SciTech Lawyer,* Science and Technology Law Section of the American Bar Association, Fall 2007; *Life After Sarbanes-Oxley—The Merger of Information Security and Accountability* (co-author), 45 JURIMETRICS J. 379 (2005); *Digital Signatures Are Not Enough* (co-author), Information Systems Security Association, January 2006; *State of Connecticut v. Swinton: A Discussion of the Basics of Digital Evidence Admissibility* (co-author), Georgia Bar Newsletter Technology Law Section, Spring 2005; *The Digital Signature Paradox* (co-author), IETF Information Workshop (The West Point Workshop) June 2005; *Observations on Electronic Service of Process in the South Carolina Court System*, e-filing Report, June 2005. Mr. Teppler is also a contributing author to an American Bar Association book with the working title "Foundations of Digital Evidence" (publication expected March 2009).

Mr. Teppler graduated from the Benjamin N. Cardozo School of Law in 1980 after earning his B.A., *summa cum laude*, from the City College of New York in 1977. Mr. Teppler is admitted to the bars of New York, the District of Columbia and Florida.

**DANA B. RUBIN** is an associate at KAMBEREDELSON. She focuses her practice on a wide range of class action issues.

Prior to joining KAMBEREDELSON, Ms. Rubin played a role in numerous private and class actions on behalf of shareholders and consumers. Ms. Rubin has also represented both plaintiffs and defendants in employment litigation and civil rights matters.

She graduated with honors from the University of Maryland, College Park in 1993. She received her J.D. in 1999 from Fordham University School of Law, where she was an Associate Editor on the INTELLECTUAL PROPERTY, MEDIA & ENTERTAINMENT LAW JOURNAL. Ms. Rubin is admitted in the State Courts of New York and the United States District Courts for the Southern and Eastern Districts of New York. She is a member of the New York State Bar Association.

# CHICAGO

**JAY EDELSON** is a founding member of KAMBEREDELSON. He has been recognized as a leader in class actions and corporate compliance issues by his peers, the media, state and federal legislators, academia and courts throughout the country. On the plaintiff's side, he has been appointed lead counsel in over 40 class actions, resulting in hundreds of millions of dollars for his clients. On the defense side, he has saved his clients a similar amount of money by either quickly defeating class actions or by reaching favorable settlements. In February of 2007, the *Chicago Sun Times* nicknamed Jay the "Spam Slammer" after he secured the first settlement of a suit under the Telephone Consumer Protection Act for the alleged transmission of unsolicited text messages. Months later, another legal publication dubbed Jay a "class action master." He is frequently invited to weigh in on state and federal legislation concerning consumer protections

Case 3:09-cv-00217-M    Document 46-12    Filed 11/02/09    Page 41 of 44    PageID 637
Case5:08-cv-03845-RS   Document38-7   Filed09/18/09   Page8 of 11

KamberEdelson, LLC                                                                    Page 8

and technology issues and testified before the United States Senate in the aftermath of the recent contaminated pet food recalls.

Prior to co-founding KAMBEREDELSON, Jay worked for a large defense firm where he successfully represented numerous financial institutions and automobile title companies in class action defense, consumer protection issues, and general litigation. In that capacity, Jay secured the immediate voluntary dismissal of a $50 million class action lawsuit against a national bank, earning him the first official departmental commendation in the firm's history. Presently, in his capacity as the Managing Partner of KAMBEREDELSON's Chicago office, Jay regularly counsels companies on legal compliance and legislative issues in addition to handling all types of complex commercial litigation

Utilizing his experiences from both the plaintiffs and defense perspectives, Jay has litigated class actions that have established precedent concerning the ownership rights of domain name registrants, the applicability of consumer protection statutes to Internet businesses, and the interpretation of numerous other state and federal statutes. He has also secured settlement in cases of first impression involving Facebook, Microsoft, AT&T and countless others.

In addition to technology based litigation, Jay has been involved in a number of high-profile "mass tort" class actions and product recall cases, including cases against Menu Foods for selling contaminated pet food, a class action settlement involving the Thomas the Tank toy train recall, and suits involving damages arising from second-hand smoke. Jay consults with the University of Chicago Medical Center and the Pritzker School of Medicine on Internet and legal ethics issues. Jay is frequently asked to participate in legal seminars and discussions regarding the cases he is prosecuting. He has also appeared on dozens of television and radio programs to discuss his cases. He has taught classes on class action law at Northwestern Law School, John Marshall Law School, and DePaul Law School. Jay is a graduate of Brandeis University and the University of Michigan Law School.

**MYLES MCGUIRE** is a partner at KAMBEREDELSON. His practice concentrates on consumer protection law, class actions, and legal and political consulting to technology companies. Prior to entering private practice, Mr. McGuire spent several years operating an Internet advertising company, which was later sold, in addition to counseling high-tech companies on legal issues. Since turning to plaintiffs' advocacy, Mr. McGuire has had principle control over many nationwide and multi-state class actions. Drawing on his technological background, his specific area of emphasis is on emerging technology class actions, including those involving electronic commerce, cellular telephony and wireless media, among others. He has served in leadership positions in groundbreaking settlements involving Facebook, Verizon, Sprint, and T-Mobile.

Due to his diverse legal and business expertise, Mr. McGuire has been asked by members of Congress to comment on proposed legislation in the mobile content industry and has worked with state regulatory bodies in related efforts.

Mr. McGuire graduated from Marquette University Law School in 2000 and is admitted to practice in Wisconsin and Illinois. He is a member of the National Association of Consumer Advocates and the Chicago Bar Association.

**MICHAEL MCMORROW** is a partner at KAMBEREDELSON. His practice focuses on commercial litigation and class action law, and his recent experience includes representation of consumer classes in litigation under the federal Telephone Consumer Protection Act, the California Unfair Competition Law, several common law claims, and additionally, representation of corporate clients in the mobile telephone content industry in commercial and trade secret litigation. Mr. McMorrow is an experienced trial and appellate commercial litigator who has represented clients in court and at trial across a full spectrum of issues, including trade secret litigation, commercial contracts, airplane leasing, airport construction, automotive

KamberEdelson, LLC

manufacturing, commercial and consumer lending, product liability, and has represented clients in heavily regulated industries including insurance, defense contracting, health care and energy. Prior to joining the firm, Mr. McMorrow was Senior Counsel at Foley & Lardner LLP, practicing commercial and energy regulatory litigation.

Mr. McMorrow graduated magna cum laude from the University of Illinois College of Law in 2000, where he was Associate Editor of the UNIVERSITY OF ILLINOIS LAW REVIEW, a Harno Scholarship recipient, and President of the Prisoners' Rights Research Project. Mr. McMorrow received his B.A. in Political Science from Yale University in 1994. Mr. McMorrow has been a member of the Trial Bar for the Northern District of Illinois since 2005 and the Chicago Bar Association Judicial Evaluation Committee since 2003. His pro bono representations have included asylum applicants and prisoners' rights issues.

**RYAN D. ANDREWS** is an associate at KAMBEREDELSON. He has been appointed class counsel in multiple complex high-stakes class actions, and actively involved in the litigation and settlement of class actions focused on the mobile content industry and Internet privacy.

Prior to joining the firm, Mr. Andrews engaged in all aspects of the prosecution and defense of claims on behalf of individual and corporate clients, including motion practice, arbitration, mediation, trial to verdict, and appeals.

Mr. Andrews received his J.D. with High Honors from the Chicago-Kent College of Law in 2005 and was named *Order of the Coif*. While in law school, Mr. Andrews was a Notes & Comments Editor for THE CHICAGO-KENT LAW REVIEW, as well as a teaching assistant for both Property Law and Legal Writing courses. Mr. Andrews externed for the Honorable Joan B. Gottschall in the Northern District of Illinois, and earned CALI awards for the highest grade in five classes.

Mr. Andrews graduated from the University of Michigan in 2002, earning his B.A., *with Distinction*, in Political Science and Communications.

**MICHAEL J. ASCHENBRENER** is an associate at KAMBEREDELSON. Michael focuses his practice on prosecuting Internet privacy, consumer technology, and mobile content subscription fraud class actions. He also advises technology companies on the handling of Internet users' personal information.

Before entering the legal field, Michael spent several years working in the cell phone, computer, and Internet marketing industries where he gained significant insight into the business of emerging technology.

Prior to joining KAMBEREDELSON, Michael served as an Assistant Attorney General for the State of Minnesota. Upon entering the private sector, Michael was an associate for a large plaintiffs' consumer protection law firm where he prosecuted individual and class actions on behalf of consumers against mortgage companies and debt collectors. Michael successfully litigated multiple cases to judgment, securing redress for aggrieved consumers.

Michael graduated from Chicago-Kent College of Law, where he was an award-winning member of the Moot Court Honor Society, as well as Editor of the SEVENTH CIRCUIT REVIEW. He was published in a law journal during school and received a CALI Award for obtaining the highest grade in his Tax Procedure course.

Michael received his B.A. in Journalism from the University of Minnesota-Twin Cities in 2001.

**RAFEY S. BALABANIAN** is an associate at KAMBEREDELSON. Mr. Balabanian focuses his practice on prosecuting consumer technology class actions as well as defending corporate clients in a variety of litigation settings.

Case 3:09-cv-00217-M   Document 46-12   Filed 11/02/09   Page 43 of 44   PageID 639
Case5:08-cv-03845-RS   Document38-7   Filed09/18/09   Page10 of 11
Page 10

KamberEdelson, LLC

Prior to joining the firm, Mr. Balabanian was an associate attorney with a boutique Chicago law firm where he practiced commercial litigation. Mr. Balabanian has represented individual and corporate clients ranging from real estate developers, hotels, insurance companies, lenders, shareholders and attorneys. Mr. Balabanian has first chaired both jury and bench trials, engaged in extensive motion practice, litigated class action matters and acted as lead counsel in several mediations and arbitrations.

Mr. Balabanian received his J.D. from the DePaul University College of Law in 2005. While in law school, Mr. Balabanian received a certificate in international and comparative law and earned the CALI award for the highest grade in advanced trial advocacy. Mr. Balabanian received his B.A. in History, *with Distinction*, from the University of Colorado–Boulder in 2002.

**STEVEN LEZELL** is an associate at KAMBEREDELSON and the firm's hiring attorney. Steven has successfully litigated and settled a number of consumer protection cases through trial, engaged in extensive motion practice, drafted appellate briefs, prosecuted class actions and participated in multi-session mediations.

Prior to joining the firm, Steven was a litigator at a Chicago boutique focusing on consumer protection matters, real estate disputes, fraudulent transfers in bankruptcy and the prosecution of white-knight mortgage fraud cases.

Steven received his J.D. from Chicago-Kent College of Law with High Honors, *Order of Coif*, while earning his certificate in litigation and alternative dispute resolution. During law school, he served as a Judicial Extern for the Honorable Ann C. Williams on the Seventh Circuit Court of Appeals and as President of the Student Bar Association. Steven also served as a Notes and Comments Editor for THE CHICAGO-KENT LAW REVIEW and represented Chicago-Kent at the National Sports Law Moot Court Competition in New Orleans in 2004. Steven was awarded the ABA-ALI Scholarship and Leadership Award for best representing the combination of leadership and scholarship in his graduating class and also received the Lowell H. Jacobson Memorial Scholarship, which is awarded competitively to a student from one of the law schools in the Seventh Circuit to recognize personal commitment and achievement.

Steven received his B.A. in Political Science, *with distinction*, from the University of Michigan—Ann Arbor in 2002.

## CALIFORNIA

**ALAN HIMMELFARB** is a partner at KAMBEREDELSON. He has advocated on behalf of plaintiffs for 29 years, with a focus on complex litigation, contracts, high-technology, foreign licensing, and foreign technology transfers. Mr. Himmelfarb's unique career path provides him with a wealth of experience and a distinct set of knowledge. Mr. Himmelfarb was admitted to the practice of law in California in July 1979. At the age of 23, he was the youngest member of the California Bar at the time, and within five years, became managing attorney of a law firm employing six attorneys and a support staff of ten. In 1988, he took a position overseas as a foreign legal consultant in Asia. In this capacity, he acted as chief negotiator for international sales/service/technical transfer agreements, mediated cross-cultural (Asian-Western) business and governmental interests, evaluated international business/marketing strategies for multinational corporations, drafted and negotiated a full range of international transactional agreements for Korean, European and American corporations and businessmen and marketed legal services to Korean domestic market and international community.

In 1992, Mr. Himmelfarb returned to Los Angeles in the capacity of a litigator, with an emphasis on plaintiff's work against banks and other financial institutions. His cases include litigation on behalf of consumers against banks, financial institutions, cruise lines, high-tech products manufacturers and software pro-

viders, credit reporting agencies, ISPs and web-based service providers. As a result of litigation he has brought and prosecuted, hundreds of millions of dollars in cash and benefits have been secured on behalf of members of the public.